## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
## CLASS ACTION

**SARAH ALHASSID,**
on her own behalf and on behalf
of all others similar situated**,**

CASE NO. _____

         **Plaintiff,**

**vs.**

**BANK OF AMERICA, N.A.,**
**NATIONSTAR MORTGAGE LLC**
**(D/B/A CHAMPION MORTGAGE), &**
**JOHN DOE INSURANCE COMPANY,**

        **Defendants.**
_____/

## CLASS ACTION COMPLAINT

      COMES NOW Plaintiff Sarah Alhassid ("Plaintiff"), on her own behalf and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants Bank of America, N.A. ("BOA"), Nationstar Mortgage LLC d/b/a Champion Mortgage ("Champion"), & John Doe Insurance Company ("Unknown Insurer"), to be collectively referenced as "Defendants," and further states as follows:

## INTRODUCTION

1.     This class action lawsuit addresses a multi-year scheme by a bank, insurer, and loan servicer of home equity conversion mortgages ("reverse mortgages") on properties in condominium owners associations. The Defendants engaged in a scheme to increase their profits on reverse mortgage debts they purchased for

1

pennies on the dollar by needlessly purchasing forced-placed property insurance policies at super inflated rates and then sending the bill to the elderly borrowers, all in an effort to place the reverse mortgage loan in "default" status. If the borrower didn't immediately pay the outrageous bill for the needless forced-placed property insurance, the Defendants then placed the loan in "default status." Once the loan was in "default status," the Defendants would increase the balances of the reverse mortgage loans by tacking on fraudulent and unauthorized fees to the loan balance. The Defendants then unlawfully commenced foreclosure actions to illegally strip the elderly of their homes, with the sole intent to profit on the backs of the elderly borrowers, when they sold the asset at auction after foreclosure proceedings.

2.      Improprieties surrounding mortgage lenders and servicers unilaterally purchasing expensive and unnecessary "force-placed" insurance policies in the event that borrowers allegedly breach contractual mortgage arrangements by failing to maintain property insurance coverage are well known, as exposed by the media, litigation and Congress.

3.      Congress addressed the problem by requiring that force-placed insurance charges be bona fide and reasonable, and that a lender refrain from purchasing the insurance unless there is a reasonable basis to believe that the borrower has failed to comply with a loan contract's requirements. *See* 12 U.S.C. § 2601, *et. seq.*

4.      This case concerns the extension of this dubious practice to contexts in which the elderly enter into reverse mortgages on their condominium units where the requisite property insurance remained in full force and effect at all relevant times,

yet, Defendants needlessly and unnecessarily *still* obtained force-placed property insurance, lacking a contractual right to do so.

5. These illegally obtained unnecessary forced placed insurance policies were used as the catalyst to accelerate the loans on the reverse mortgages and place them in a õdefaultö status with the Defendants.

6. BOA and Champion *knew* that Plaintiff and others similarly situated had property insurance through their condominium Owners Associations. In fact, the Defendants loan documents contain a Condominium Rider specifying that the requirement to maintain property insurance would be excused so long as the condominium Owners Association had a policy covering the property.

7. Regardless of the condominium Owners Associationsø property insurance, Defendants needlessly entered into expensive force-placed insurance arrangements to obtain windfall profits through commissions and kickbacks, and to manufacture a spurious basis for arguing that its elderly borrowers had violated their end of the bargain by not maintaining insurance on their individual units.

8. Instead of doing any due diligence of its own records and being straightforward and honest with Plaintiff and the Class Members, Defendants benefited from willful ignorance by purchasing and then billing Plaintiff and the Class Members for unnecessary, excessive and invalid force-placed insurance policies and then demanded immediate payment of the super-inflated premiums for the unnecessary polices. Along with their unreasonable demands for payment, the Defendants threatened the reverse mortgage borrowers with a default that would lead to the elderly borrowers losing their homes if they did not pay the bill.

9.      Moreover, compounding the egregious acts of the Defendants - all in an obvious scheme to increase the balance on the reverse mortgages- once the Defendants placed the loan in "default" status they began billing various other unnecessary and unauthorized charges in the form of "service fees" (for nothing), "property preservation" (for nothing), "property inspections" (that did not occur and were not authorized), "property appraisals" (that did not occur and were not authorized), and even "delinquent [property] taxes" (that were paid by agents of the defendants at the direction of the Defendant)  without any proof of delinquency or non-payment and, in fact, when the property taxes were not delinquent at all.

10.     Once the loans were in default status with the Defendants, for the non-payment of the unnecessary forced-placed insurance policies, and after the Defendants inflated the balance (thereby depleting any equity) of the reverse mortgages by manufacturing fees mentioned above, they would proceed to institute wrongful foreclosure proceedings (to profit from the eventual sale of the asset) to kick the elderly out of their homes, causing untold damage, both emotional and financial.

11.     This exploitation of the elderly cannot stand.

## JURISDICTION, VENUE & PARTIES

12.     Plaintiff Sarah Alhassid resides in Aventura, Miami-Dade County, Florida. During all times material to the allegations herein, she paid condominium fees to Mystic Point Condo, which in turn contracted with insurers to provide property insurance for her unit.

13.     Defendant Bank of America, N.A. is a Delaware corporation with its principal place of business in North Carolina.  BOA does business and holds and services reverse mortgage loans with condominium owners throughout the United States.

14.     Defendant Nationstar Mortgage LLC d/b/a Champion Mortgage is a Delaware corporation with its principal place of business in Texas. Champion does business and holds and services reverse mortgage loans with condominium owners throughout the United States. At some time in or around 2012, Champion was apparently assigned and began servicing Plaintiff's reverse mortgage.

15.     Defendant John Doe Insurance Company is an unknown insurance company that, according to BOA, was paid $6,467.31 by BOA to provide force-placed flood insurance covering Plaintiff's property, beginning in or around October 2009.

16.     Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of Florida and Miami-Dade County. Defendants regularly and systematically bill and transact mortgage business with elderly homeowners in the Southern District of Florida and Miami-Dade County. 28 U.S.C. § 1391.

17.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332 because this controversy is between citizens of different states. Plaintiff is a citizen of Florida, and Defendants are citizens of Delaware, Texas and North Carolina. The matter in controversy exceeds $75,000.

18.     Alternatively, jurisdiction is proper the amount in controversy exceeds $5,000,000.00 exclusive of interest and costs, as there are hundreds or even thousands of reverse mortgage borrowers harmed by Defendants' conduct in a

5

substantially similar way. Jurisdiction is therefore also appropriate pursuant to 28 U.S.C. § 1332(d)(2).

19.     Alternatively, jurisdiction is proper under 28 U.S.C. § 1331, federal question jurisdiction. 15 U.S.C. § 1692.

## FACTUAL ALLEGATIONS

20.     On February 26, 2007, Plaintiff Sarah Alhassid, as a condominium unit owner over 62 years in age, entered into a Home Equity Conversion Mortgage ("reverse mortgage") for her condominium unit at Mystic Pointe Condo in Aventura, Florida.

21.     Under paragraph two of the reverse mortgage agreement, **Exhibit A**, Plaintiff was responsible for paying property taxes and flood and hazard insurance for the property.

22.     Under a "Condominium Rider" to the mortgage agreement, **Exhibit B**, also executed on February 26, 2007, Plaintiff was excused from the personal obligation of paying for property insurance so long as Mystic Pointe's Owners Association maintained a blanket insurance policy: "Borrower's obligation . . . to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association."

23.     Paragraph five of the reverse mortgage agreement, **Exhibit A**, as modified by the Condominium Rider, states that "Borrower shall pay these obligations [property insurance and tax] on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon

6

lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments."

24.     Neither BOA nor Champion ever requested evidence of payments.

25.     Property tax payments are public, and Plaintiff never missed a payment during the relevant period.   During all times material hereto, Plaintiff paid her property taxes, as required under the reverse mortgage agreement.

26.     Plaintiff's property insurance coverage obligation was satisfied pursuant to her timely condominium fee payments to Mystic Pointe and the Condominium Rider. Mystic Pointe maintained requisite property insurance during the relevant period. Defendants never confirmed that it did not.

27.     Under paragraph five of the mortgage agreement, "**If Borrower fails to make these payments** or the property charges required by Paragraph 2 [as amended by the Condominium Rider] . . . then Lender may do and pay **whatever is necessary** to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2." **Exhibit A.** (emphasis supplied).

28.     Although Plaintiff never failed to make a payment which would trigger this contingency, and although BOA and Champion never sought proof of payment from the borrower or the condominium Owners Association, BOA unilaterally and improperly sought and purchased unnecessary force-placed flood insurance for Plaintiff's property (or so it represented), in 2009.

29.     Specifically, by letter dated October 6, 2009, BOA notified Plaintiff, in an improperly vague fashion, that she had missed õone or more of these tax **or** insurance payments.ö **Exhibit C.** (emphasis supplied).

30.     In this letter, BOA also falsely represented that the reverse mortgage agreement, **Exhibit A** (as modified by the Condominium Rider, **Exhibit B**) õ*authorized*ö it to make õa payment on your behalf for forced placed flood insuranceö and as a result õyour loan is now in default. Any available funds, if any, from your loan have been applied towards the default amount . . . you are required to immediately reimburse us for the full amount of **the tax and/or insurance** payment that we have made; the total amount due is **$6,467.31**.ö (emphasis added).

31.     BOA never justified why paying $6,467.31 in flood insurance (for a small single-resident condominium unit) was õnecessaryö to protect the value of the Property.

32.     BOA never communicated the terms of this new and duplicative coverage.

33.     BOA never provided the policy or declarations page to Plaintiff.

34.     BOA never provided any information justifying the (exorbitant) premium it had paid for this õforced placed flood insurance.ö

35.     BOA never even told Plaintiff the name of the insurer or its contact information.

36.     Unknown Insurer colluded with BOA in connection with this wholly unnecessary purchase of force-placed flood insurance.

37.     BOAøs involvement in this fraudulent practice was exposed in several class action lawsuits, and a November 9, 2010 article in *American Banker*, see http://www.americanbanker.com/issues/175_216/ties-to-insurers-servicers-in-trouble-1028474-1.html.

38.   BOA improperly received an unearned kickback from Unknown Insurer as a result of seeking out unnecessary and duplicative flood insurance for Plaintiff's unit.

39.   This kickback incentivized BOA to act against the interest of Plaintiff, and seek out force-placed insurance when it was not necessary, violating its duty to carry out contractual obligations in good faith.

40.   Unknown Insurer profited by receiving a premium or premiums from BOA that bore no relationship to the risk being insured against.

41.   BOA had no incentive to shop around for an affordable insurance policy that actually met the needs of the property.

42.   Upon information and belief, a portion of the $6,467.31 related to backdated insurance coverage, coverage that exceeded the legal and contractual requirements, and various unnecessary and exorbitant fees.

43.   The payment was wholly unnecessary, as the condominium was properly insured through the insurers that Mystic Pointe had contracted with, consistent with the Condominium Rider, **Exhibit B.**

44.   BOA had no reasonable basis to believe that Plaintiff had failed to comply with a loan contract's requirements prior to seeking out force-placed property insurance.

45.   The veil of secrecy under which BOA purchased the force-placed flood insurance exposes that it had a genuine and sinister interest in placing the loan in "default" status for the purposes of acceleration, foreclosure, and obtaining the property, *not* protection of the value of the property.

46.     Indeed, assuming that Mystic Pointe had not already made arrangement to insure the condominium (which it had in actuality), *if* the property had been damaged by a water event, Plaintiff would not even know who to contact to make a claim, and there could have been a substantial loss of value.

47.     More importantly, BOA never articulated exactly how Plaintiff breached the reverse mortgage agreement, and never performed the required due diligence to ascertain whether Mystic Pointe satisfied the requirement to pay for insurance under the Condominium Rider, **Exhibit B.**

48.     BOA and Champion's insufficient notice, and claim a breach had occurred when it had not, violated Florida and federal law.

49.     BOA and Champion casually skipped over contractual obligations, violated their obligations to carry out those terms in good faith, and improperly manufactured a breach so that it could shamelessly rob its elderly customer of her equity and eventually institute foreclosure proceedings to take her property and render her homeless.

50.     On May 4, 2010, BOA sent another misleading and fraudulent letter making apparent that it had failed to do its due diligence by reviewing its own loan documents) and check whether Plaintiff's condominium was covered for property insurance through Mystic Pointe. It stated that, "As part of your reverse mortgage loan, you agreed to pay your property taxes and homeowner's insurance in a timely manner . . . your forced placed flood insurance is delinquent in the amount of $6,467.31." The letter to BOA's elderly customer contained the threat that

"your reverse mortgage loan, upon approval from HUD, may be called due and payable within 30 days of this notice." **Exhibit D.**

51.    On January 10, 2012, BOA sent another misleading and fraudulent letter to its elderly customer, this time implying that the requirement to pay the (wholly unnecessary, unauthorized and excessive) insurance payment was backed by governmental authority. Specifically, the letter stated that "While the mortgage document entitles us to foreclose in this situation, FHA's [Federal Housing Administration] preference is for us to work out another solution that will allow you to repay all balances due and retain your home." This particular letter claimed that $6,196.57 was due, a glaring inconsistency as compared with prior letters, and demonstrative of BOA's sloppiness and failure to execute its contractual obligations in good faith. **Exhibit E.**

52.    BOA originally bought Seattle Mortgage's reverse mortgage division in 2007 for $220 million, which included a portfolio of over $4 billion of reverse mortgages. (http://realestate.aol.com/blog/2011/02/08/bank-of-america-exits-reverse-mortgage-business/)

53.    Sometime in 2012 or 2013, Champion claimed to have become owner of the note, and the servicer of Plaintiff's reverse mortgage – presumably after BOA agreed to sell roughly $18 billion in servicing rights for reverse mortgages to Nationstar Mortgage         for         approximately         **$25**         **million**. (http://reversemortgagedaily.com/2011/12/12/bank-of-america-sells-18-billion-of-reverse-mortgage-servicing-to-nationstar/)

54.     Rather than performing its own due diligence of the reverse mortgage documents it now purported to own and was now servicing for BOA with their deal referenced above, Champion maintained BOAøs s õdefault statusö of the loan - with clear nefarious intent to (profit from and) inflate the balance of the loan to the disadvantage of the borrower.

55.     Prior to instituting foreclosure proceedings in its reverse mortgage statements, Champion vaguely notified Plaintiff inconspicuously that the loan was õCalled Due: Tax & Insuranceö but the statements also stated in big, bold letters, conspicuously that õTHIS IS NOT A BILL.ö

56.     Now that the loan was in õdefault statusö according to Champion and BOA, Champion then began systematically and consistently tacking on various other unnecessary and unauthorized charges in the form of õservice feesö (for nothing), õproperty preservationö (for nothing), õproperty inspectionsö (that did not occur and were not authorized), õproperty appraisalsö (that did not occur and were not authorized) and even õdelinquent [property] taxesö (that were never delinquent). These charges were not õnecessaryö for Champion to protect the value of the property. Examples of these unnecessary charges are attached as **Exhibit F.**

57.     Instead of treating its elderly reverse mortgage borrower fairly and performing due diligence to determine whether Mystic Pointe had the requisite insurance, Champion sent Plaintiff correspondence dated September 17, 2013, notifying her that her reverse mortgage was õtechnically in default due to the non payment of taxes and/or insurance.ö The letter also stated that Plaintiff could cure the detail

by repaying the "total amount of money advanced to pay taxes and/or insurance of $6,467.31." **Exhibit G.**

58. Plaintiff, personally and through her condominium owners association, contacted BOA and Champion numerous times between 2009 and 2013 to clear up any misunderstanding. She was consistently reassured by agents of BOA and Champion that there was no issue.

59. To be safe, and in response to Champion's baseless threat, on or around October 1, 2013, Mystic Pointe transmitted, by fax, proof of property insurance (consistent with the Condominium Rider, **Exhibit B**) to Champion. Champion did not relent.

60. Champion did not respond after being provided with declaration pages and other evidence that Mystic Pointe had obtained the requisite property insurance during the relevant period, and still did not, and could not, articulate precisely how and why Plaintiff was in default, in violation with the reverse mortgage agreement's notice requirements.

61. Again, between February 2007 and the filing of this Complaint, Plaintiff had timely paid property taxes, and was insured through the insurer that Mystic Pointe had contracted with, consistent with the Condominium Rider, **Exhibit B**. Nevertheless, on December 5, 2013, a corporation called "Industry Consulting Group Inc.," prematurely paid Plaintiff's property taxes for 2013 that were due in April 2014.

62. Plaintiff was then charged for "delinquent taxes" in its mortgage statement, even though the taxes were not due for several months and were therefore not delinquent.

63.   On January 15, 2014, Champion served Plaintiff with a foreclosure lawsuit. **Exhibit H.** Among other things, the Verified Complaint wrongly alleged that Plaintiff had failed to perform her obligations by õfailing to pay Taxes and/or Insurance when it became due.ö

64.   As a result of the filing of that lawsuit, Plaintiff had to hire counsel to prevent homelessness, discover the above facts, properly defend herself in that lawsuit, and prosecute this lawsuit.

<u>CLASS ACTION ALLEGATIONS</u>

65.   Plaintiff brings this action against Defendants on behalf of herself and all other persons similarly situated pursuant to Rule 23.  Plaintiff seeks to represent the following classes:

a.) All reverse mortgage borrowers with equity in a condominium unit who, within the applicable statutes of limitation, were charged for force-placed insurance by BOA or Champion (and/or their affiliates, entities or subsidiaries);

b.) All individuals belonging to category (a) whose condominium ownersø association maintained requisite property insurance coverage for the borrowersø condominium unit, consistent with and in compliance with a Condominium Rider to the reverse mortgage agreement;

c.) All individuals belonging to category (a) who were charged unauthorized and excessive õservice fees,ö õproperty preservationö fees, õproperty inspectionö fees, and/or charged for õdelinquent [property] taxesö by BOA or Champion (and/or their affiliates, entities or subsidiaries);

14

    d.) All individuals belonging to category (a) that are or were parties to foreclosure lawsuits instituted by BOA or Champion (and/or their affiliates, entities or subsidiaries);

    e.) Any and all reverse mortgage borrowers, nationwide, with equity in any type of property, who were charged unauthorized and excessive "service fees," "property preservation" fees, "property inspection" fees, and/or charged for "delinquent [property] taxes" after their reverse mortgage loans were deemed to be in default by BOA or Champion (and/or their affiliates, entities or subsidiaries);

    f.) All individuals belonging to the above categories located within Florida; and

    g.) All individuals belonging to category (f) classified as "vulnerable adults" as it is meant under Fla. Stat. § 415.1111.

66.    Excluded from the class are Defendants, their agents and legal representatives, assigns and successors, and any entity in which Defendants have a controlling interest

67.    Plaintiff reserves the right to modify and/or amend the definition of the proposed class before the Court determines if class certification is appropriate.

68.    Defendants subjected Plaintiff and the respective Class members to the same unfair, unlawful and deceptive practices and harmed them in the same manner.

<u>Numerosity</u>

69.    The Class is so numerous that joinder of all members is impracticable.

70.    Upon information and belief, thousands of BOA and Champion customers satisfy the definition of the putative classes.

71.    BOA and Champion have marketed, sold and serviced thousands of reverse mortgages within Florida and nation-wide during the past several years.

72.    The class members are ascertainable, as their identities and contact information can be identified within Defendants' business records.

73.    It would be impractical for each member to bring suit individually.

<u>Commonality</u>

74.    There are questions of law and fact that are common to Plaintiff and the Class Members' claims. These common questions predominate over any questions that go particularly to any individual member of the class.  The questions include, but are not limited to:

a)    Whether, and to what extent, Defendants performed due diligence in determining that reverse mortgage borrowers with equity in condominiums did not have requisite property insurance through their condominium owners associations before incurring expenses in relation to force-placed mortgages and accusing elderly borrowers of default;

b)    Whether Defendants' obligation to only pay amounts necessary to protect the value of the property is consistent with seeking out expensive force-placed property insurance policies;

c)    Whether Defendants' obligation to only pay amounts necessary to protect the value of the property is consistent with a failure to contact its reverse mortgage borrowers and their respective condominium owners associations to inquire whether units contained requisite insurance coverage prior to seeking out expensive force-placed property insurance policies;

d) Whether Unknown Insurer exists, the terms of these force-placed insurance arrangements, and the extent to which the force-placed insurance coverage is practical or provides coverage to elderly consumers receiving involuntary and/or duplicative coverage, particularly in light of the fact that they are not notified of the coverage or how to make a claim should one become necessary;

e) Whether BOA and Champion had unlawful kickback/commission arrangements with the Unknown Insurer providing force-placed insurance to condominium owners with reverse mortgages;

f) Whether Defendants sufficiently notified elderly borrowers with reverse mortgages on their condominiums of how and why they can correct a default prior to institution of foreclosure proceedings;

g) Whether Defendants have a pervasive policy of sending elderly borrowers false and misleading correspondence falsely notifying them of a breach of a reverse mortgage agreement, wrongfully assuming governmental authority, and threatening of default and litigation, and the extent to which these threats induce payments from a vulnerable demographic;

h) Whether "service fees," "property preservation" fees, "property inspection" fees, and/or charged for "delinquent [property] taxes" charged to reverse mortgage customers bore any relationship to actual services, and property value preservation interests;

i)   Whether Defendants have a pervasive policy of paying property taxes, and charging borrowers for "delinquent taxes," when they are in fact not delinquent;

j)   Whether Defendants have a pervasive policy and goal of wrongfully obtaining property and causing the elderly to become homeless by first utilizing the bill for the needless forced-placed insurance policies to place the loan in a default status, and then once it is in default status, hyper inflating the balances of the loans by charging the manufactured property inspections fees, property preservation fees, property appraisal fees, (falsely alleged) delinquent  taxes fees, to the balance of the loan and whether that is a   violation of their obligation to carry out contractual obligations and rights in good faith;

k)   Whether the above conduct constitutes a breach of contract;

l)   Whether the above conduct constitutes a breach of the implied covenant of good faith and fair dealing;

m)   Whether the above conduct constitutes  unjust enrichment;

n)   Whether Unknown Insurer tortuously interfered with a contractual business relationship;

o)   Whether the above conduct constitutes  a violation of Florida's Deceptive and Unfair Trade Practices Act;

p)   Whether the above conduct violates FDCPA; and

q)   The appropriateness and proper form of any declaratory of injunctive relief.

<u>Typicality</u>

75.  The Class Membersø claims are typical of each otherøs claims because of the similarity, uniformity and common purpose of Defendantsø conduct.

76.  The reverse mortgage agreements and Condominium Riders that governed Plaintifføs relationship with Defendants is the same or similar to those of the putative class members.

77.  The form, threatening and misleading letters received by Plaintiff are the same or similar to those of the putative class members.

78.  The excessive fees charged to Plaintiff by Defendants (after the loans are placed in alleged õdefaultö status) within monthly mortgage statements are the same or similar to those of the putative class members.

79.  Defendants treated Plaintiff and the putative class members similarly and consistent with its overall policies and practices by entering into force-placed mortgage arrangements with unknown insurers, and engaging in improper and illegal kickback/commission schemes, charging amounts that bore no relationship to preservation of the property, and were duplicative of insurance already covering condominiums consistent with Condominium Riders.

80.  Defendants treated Plaintiff and the putative class members similarly and consistent with its overall policies and practices and have pervasive policies and goals of wrongfully obtaining property - that they purchased for pennies on the dollar - and causing the elderly to become homeless, by first utilizing the bill for the needless forced-placed insurance policies to place the loan in a default status, and then once itøs in default status, hyper inflating the balances of the loans by

charging the manufactured property inspections fees, property preservation fees, property appraisal fees, (falsely alleged) delinquent  taxes fees, to the balance of the loan to boost their bottom line profits.

Adequacy

81.    Plaintiff is an adequate representative of the Class and subclasses and will fairly represent the interest of the class.

82.    Plaintiff has retained counsel experienced in complex civil litigation, with a focus on contract and insurance matters, committed to the prosecution of this case.

83.    Plaintiff's counsel has ample financial and legal resources to meet the demands of class action litigation.

84.    There is no conflict between Plaintiff and the unnamed Class Members, and Plaintiff has the time, knowledge and resources to adequately represent the class.

Fed. R. Civ. P. 23 & Local Rule 23.1 Allegations

85.    The questions of law or fact common to Plaintiff's and each Class Member's claims predominate over any questions of law or fact affecting only individual class members.

86.    The claims brought by Plaintiff and the unnamed Class Members are based on Defendant's consistent conduct and business practices with respect to elderly reverse mortgage borrowers with equity in condominium units and property insurance coverage through their condominium owners associations.

87.    The claims brought by Plaintiff and the unnamed Class Members are based on Defendants' consistent and pervasive conduct in charging borrowers for force-

placed insurance policies that are excessive, unwarranted and in many instances duplicative of coverage obtained by condominium owners associations.

88.     The claims brought by Plaintiff and the unnamed Class Members are based on Defendant's consistent and pervasive scheme to profit from its conduct in unnecessarily charging for "service fees" (for nothing), "property preservation" (for nothing), "property inspections" (that do not occur and are not authorized), "property appraisals" (that did not occur and were not authorized) and even "delinquent [property] taxes" (that were never delinquent).

89.     Common issues predominate because liability can be determined on a class-wide basis when the Court determines the propriety or impropriety of the above conduct. Therefore, common questions predominate over individual questions.

90.     Class representation is superior to other available methods for the fair and efficient adjudication of this controversy for the following reasons:

a)   Multiple separate lawsuits would be wasteful in light of the sheer volume of reverse mortgage customers with interest in condominiums that have come into contact with Defendants.

b)   Joinder of all class members would create hardship, inconvenience and undue expense, as reverse mortgage borrowers falling into the class definitions reside throughout the United States.

c)   Individual claims by the class members are impractical because the costs to pursue individual claims, in many circumstances, may exceed the value of what any one class members has at stake.

d) There are no known individual Class Members who are interested in controlling the prosecution of separate actions.

e) The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

f) This action is manageable as a class action.

91.  The prosecution of separate actions by the individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Defendants.

92.  Defendants have acted in a manner generally applicable to the Class, making injunctive or declaratory relief with respect to the Class as a whole appropriate.

<u>**COUNT I: BREACH OF CONTRACT –**</u>
<u>**UNNECESSARY FORCE-PLACED INSURANCE**</u>
(On behalf of classes (a), (b), (c) and (d), against BOA and Champion)

93.  Plaintiff incorporates the allegations in ¶¶ 1-92 by reference.

94.  A contract existed between Plaintiff (and the Class Members) and Defendants.

**Exhibit A, Reverse Mortgage Agreement.**

95.  Plaintiff (and the Class Members), condominium unit owners aged 62 or over, entered into reverse mortgage agreements with BOA and Champion.

96.  Paragraph five of that agreement states that ōIf Borrower fails to make these payments or the property charges required by Paragraph 2 [as amended by the Condominium Rider] . . . then Lender may do and pay **whatever is necessary** to protect the value of the Property and Lenderős rights in the Property, including

payment of taxes, hazard insurance and other items mentioned in Paragraph 2.ö

**Exhibit A.** (emphasis supplied).

97.    In violation of this provision of the reverse mortgage agreement, Defendants BOA and Champion purchased force-placed flood insurance, which was not necessary to protect the value of the Property and Lenderøs rights in the property.

98.    With respect to Plaintiff, BOA and Champion never justified why paying $6,467.31 in flood insurance (for a small single-resident condominium unit) was õnecessaryö to protect the value of the Property.

99.    BOA and Champion never communicated the terms of this forced coverage.

100.   BOA and Champion never provided the policy or declarations page to Plaintiff.

101.   BOA and Champion never provided any information justifying the (exorbitant) premium it had paid for this õforced placed flood insurance.ö

102.   BOA and Champion never even told Plaintiff the name of the insurer or its contact information.

103.   The manner in which BOA and Champion accrued this debt on Plaintifføs behalf was not reasonable and appropriate to protect its interest.

104.   BOA and Championed employed this tactic of purchasing unnecessary forced placed insurance.

105.   Thus, Defendants breached their contracts with Plaintiff and the Class Members when it purchased unnecessary and exorbitant õforce placed insurance.ö

106.   Plaintiff and the Class Members suffered damages as a result of Defendantøs breach.

## COUNT II: BREACH OF CONTRACT –
## UNNECESSARY AND DUPLICATIVE FORCE-PLACED INSURANCE
(On behalf of class (b), against BOA and Champion)

107.     Plaintiff incorporates the allegations in ¶¶ 1-92 by reference.

108.     A contract existed between Plaintiff (and the Class Members) and Defendants.

**Exhibit A, Reverse Mortgage Agreement.**

109.     Plaintiff (and the Class Members), condominium unit owners aged 62 or over, entered into reverse mortgage agreements with BOA and Champion.

110.     Under a "Condominium Rider" to the mortgage agreement, **Exhibit B**, Plaintiff and the Class Members were excused from the personal obligation of paying for property taxes so long as their condominium owners associations maintained a blanket insurance policy: "Borrower's obligation . . . to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association."

111.     Under paragraph five of the reverse mortgage agreement, "**If Borrower fails to make these payments** or the property charges required by Paragraph 2 [as amended by the Condominium Rider] . . . then Lender may do and pay **whatever is necessary** to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2." **Exhibit A.**

112.     Although Plaintiff and the class members (personally or through their condominium owners associations) never failed to make a property insurance payment which would trigger Defendants' right to take necessary steps to "protect the value of the property," and ultimately accelerate the loan,   BOA and

Champion unilaterally and improperly sought and (allegedly) purchased unnecessary force-placed flood insurance for Plaintiff's property.

113. This forced-placed insurance was duplicative, given that the owners association already maintained insurance, and Defendants never took necessary steps to investigate whether or not it did.

114. With respect to Plaintiff, BOA and Champion never justified why paying $6,467.31 in flood insurance (for a small single-resident condominium unit) was "necessary" to protect the value of the Property, particularly in light of the fact that the property was already insured.

115. BOA never communicated the terms of this new and duplicative coverage.

116. BOA never provided the policy or declarations page to Plaintiff.

117. BOA never provided any information justifying the (exorbitant) premium it had paid for this "forced placed flood insurance."

118. BOA never even told Plaintiff the name of the insurer or its contact information.

119. The manner in which BOA and Champion accrued this debt on Plaintiff's behalf was not reasonable and appropriate to protect its interest.

120. Plaintiff and the Class Members never "failed" to make a payment, **Exhibit A,** and their owners associations never failed to maintain requisite insurance, **Exhibit B.**

121. Thus, Defendants breached their contracts with Plaintiff and the Class Members when it purchased unnecessary, duplicative and exorbitant "force placed insurance.

122.   Plaintiff and the Class Members suffered damages as a result of Defendant's breach.

### COUNT III: BREACH OF CONTRACT – UNNECESSARY AND EXCESSIVE FEES AND CHARGES
(On behalf of classes (c) & (e), against BOA and Champion)

123.   Plaintiff incorporates the allegations in ¶¶ 1-92 by reference.

124.   A contract existed between Plaintiff (and the Class Members) and Defendants. **Exhibit A, Reverse Mortgage Agreement.**

125.   Plaintiff (and the Class Members), condominium unit owners aged 62 or over, entered into reverse mortgage agreements with BOA and Champion.

126.   The borrower-class members' financial obligations to BOA and Champion were strictly defined, **Exhibit A.**

127.   Under paragraph six of the reverse mortgage agreement, **Exhibit A**, BOA and Champion had the right to make inspections and appraisals of the property only "in a **reasonable manner and at reasonable times** provided that Lender [BOA and Champion] shall give the borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal **which must be related to Lender's interest in the property**. If the Property is vacant or abandoned or the loan is in default, Lender may take **reasonable action** to protect and preserve such vacant or abandoned Property without notice to the Borrower." **Exhibit A.**

128.   Under paragraph five of the reverse mortgage agreement, "**If Borrower fails to make these payments** or the property charges required by Paragraph 2 [including property taxes] . . . then Lender may do and pay **whatever is necessary** to protect

the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2." **Exhibit A.**

129.  Plaintiff and the Class Members received reverse mortgage statements from BOA and Champion containing various unauthorized deductions and increasing the balances of the loan (constituting depletions of their equity) that were not authorized by contract. Examples of these unnecessary charges are attached as **Exhibit F.**

130.  BOA and Champion consistently tacked on various other unnecessary and unauthorized charges in the form of "service fees" (for nothing), "property preservation" (for nothing), "property inspections" (that did not occur and were not authorized), "property appraisals" (that did not occur and were not authorized), and even "delinquent [property] taxes" (that were never delinquent). **Exhibit F.**

131.  These charges were not "necessary" for BOA or Champion to protect the value of the property, and were not related to Lender's interest in the property.

132.  The excessive and unnecessary charges were often facilitated by Defendant's false and fraudulent belief that Plaintiff and the Class Members had defaulted, when in fact they had not.

133.  Thus, BOA and Champion breached its contract with Plaintiff and the Class Members when it billed them for unnecessary charges in the form of "service fees" (for nothing), "property preservation" (for nothing), "property inspections" (that did not occur and were not authorized), "property appraisals" (that did not

occur and were not authorized), and even "delinquent [property] taxes" (that were never delinquent).

134.   BOA and Champion's conduct of charging for fees once the loans went into "default status" had the direct effect of raising the loan balance, thereby depleting Plaintiff and the Class Members' equity in their condominium units.

135.   This ploy was utilized by Defendants to maximize profits on the reverse mortgage loans when they sold the property at foreclosure.

136.   Plaintiff and the Class Members suffered damages as a result of Defendant's breach.

**COUNT IV: BREACH OF CONTRACT –
UNAUTHORIZED FORECLOSURE PROCEEDINGS**
(On behalf of class (d), against BOA and Champion)

137.   Plaintiff incorporates the allegations in ¶¶ 1-92 by reference.

138.   A contract existed between Plaintiff (and the Class Members) and Defendants. **Exhibit A, Reverse Mortgage Agreement.**

139.   Plaintiff (and the Class Members), condominium unit owners aged 62 or over, entered into reverse mortgage agreements with BOA and Champion.

140.   Paragraph five of that agreement states that "If Borrower fails to make these payments or the property charges required by Paragraph 2 [as amended by the Condominium Rider] . . . then Lender may do and pay **whatever is necessary** to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2." **Exhibit A.** (emphasis supplied).

141.   In violation of this provision of the reverse mortgage agreement, Defendants BOA and Champion purchased force-placed flood insurance, which was not necessary to protect the value of the Property and Lender's rights in the property.

142.   With respect to Plaintiff, BOA and Champion never justified why paying $6,467.31 in flood insurance (for a small single-resident condominium unit) was "necessary" to protect the value of the Property.

143.   BOA and Champion never communicated the terms of this forced coverage.

144.   BOA and Champion never provided the policy or declarations page to Plaintiff.

145.   BOA and Champion never provided any information justifying the (exorbitant) premium it had paid for this "forced placed flood insurance."

146.   BOA and Champion never even told Plaintiff the name of the insurer or its contact information.

147.   The manner in which BOA and Champion accrued this debt on Plaintiff's behalf was not reasonable and appropriate to protect its interest.

148.   Thus, Defendants breached their contracts with Plaintiff and the Class Members when it purchased unnecessary and exorbitant "force placed insurance."

149.   Defendant's then used this invalid "force placed insurance" expense that it had accrued on Plaintiff and the other elderly Class Members' behalf, to accuse them of default, and wrongfully institute foreclosure proceedings against them.

150.   Defendants breached their contracts with Plaintiff and the Class Members by instituting foreclosure proceedings that were not authorized by contract.

151.   Plaintiff and the Class Members suffered damages as a result of Defendant's breach.

29

152.   Plaintiff and the Class Members seek damages incurred as a result of these wrongful foreclosure proceedings against the elderly, and relief from this Court, including but not limited to injunctive relief, to halt these wrongful foreclosure proceedings.

## COUNT V: BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING – UNNECESSARY FORCE-PLACED INSURANCE
(On behalf of classes (a), (b), (c) and (d), against BOA and Champion)

153.   Plaintiff incorporates the allegations in ¶¶ 1-92 by reference.

154.   A contract existed between Plaintiff (and the Class Members) and Defendant. **Exhibit A, Reverse Mortgage Agreement.**

155.   Plaintiff (and the Class Members), condominium unit owners aged 62 or over, entered into reverse mortgage agreements with BOA and Champion.

156.   Paragraph five of that agreement states that "**If Borrower fails to make these payments** or the property charges required by Paragraph 2 [as amended by the Condominium Rider] . . . then Lender may do and pay **whatever is necessary** to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2." **Exhibit A.** (emphasis supplied).

157.   Defendants BOA and Champion purchased force-placed flood insurance, which was not necessary to protect the value of the Property and Lender's rights in the property.

158.   A covenant of good faith and fair dealing is implied in every contract and imposes upon each party a duty of good faith and fair dealing in the performance of contractual obligations and in exercising contractual rights.

159.  Defendants breached their duty by failing to perform due diligence and properly investigate prior to purchasing force-placed insurance for Plaintiff and the Class Membersø condominium properties, as to whether the units were already insured through a Condominium Rider, such as **Exhibit B**.

160.  Defendants breached their duty because they had no reasonable basis to believe that Plaintiff had failed to comply with a loan contractøs requirements prior to seeking out force-placed property insurance.

161.  Defendants breached their duty by accusing Plaintiff and the Class Members of default (without sufficient and particularized notice of how this was so), and even instituting foreclosure proceedings in some circumstances, based on their incorrect position that Plaintiff and the Class Membersø were responsible for excessive and unnecessary force-placed insurance payments.

162.  Defendants breached their duty by improperly notifying Plaintiff and the Class Members of the breach, and instead sending them letters that, among other things, were intentionally vague, improperly assumed governmental authority, unilaterally announced that Defendants were õauthorizedö to purchase unnecessary insurance, and were intended to harass, mislead and intimidate the elderly, in an attempt to induce payments that were not even due under the partiesø contractual agreement. Samples of these letters are attached hereto as **Exhibits C, D, E & G.**

163.  Defendants breached their duty by failing to justify exorbitant insurance premiums ($6,467.31 in the case of the named Plaintiff), failing to research and use the market to find a more affordable policy in light of the propertyøs needs,

collecting kickbacks (percentages of the premiums) from the unknown insurers, failing to communicate the terms of the coverage, purchasing retroactive coverage, failing to provide the declarations page and failing to identify the insurer or its contact information, to Plaintiff and the Class Members.

164.    Upon information and belief, Defendants breached their duty given that a portion of the $6,467.31 related to backdated insurance coverage, coverage that exceeded the legal and contractual requirements, and various unnecessary and exorbitant fees.

165.    Defendants breached their duty in light of the veil of secrecy under which they purchased the force-placed flood insurance, exposing that it had a genuine and sinister interest in acceleration, foreclosure, and obtaining the property, *not* protection of the value of the property.

166.    Defendantsø actions did not comport with Plaintiff and the Class Membersø reasonable contractual expectations. Plaintiff and the Class Members, elderly condominium unit owners with reverse mortgages, thought they could trust large financial institutions to treat them fairly, yet bore the brunt of the above conduct.

167.    Plaintiff and the Class Members were harmed by Defendantøs conduct.

168.    Specifically, Plaintiff and the Class Members were charged for excessive and unnecessary force-placed insurance policies, either causing a depletion of equity, inducement of payment, and institution of wrongful foreclosure proceedings.

**COUNT VI: BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING – UNNECESSARY AND EXCESSIVE FEES AND CHARGES**
(On behalf of classes (c) & (e), against Champion)

169.    Plaintiff incorporates the allegations in ¶¶ 1-92 by reference.

170.  A contract existed between Plaintiff (and the Class Members) and Defendant. **Exhibit A, Reverse Mortgage Agreement.**

171.  Plaintiff (and the Class Members), property owners aged 62 or over, entered into reverse mortgage agreements with BOA and Champion.

172.  Under paragraph six of the reverse mortgage agreement, **Exhibit A**, Champion had the right to make inspections and appraisals of the property only õin a **reasonable manner and at reasonable times** provided that Lender [Champion] shall give the borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal **which must be related to Lender's interest in the property**. If the Property is vacant or abandoned or the loan is in default, Lender may take **reasonable action** to protect and preserve such vacant or abandoned Property without notice to the Borrower.ö **Exhibit A.**

173.  Under paragraph five of the reverse mortgage agreement, õ**If Borrower fails to make these payments** or the property charges required by Paragraph 2 [including property taxes] . . . then Lender may do and pay **whatever is necessary** to protect the value of the Property and Lenderøs rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.ö **Exhibit A.**

174.  A covenant of good faith and fair dealing is implied in every contract and imposes upon each party a duty of good faith and fair dealing in the performance of contractual obligations and in exercising contractual rights.

175.  Champion breached its duty by issuing reverse mortgage statements containing various unauthorized deductions. Examples of these unnecessary charges are attached as **Exhibit F.**

176.   Champion breached its duty by consistently tacking on various unnecessary and unauthorized charges in the form of õservice feesö (for nothing), õproperty preservationö (for nothing), õproperty inspectionsö (that did not occur and were not authorized), õproperty appraisalsö (that did not occur and were not authorized), and even õdelinquent [property] taxesö (that were never delinquent). **Exhibit F.**

177.   These charges were not õnecessaryö for Champion to protect the value of the property, and were not related to Lenderøs interest in the property.

178.   Indeed, had Champion performed its obligations in good faith, and performed due diligence, it would have noted that these fees were unnecessary and excessive.

179.   Had Champion performed its obligations in good faith, and performed due diligence, it would have noted that Plaintiff and the Class Members had already timely paid their property taxes.

180.   Had Champion performed its obligations in good faith, and performed due diligence, it would have noted that Plaintiff and the Class Members belonging in class (b) already had property insurance through their owners associations, and thus õproperty preservationö and õinspectionö fees were grossly unwarranted.

181.   Champion breached its duty by aiming to profit from inflating the balances of the loans and unnecessarily depletes Plaintiff and the Class Membersø equity in their condominium units, rather than dealing with their elderly and vulnerable customers fairly.

182.   Championøs actions did not comport with Plaintiff and the Class Membersø reasonable contractual expectations. Plaintiff and the Class Members, elderly

condominium unit owners with reverse mortgages, thought they could trust a large financial institution to treat them fairly, yet bore the brunt of the above conduct.

183. Plaintiff and the Class Members were harmed by Defendant's conduct.

184. Specifically, Plaintiff and the Class Members were charged for excessive and unnecessary fees in their reverse mortgage statements, inflating the balances, causing a depletion of equity, inducement of payment, and institution of wrongful foreclosure proceedings

**COUNT VII: UNJUST ENRICHMENT –**
**UNNECESSARY FORCE-PLACED INSURANCE**
(On behalf of classes (a), (b), (c) and (d), against all Defendants)

185. Plaintiff incorporates the allegations in ¶¶ 1-92 by reference.

186. Defendant unknown insurer received from Plaintiff and the Class Members a benefit in the form of payments for "force placed flood insurance" premiums on condominiums, in connection with reverse mortgage agreements.

187. A portion of this amount related to backdated insurance coverage, coverage that exceeded the legal and contractual requirements, and various unnecessary and exorbitant fees.

188. Defendants Champion and BOA received from Plaintiff and the Class Members a benefit in the form of overcharges related to force-placed flood insurance that include but are not limited to unwarranted kickbacks and commissions.

189. Defendants Champion and BOA also received from the Plaintiff and the Class Members, equity in their condominium units, and an unauthorized basis to declare

default and improperly institute foreclosure proceedings, in relation to these unnecessary and unauthorized force-placed insurance policies.

190. All Defendants entered into agreements whereby Unknown Insurer would provide force-placed insurance policies to BOA and Champion customers, for the portfolio of reverse mortgage loans it monitored which were paid for by Plaintiff and the Class Members at prices that exceeded the market rate. Defendants knew the charges were inflated and not the result of good faith financial practices.

191. In many instances, as with class (b), Defendants did not even perform sufficient due diligence to realize that requisite insurance was already provided by the owners association.

192. Unknown Insurer paid and collected significant funds in kickbacks, commissions, and reinsurance tied to the cost of the force-placed insurance premium. These commissions and kickbacks were paid directly to BOA and Champion.

193. The kickbacks and commissions were subsumed into the price of the insurance premium and ultimately paid by the borrower. All Defendants had the incentive to charge and collect inflated prices for the force-placed policies, rather than treat the elderly customers fairly.

194. In light of the above, Defendants had knowledge of the benefit from Plaintiff and the Class Members and voluntarily accepted and retained the benefit conferred on them.

195. Under the circumstances, it would be inequitable for Defendant to retain the benefit.

196.    Specifically, Defendants should not retain payments for excessive charges and forced insurance premiums that falsely claimed to be authorized by contract.

197.    Defendants will be unjustly enriched if they are allowed to retain the benefit, and Plaintiff and each class member is entitled to an amount equal to the amount each of them enriched Defendants.

## COUNT VIII: TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP
### (On behalf of classes (a), (b), (c) and (d), against Unknown Insurer)

198.    Plaintiff incorporates the allegations in ¶¶ 1-92 by reference.

199.    Plaintiff and the Class Members have a business relationship with BOA and Champion pursuant to the reverse mortgage contracts and condominium rider.

200.    Plaintiff and the Class members have legal rights under these mortgage contracts. For example, under paragraph give of the reverse mortgage agreement, Plaintiff and the Class Members are only to be charged what is "necessary" for BOA and Champion to preserve property value.

201.    Unknown Insurer has knowledge of Plaintiff and the Class Members' business relationship with BOA and Champion pursuant to the mortgage contracts. Unknown Insurer is not a party to the mortgage contracts, nor is it a third-party beneficiary. Further, Unknown Insurer does not have any beneficial, economic or supervisory interest in the mortgage contracts.

202.    Unknown Insurer intentionally and unjustifiably interfered with Plaintiff and the Class Members' rights under the mortgage contracts, by, among other things, paying kickbacks to BOA and Champion in exchange for its agreement to enter into force-placed insurance policies at excessive rates that bore no relationship to

the risk being insured against, eventually passing this expense off to Plaintiff and the Class Members.

203.     Plaintiff and the Class Members have been damaged as a result of Unknown Insurer's interference with their mortgage contracts by being charged bad faith, exorbitant, and illegal charges for force-placed insurance in contravention of their rights under the reverse mortgage agreements.

## COUNT IX: FINANCIAL EXPLOITATION OF VULNERABLE ADULTS
(on behalf of class (g), against all Defendants)

204.     Plaintiff incorporates the allegations in ¶¶ 1-92 by reference.

205.     Fla. Stat. § 415.1111 provides a private cause of action for "vulnerable adult[s]" that have been financially exploited.

206.     "Exploitation" may include, but is not limited to, "unauthorized taking of personal assets" and the "misuse of power . . . resulting in the unauthorized appropriation, sale or transfer of property." Fla. Stat. § 415.102.

207.     Defendants collectively engaged in a scheme to mislead, defraud and financially exploit Plaintiff and the Class Members, a set of elderly and specially protected vulnerable adults who entered into reverse mortgages on their properties.

208.     Under the reverse mortgage agreements, **Exhibit A**, Plaintiff and the Class Members were responsible for paying property taxes and flood and hazard insurance for the property.

209.     Either personally or through their condominium owners associations (with a Condominium Rider, **Exhibit B**), Plaintiff and the Class Members properly maintained property insurance for their condominium units, in compliance with the reverse mortgage agreements.

38

210.    Plaintiff and the Class Members also properly and timely paid their property taxes.

211.    Under paragraph five of the mortgage agreement, "**If Borrower fails to make these payments** or the property charges required by Paragraph 2 [as amended by the Condominium Rider] . . . then Lender may do and pay **whatever is necessary** to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2." **Exhibit A.** (emphasis supplied).

212.    Even though Plaintiff and the Class Members, vulnerable adults, abided by their end of the bargain, BOA and Champion unilaterally and improperly sought and purchased unnecessary force-placed insurance.

213.    Even though Plaintiff and the Class Members, vulnerable adults, abided by their end of the bargain, BOA and/or Champion charged for "service fees" (for nothing), "property preservation" (for nothing), "property inspections" (that did not occur and were not authorized), "property appraisals" (that did not occur and were not authorized), and even "delinquent [property] taxes" (that were paid without proof of delinquency or non-payment).

214.    BOA and Champion also sent Plaintiff and the Class Members letters that, among others things, were intentionally vague, improperly assumed governmental authority, unilaterally announced that Defendants were "authorized" to purchase unnecessary insurance or incur other fees, and were intended to harass, mislead and intimidate the elderly, in an attempt to induce payments that were not even

due under the parties¢ contractual agreement. Samples of these letters are attached hereto as **Exhibits C, D, E & G.**

215.   Unknown insurer also misused its power and enriched itself through an unnecessary relationship with BOA and Champion.

216.   BOA and Champion improperly received an unearned kickback from Unknown Insurer as a result of seeking out unnecessary and duplicative flood insurance.

217.   This kickback incentivized BOA and Champion to act against the interest of Plaintiff and the Class Members, and seek out force-placed insurance when it was not necessary, violating their duties to carry out contractual obligations in good faith.

218.   Unknown Insurer profited by receiving a premium or premiums from BOA and Champion that bore no relationship to the risk being insured against.

219.   BOA and Champion had no reasonable basis to believe that Plaintiff and the Class Members had failed to comply with the loan contract¢s requirements prior to seeking out force-placed property insurance, charging various unauthorized fees, accusing the vulnerable and elderly of default, and even instituting foreclosure proceedings in certain circumstances.

220.   Defendants never articulated precisely how, when or why Plaintiff and the Class Members breached the reverse mortgage agreement; instead of aiming to cure any perceived breach, their intent was to rob the elderly of their equity and render them homeless.

221.   In light of the above conduct, Defendants exploited vulnerable adults.

222.	Plaintiff and the Class Members are therefore due actual and punitive damages, and reasonable attorneys' fees and costs, as provided by statute. Fla. Stat. § 415.1111.

### COUNT X: DECEPTIVE AND UNFAIR TRADE PRACTICES UNDER FLA STAT. § 501.201, *et seq.*
(on behalf of class (f), against all Defendants)

223.	Plaintiff incorporates the allegations in ¶¶ 1-92 by reference.

224.	Fla. Stat. § 501.204 provides a private cause of action for those harmed by "unconscionable acts or practices, and unfair or deceptive acts in the conduct of any trade or commerce . . .".

225.	Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") "shall be construed liberally to promote" the policies of simplifying, clarifying and modernizing the law governing consumer protection and "deceptive and unfair trade practices," and to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202.

226.	Plaintiff and the Class Members are "consumers" as defined in Fla. Stat. § 501.203.

227.	Defendants have engaged in, and continue to engage in, unconscionable acts or practices and used unfair or deceptive acts in the conduct of their trade and/or commerce in the State of Florida.

228.	Plaintiff and the Class Members seek protection under FDUTPA Statute from Defendant's unfair practices involving wrongfully accusing Plaintiff and the Class Members, reverse mortgage customers of over 62 years in age with considerable

equity in their condominium units, of default of the reverse mortgage agreement, without cause to do so.

229.  Plaintiff and the Class Members seek protection under FDUTPA Statute from Defendant's unfair practices involving wrongfully accusing Plaintiff and the Class Members, reverse mortgage customers of over 62 years in age with considerable equity in their condominium units, of charging inflated premiums (that were not "necessary" for property value preservation) for force-placed insurance intended to generate unlawful kickbacks and commissions amongst Defendants.

230.  Defendants' conduct is unfair and unconscionable in that Plaintiff and the Class Members abided by their end of the bargain, yet BOA and Champion unilaterally and improperly sought and purchased unnecessary force-placed insurance.

231.  Defendants' conduct is unfair and unconscionable in that Plaintiff and the Class Members abided by their end of the bargain, yet BOA and/or Champion then placed the reverse mortgage loans in "default status" so that they could commence charging for "service fees" (for nothing), "property preservation" (for nothing), "property inspections" (that did not occur and were not authorized), "property appraisals" (that did not occur and were not authorized), and even "delinquent [property] taxes" (that were paid without proof of delinquency or non-payment).

232.  Defendants' conduct is unfair and unconscionable in that BOA and Champion sent Plaintiff and the Class Members letters that, among others things, were intentionally vague, improperly assumed governmental authority, unilaterally announced that Defendants were "authorized" to purchase unnecessary insurance or incur other fees, and were intended to harass, mislead and intimidate the

elderly, in an attempt to induce payments that were not even due under the parties' contractual agreement. This correspondence was intended to mislead the ordinary consumer. Samples of these letters are attached hereto as **Exhibits C, D, E & G.**

233.  Unknown insurer's conduct is also unfair and unconscionable in that it misused its power and enriched itself through an unnecessary relationship with BOA and Champion.

234.  BOA and Champion's conduct was unfair and unconscionable in that they improperly received an unearned kickback from Unknown Insurer as a result of seeking out unnecessary and duplicative flood insurance.

235.  This kickback incentivized BOA and Champion to act against the interest of Plaintiff and the Class Members, and seek out force-placed insurance when it was not necessary, violating their duties to carry out contractual obligations in good faith.

236.  Unknown Insurer profited by receiving a premium or premiums from BOA and Champion that bore no relationship to the risk being insured against.

237.  BOA and Champion had no reasonable basis to believe that Plaintiff and the Class Members had failed to comply with the loan contract's requirements prior to seeking out force-placed property insurance, charging various unauthorized fees, accusing the vulnerable and elderly of default, and even instituting foreclosure proceedings in certain circumstances.

238.  BOA and Champion's conduct was unfair and unconscionable in that it never articulated precisely how, when or why Plaintiff and the Class Members breached

the reverse mortgage agreement; instead of aiming to cure any perceived breach, their intent was to rob the elderly of their equity and render them homeless.

239.   A reasonable consumer would not know how or why to contest unilateral and improper accusations of default and excessive and unnecessary fees, particularly coming from large, government-regulated banks and insurance companies and servicers.

240.   Plaintiff and the Class Members are thus entitled to all relief stated in Fla. Stat. § 501.2105 & Fla. Stat. § 501.211, including a declaratory judgment that Defendants' conduct is unfair and deceptive, within the meaning of the Statute, and an injunction preventing further similar practices targeting elderly condominium owners who enter into reverse mortgage agreements.

### COUNT XI: VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692, *et seq.*
(On behalf of classes (a), (b), (c) and (d), against BOA and Champion)

241.   Plaintiff incorporates the allegations in ¶¶ 1-92 by reference.

242.   Congress has found that there "is abundant evidence of the use of abusive, deceptive and unfair debt collection practices by many debt collectors."

243.   A "consumer" means any natural person obligated or "allegedly" obligated to pay and debt.

244.   A "debt" means any "obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

44

245. Defendants BOA and Champion are "debt collectors" within the meaning of the Act.

246. Defendants engaged in "false or misleading representations" in connection with their claim that Plaintiff and the Class Members owed money in connection with "force placed insurance."

247. Defendants also engaged in "unfair practices," 15 U.S.C. § 1692f, by claiming a debt was due, when not permitted by the agreement creating the debt or federal law, **Exhibit A, reverse mortgage agreement; Exhibit B, Condominium Rider.**

248. Specifically, Defendants purchased force-placed insurance, and informed their elderly customers that these payments were due and that there loans were in default, even though the purchase of this insurance was excessive and not "necessary" for preservation of property values.

249. Defendants never sufficiently articulated how, when or why the elderly Plaintiff and Class Members had breached their reverse mortgage agreements.

250. BOA and Champion had no reasonable basis to believe that Plaintiff and the Class Members had failed to comply with a loan contract's requirements prior to seeking out force-placed property insurance and accusing their customers of default.

251. The veil of secrecy under which BOA and Champion purchased and tried to collect for the force-placed flood insurance exposes that it had a genuine and sinister interest in acceleration, foreclosure, and obtaining the property at a great profit, *not* protection of the value of the property.

252.    For instance, BOA and Champion sent Plaintiff and the Class Members letters that, among others things, were intentionally vague, improperly assumed governmental authority, unilaterally announced that Defendants were õauthorizedö to purchase unnecessary insurance or incur other fees, and were intended to harass, mislead and intimidate the elderly, in an attempt to induce payments that were not even due under the partiesø contractual agreement. Samples of these letters are attached hereto as **Exhibits C, D, E & G.**

253.    BOA and Champion casually skipped over contractual obligations, violated their obligations to carry out those terms in good faith, and improperly manufactured a breach so that it could shamelessly rob its elderly customer of her equity and eventually institute foreclosure proceedings to take her property and render her homeless.

254.    Defendant Champion also engaged in õfalse or misleading representations,ö 15 U.S.C. § 1692e in connection unnecessarily charging for õservice feesö (for nothing), õproperty preservationö (for nothing), õproperty inspectionsö (that do not occur and are not authorized), õproperty appraisalsö (that did not occur and were not authorized), and even õdelinquent [property] taxesö (that were never delinquent).

255.    Plaintiff and the Class Members suffered damages as a result of Defendantsø violation of the FDCPA.

## DEMAND FOR JURY TRIAL

Plaintiff requests jury trial of all claims that can be so tried.

WHEREFORE, Plaintiff Sarah Alhassid, on her own behalf and on behalf of the Class, prays for the following relief:

a) Certification of this case as a Class Action on behalf of the Classes defined above and to appoint Sarah Alhassid as Class Representative and the undersigned as lead counsel;

b) Declare that Defendants were unjustly enriched by the above-described conduct;

c) Declare that Defendants breached their contracts by the above-described conduct;

d) Declare the Defendants violated the covenant of good faith and fair dealing by the above-described conduct;

e) Declare that Unknown Insurer tortuously interfered with a business relationship by the above-described conduct;

f) Declare that Defendants financially exploited vulnerable adults and the elderly by the above-described conduct;

g) Declare that Defendants violated Florida's Unfair and Deceptive Trade Practices Statute in light of the above-described conduct;

h) Declare that Defendants violated the FDCPA in light of the above-described conduct;

i) Enter Judgment against Defendants for all economic, monetary, actual, consequential, compensatory and punitive damages on behalf of the class, based on Defendants' conduct;

j) Award Plaintiff and the Class reasonable costs and attorneys' fees;

k) Award Plaintiff and the Class pre- and post-judgment interest;

l)  Enter an injunction requiring a corrective measure to be taken to prevent Defendants from engaging in the above-described conduct, including a stay to wrongful foreclosure proceedings; and

m)  All other relief, in law and equity, deemed appropriate by this Court.

Respectfully submitted,

**HERSSEIN LAW GROUP**
**12000 Biscayne Boulevard**
**Suite 402**
**North Miami, Florida 33181**
**Telephone No: (305) 531-1431**
**Facsimile No: (305) 531-1433**

_____
**REUVEN HERSSEIN, ESQUIRE**
**FBN 0461504**
**IRIS HERSSEIN, ESQUIRE**
**FBN 0462391**
**JEFFREY L. GOODMAN, ESQUIRE**
**FBN 0068878**
**MAX M. NELSON, ESQUIRE**
**FBN 0084532**
**Attorneys for Plaintiff**

**Beighley, Myrick & Udell, P.A.**
**66 West Flagler Street**
**7ᵗʰ Floor**
**Miami, FL 33130**
**(305)-349-3930 – Phone**
**(305) 349-3931 – Fax**

**/s/ Maury L. Udell**

_____
**MAURY L. UDELL, ESQUIRE**
**FBN 121673**
**Attorney for Plaintiff**

48