# EXHIBIT 10

**Timothy S. DeJong,** OSB No. 940662
Email: tdejong@stollberne.com
**Scott A. Shorr,** OSB No. 961873
Email: sshorr@stollberne.com
**STOLL STOLL BERNE LOKTING & SHLACHTER P.C.**
209 S.W. Oak Street, Fifth Floor
Portland, Oregon 97204
Telephone:    (503) 227-1600
Facsimile:    (503) 227-6840


**Shanon J. Carson** (admitted *pro hac vice*)
Email: scarson@bm.net
**Patrick F. Madden** (admitted *pro hac vice*)
Email: pmadden@bm.net
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA  19103
Telephone:    (215) 875-4656
Facsimile:    (215) 875-4604

**Attorneys for Plaintiffs (*additional counsel on signature page*)**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LARRY ARNETT, RONDA ARNETT, ALICE A. BERGER, LEE M. BERGER, SUSAN LASS, MARK LEMMER, PAMELA LEMMER, KARYL RESNICK, ERIC SKANSGAARD, DONNA M. WADE, and EDWARD M. WALLACE, JR., individually and on behalf of all others similarly situated, | Case No. 3:11-CV-01372-SI |
| Plaintiffs, | **SETTLEMENT AGREEMENT AND RELEASE** |
| v. | |
| BANK OF AMERICA, N.A. in its own capacity and as successor by merger to BAC HOME LOANS SERVICING, L.P., | |
| Defendant. | |

_____

## SETTLEMENT AGREEMENT AND RELEASE

1.      This Settlement Agreement and Release is entered into by Plaintiffs Larry Arnett, Ronda Arnett, Alice A. Berger, Lee M. Berger, Susan Lass, Mark Lemmer, Pamela Lemmer, Karyl Resnick, Eric Skansgaard, Donna M. Wade, and Edward M. Wallace, Jr., individually and on behalf of all Settlement Class Members as defined below, and Defendant Bank of America, N.A., in its own capacity and as successor by merger to BAC Home Loans Servicing, L.P. ("BANA" or "Defendant"), subject to the approval of the Court.

## DEFINITIONS

2.      As used in this Settlement Agreement, the following terms shall have the following meanings:

      a.      "Action" means the above-captioned lawsuit.

      b.      "Agreement" or "Settlement Agreement" or "Settlement" means this Settlement Agreement and Release.

      c.      "BANA" or "Defendant" means Bank of America, N.A., in its own capacity and as successor by merger to BAC Home Loans Servicing, LP

      d.      "CAFA Notice" means the notice to be sent by BANA to appropriate officials pursuant to the requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) ("CAFA"), within ten (10) days after the Agreement is filed with the Court.

      e.      "Check/Escrow Credit Calculation" means the calculation performed by the Claims Administrator to determine which Eligible Class Members will receive their Settlement Payments by escrow credit or by check, according to Paragraph 33 of this Agreement.

      f.      "Claim Deadline" means sixty (60) days after the Class Notice Date.

      g.      "Claim Form" means the Claim Form attached hereto as **Exhibit A**.

      h.      "Claims Administrator" means a vendor agreed to by the Parties and

approved by the Court.

      i.      "Class Period" means the period from January 1, 2007 to April 4, 2014.

      j.      "Co-Lead Class Counsel" means Berger & Montague, P.C. and Nichols Kaster, PLLP.

      k.      "Class Counsel" means Berger & Montague, P.C., Nichols Kaster, PLLP, Stoll Stoll Berne Lokting & Shlachter P.C., Taus, Cebulash & Landau, LLP, and Shapiro Haber & Urmy LLP.

      l.      "Class Data" means any data and information that has or will be produced by BANA in this Action relating to Settlement Class Members and their residential mortgage loans serviced by BANA.

      m.      "Class Member Amounts Owed" means the net monetary amount to which Eligible Class Members shall be entitled under this Agreement.

      n.      "Class Notice" or "Notice of Settlement" means the Notice of Class Action Settlement as approved by the Court in its Preliminary Approval Order, substantially in the form attached hereto as **Exhibit B**.

      o.      "Class Notice Date" means the date that the Class Notice is mailed to the Settlement Class Members by the Claims Administrator.

      p.      "Consolidated Amended Complaint" means Plaintiffs' Consolidated Amended Class Action Complaint in this Action.

      q.      "Effective Date" means the last date on which the following have occurred: (1) the Court enters a Final Approval Order and judgment finally approving the Settlement Agreement in a manner substantially consistent with the terms and intent of the Settlement Agreement; and (2) either: (i) thirty-five (35) days have passed after entry of the Court's Final Approval Order and judgment and within such time, no appeal is taken; or (ii) all appellate remedies are exhausted and the Court's judgment is upheld, or not altered in a

SETTLEMENT AGREEMENT AND RELEASE

manner that is substantially inconsistent with the judgment.

r.     "Eligible Class Members" means Settlement Class Members who do not timely opt out of this Settlement.

s.     "Final Approval Hearing" means the hearing to be requested by the Plaintiffs and conducted by the Court, following appropriate notice to the Settlement Class and an opportunity for Settlement Class Members to exclude themselves from the Settlement Class or object to the Settlement, at which time Plaintiffs will request the Court to finally approve the fairness, reasonableness and adequacy of the Settlement Agreement and to enter a Final Approval Order.

t.     "Final Approval Motion" or "Motion for Final Approval" means Plaintiffs' Motion for Final Approval of Class Action Settlement.

u.     "Gross Settlement Fund" means the total amount of funds that BANA shall pay to resolve the Released Claims of the Releasors (as that term is defined in Paragraph 66).   The Gross Settlement Fund shall be Thirty-One Million Dollars ($31,000,000.00). BANA's responsibility to pay any amounts in settlement, including to Settlement Class Members, for service awards, for attorneys' fees or expenses, and any fees or expenses of the Claims Administrator, shall not exceed the amount of the Gross Settlement Fund.

v.     "LPFI" means lender-placed flood insurance.

w.     "Net Settlement Fund" constitutes the Gross Settlement Fund, and any net accrued interest thereon, less: (i) any service awards that are awarded by the Court; (ii) any attorneys' fees to Class Counsel that are awarded by the Court, not to exceed thirty percent (30%) of the Gross Settlement Fund; (iii) any reimbursement of Class Counsel's expenses that are awarded by the Court; and (iv) the Claims Administrator's fees and expenses that are awarded by the Court.

x.     "Opt-Out Deadline" means the date sixty (60) days after the Class

-4-

Notice Date.

y.      "Parties" means the Named Plaintiffs and BANA.

z.      "Plaintiffs" or "Named Plaintiffs" means Larry Arnett, Ronda Arnett, Alice A. Berger, Lee M. Berger, Susan Lass, Mark Lemmer, Pamela Lemmer, Karyl Resnick, Eric Skansgaard, Donna M. Wade, and Edward M. Wallace, Jr.

aa.      "Plaintiffs' Damages Expert" means Arthur Olsen.  All amounts charged or costs incurred by Plaintiffs' Damages Expert shall be incurred by Co-Lead Counsel and shall be subject to reimbursement from the Gross Settlement Fund as part of Class Counsel's expenses, subject to the approval of the Court.

bb.      "Preliminary Approval Date" means the date of the Court's Preliminary Approval Order.

cc.      "Preliminary Approval Motion" or "Motion for Preliminary Approval" means Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, which shall include a copy of this Settlement Agreement.

dd.      "Preliminary Approval Order" means the Court's Order preliminarily approving this Agreement, certifying the Settlement Class, setting a date for the Final Approval Hearing, and authorizing notice of the Settlement to be sent to Settlement Class Members.

ee.      "Qualified Settlement Fund" means the Settlement Fund administered by the Claims Administrator containing: (i) monetary relief to the Settlement Class to be paid by check (as opposed to escrow credit); (ii) any service awards; (iii) Class Counsel's attorneys' fees and expenses; and (iv) all fees and expenses of the Claims Administrator.

ff.      "Released Claims" means those claims released as stated in Paragraphs 66-69 of this Agreement.

gg.      "Released Parties" means BANA and the other beneficiaries of the release contained in Paragraphs 66-69 of this Agreement.

SETTLEMENT AGREEMENT AND RELEASE

hh.    "Settlement Class" or "Settlement Class Members" means:

All persons who were sent a flood insurance cycle letter by BANA, Countrywide Home Loans, Inc., or Countrywide Home Loans Servicing, LP or who were charged for lender-placed flood insurance by BANA, Countrywide Home Loans, Inc., or Countrywide Home Loans Servicing, LP on or after January 1, 2007 and before April 4, 2014 in connection with a residential mortgage loan, home equity line of credit, reverse mortgage loan, or loan secured by shares in a cooperative housing association.

ii.    "Settlement Payment" means the payment that Eligible Class Members are entitled to receive under the Settlement

jj.    "UPB" means unpaid principal balance.

## RECITALS

3.    Plaintiffs Ronda and Larry Arnett filed this Action on November 14, 2011, asserting claims against BANA for unjust enrichment, violation of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"), violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA"), breach of contract and breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty/misappropriation of funds held in trust, conversion, and violation of Oregon's Unlawful Debt Collection Practices Act, Section 646.639 ("UDCPA").  The Arnetts' alleged that BANA unlawfully required its customers to maintain excessive flood insurance for their properties, and that BANA unfairly profited from receiving kickbacks in connection with LPFI including in the form of "commissions."  On January 23, 2012, BANA filed its Answer to the Complaint and on February 2, 2012, BANA filed a Motion for Judgment on the Pleadings.  Following briefing, oral argument, and supplemental briefing, the Court on July 11, 2012 issued a written Order denying the motion as to the Arnetts' claims for breach of contract and conversion, and granting the motion as to the Arnetts' remaining claims.  Thereafter, the Parties engaged in extensive discovery, which included the exchange of written discovery requests, the review of over four million pages of

documents, the filing of a motion to compel and another discovery motion, and numerous depositions.  The Parties also fully briefed Plaintiffs' Motion for Class Certification.  On April 4, 2014, the Arnetts filed a Consolidated Amended Complaint adding Alice A. Berger, Lee M. Berger, Susan Lass, Mark Lemmer, Pamela Lemmer, Karyl Resnick, Eric Skansgaard, Donna M. Wade, and Edward M. Wallace, Jr. as additional Named Plaintiffs, who will file stipulations of dismissal of their separate actions (as described further below) without prejudice within three (3) business days.

4.     Prior to joining this Action, Plaintiff Skansgaard filed a Complaint against BANA in the Superior Court of the State of Washington for King County, in a putative class action lawsuit captioned *Skansgaard v. Bank of America, N.A.*, No. 11-2-17796-3 (Wash. Sup. Ct.).  That action was removed to the United States District Court for the Western District of Washington on June 13, 2011, and was captioned *Skansgaard v. Bank of America, N.A.*, No. 2:11-cv-988 (W.D. Wash.).  Plaintiff Skansgaard's Complaint asserted claims against BANA for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the Washington Consumer Protection Act, and sought a declaratory judgment.  Plaintiff Skansgaard alleged that BANA unlawfully required its customers to maintain excessive flood insurance for their properties, and that BANA unfairly profited from receiving kickbacks in connection with LPFI including in the form of "commissions."  On October 13, 2011, the Court denied BANA's motion to dismiss the Complaint.  *See Skansgaard v. Bank of Am., N.A.*, 896 F. Supp. 2d 944 (W.D. Wash. 2011).  Thereafter, Plaintiff Skansgaard coordinated discovery in his action with the Arnett Plaintiffs and the other Plaintiffs.  The Parties also fully briefed Plaintiff Skansgaard's Motion for Class Certification.

5.     Prior to joining this Action, Plaintiff Edward M. Wallace, Jr. filed a Complaint against BANA in the United States District Court for the District of Oregon on May 24, 2012, in a putative class action lawsuit captioned *Wallace v. Bank of America, N.A.*, No. 3:12-cv-935

(D. Or.).  The case was deemed to be a related action to the above-captioned Action.  Plaintiff Wallace's Complaint asserted claims against BANA for unjust enrichment, violation of the TILA, violation of the RESPA, breach of contract and breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, conversion, and violation of Oregon's UDCPA. Plaintiff Wallace alleged that BANA unlawfully required its customers to maintain excessive flood insurance for their properties, and that BANA unfairly profited from receiving kickbacks in connection with LPFI including in the form of "commissions."  BANA answered Wallace's Complaint on July 20, 2012.  Thereafter, Plaintiff Wallace coordinated discovery in his action with the Arnett Plaintiffs and the other Plaintiffs.

6.     Prior to joining this Action, Plaintiff Susan Lass filed a Complaint against BANA in the United States District Court for the District of Massachusetts on April 1, 2011, in a putative class action lawsuit captioned *Lass v. Bank of America, N.A.*, No. 1:11-cv-10570 (D. Mass.).  On May 27, 2011, Plaintiff Lass filed a First Amended Complaint, asserting claims against BANA for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, unjust enrichment, and violation of the RESPA.  The district court issued a written order granting BANA's motion to dismiss, but on appeal to the United States Court of Appeals for the First Circuit, the district court's decision was reversed and remanded (as to all claims except the RESPA claim, the dismissal of which was not challenged on appeal).  *See Lass v. Bank of America, N.A.*, 695 F.3d 129 (1st Cir. Sept. 21, 2012).  Upon remand of her case from the First Circuit, Plaintiff Lass coordinated discovery in her action with the other Plaintiffs.

7.     Prior to joining this Action, Plaintiff Karyl Resnick was added as a plaintiff to a First Amended Complaint filed against BANA on July 7, 2011 in the United States District Court for the Eastern District of Pennsylvania, in a putative class action lawsuit captioned *Wulf, et al. v. Bank of America, N.A.*, No. 2:10-cv-5176 (E.D. Pa.).  Plaintiff Resnick alleged

SETTLEMENT AGREEMENT AND RELEASE

Case 3:11-cv-01372-SI   Document 237-1   Filed 04/09/14   Page 10 of 78   Page ID#:
Case 1:14-cv-20484-BB   Document 34-1   Entered on FLSD Docket 04/21/2014   Page 10 of 78
7362

that BANA unlawfully required its customers to maintain excessive flood insurance for their properties, and that BANA unfairly profited from receiving kickbacks in connection with LPFI including in the form of "commissions."   BANA moved to sever and transfer Plaintiff Resnick's claims, and on January 6, 2012, the district court granted BANA's motion and transferred Plaintiff Resnick's case to the United States District Court for the District of Massachusetts, and the case was re-captioned *Resnick v. Bank of America, N.A.*, No. 12-cv-10231 (D. Mass.).   BANA answered Resnick's Complaint, after which discovery ensued. Plaintiff Resnick coordinated discovery against BANA with the other Plaintiffs.

8.      Prior to joining this Action, Plaintiffs Alice A. Berger and Lee M. Berger filed a Complaint against BANA in the United States District Court for the District of Massachusetts on September 17, 2010, in a putative class action lawsuit captioned *Berger v. Bank of America, N.A.*, No. 1:10-cv-11583 (D. Mass.).  The Bergers' Complaint asserted claims against BANA for breach of contract and breach of the implied covenant of good faith and fair dealing.  The Berger Plaintiffs alleged that BANA unlawfully required its customers to maintain excessive flood insurance for their properties, and that BANA unfairly profited from receiving kickbacks in connection with LPFI including in the form of "commissions."   In early 2013, the Court issued a written order denying BANA's motion for summary judgment as to the Bergers' claims.  *See Berger v. Bank of Am., N.A.*, 931 F. Supp. 2d 295 (D. Mass. 2013).  On March 21, 2013, the Bergers filed an Amended Complaint with leave of court, adding Plaintiff Donna M. Wade as an additional named Plaintiff and asserting the same claims.  BANA filed an Answer to the Amended Complaint.  The Bergers and Ms. Wade have been coordinating discovery with the other Plaintiffs.

9.      Prior to joining this Action, Plaintiffs Pamela Lemmer and Mark Lemmer filed a Complaint against BANA in the United States District Court for the Western District of North Carolina on April 20, 2012, in a putative class action lawsuit captioned *Lemmer v. Bank*

-9-

*of America, N.A.*, No. 3:12-cv-242 (W.D.N.C.).  The Lemmers asserted claims against BANA for breach of contract and breach of the implied covenant of good faith and fair dealing, as well as common law fraud.  The Lemmers alleged that BANA unlawfully required customers in housing cooperatives to maintain flood insurance for their properties, and that BANA unfairly profited from receiving kickbacks in connection with LPFI including in the form of "commissions."  Bank of America answered the Lemmers' Complaint.  The Lemmers then coordinated discovery against BANA with the other Plaintiffs.

10.     In addition to the aforementioned Named Plaintiffs, Herta S. Theberge is currently a Plaintiff in a putative class action lawsuit filed against BANA in the United States District Court for the Western District of North Carolina, captioned *Holmes, et al. v. Bank of America*, *N.A.*, No. 3:12-cv-487 (W.D.N.C.).   While Ms. Theberge's Complaint primarily relates to lender-placed wind insurance, which is not covered by or addressed in this Settlement Agreement, Ms. Theberge also asserts claims against BANA for breach of contract and breach of the implied covenant of good faith and fair dealing, on the basis that BANA unlawfully required its customers to maintain excessive flood insurance for their properties, and that BANA unfairly profited from receiving kickbacks in connection with LPFI including in the form of "commissions."   On April 16, 2013, the district court in *Holmes* issued an order denying BANA's motion to dismiss Theberge's claims (including her claims relating to flood insurance).  *See Holmes v. Bank of Am., N.A.*, 2013 WL 1693709 (W.D.N.C. Apr. 16, 2013), *aff'd by the district court* (May 28, 2013).  Discovery in that case has ensued.  Within three (3) business days after execution of the Settlement Agreement, Theberge will file with the district court a stipulation of dismissal of her claims solely to the extent that they relate to flood insurance.

11.     Darrell A. Purifoy and Lynda C. Purifoy are currently Plaintiffs in a putative class action lawsuit filed against BANA in the United States District Court for the Southern

Case 3:11-cv-01372-SI   Document 237-1   Filed 04/09/14   Page 12 of 78   Page ID#:
7364
Case 1:14-cv-20484-BB   Document 34-1   Entered on FLSD Docket 04/21/2014   Page 12 of 78

District of New York, captioned *Purifoy, et al. v. BAC Home Loans Servicing, LP*, No. 1:13-cv-10312 (S.D.N.Y.). While the Purifoys' Complaint primarily relates to lender-placed hazard insurance, which is not covered by or addressed in this Settlement Agreement, the Purifoys also assert claims against BANA for breach of contract on the basis that BANA unfairly profited from receiving kickbacks in connection with LPFI, including in the form of "commissions." Within three (3) business days after execution of the Settlement Agreement, the Purifoys will file with the district court a stipulation of dismissal of their claims solely to the extent that they relate to flood insurance.

12.     Beginning in July 2013, the Parties participated in an extensive alternative dispute resolution ("ADR") process that was overseen by an experienced mediator, Professor Eric Green of Resolutions, LLC (the "ADR Process").

13.     The Parties attended two full-day mediation sessions with Professor Green at Goodwin Procter's office in New York City on July 19, 2013 and July 22, 2013. The Parties made significant progress during those two mediation sessions. The Parties attended a third mediation session at Goodwin Procter's office in Boston, Massachusetts on September 16, 2013. The Parties continued to negotiate the terms of the Settlement, and ultimately, as a result of the Parties' ADR Process, the Parties' analysis of the extensive discovery and Class Data produced by BANA, and subsequent negotiations between the Parties, the Parties agreed to settle this Action according to the terms of this Agreement.

14.     At all times, the Parties have negotiated vigorously with each other and at arm's length. The Parties have investigated the facts relating to the claims alleged in the Named Plaintiffs' original Complaints and the Consolidated Amended Complaint in this Action, and have made a thorough study of the legal principles applicable to the claims asserted against BANA. Based upon the Parties' investigation, legal evaluation and taking into account the contested legal and factual issues involved, including the Parties' assessment of the

uncertainties of litigation and the relative benefits conferred upon the Settlement Class Members pursuant to this Agreement, the Parties have concluded that the Settlement on the terms set forth in this Agreement is fair, reasonable, adequate and in the best interests of Plaintiffs, the Settlement Class Members, and BANA.

15.   The Parties recognize that notice to the Settlement Class Members of the material terms of this Agreement via the Class Notice, as well as Court approval of the Agreement, are required to effectuate the Agreement, and that the Agreement will not become operative until the Court grants final approval of it and the Agreement becomes effective.

16.   BANA has asserted or would assert numerous defenses to the claims alleged in Plaintiffs' original complaints and in the Consolidated Amended Complaint in this Action, and expressly denies each of the claims and allegations asserted against it and any and all liability arising out of the conduct alleged in this Action.  By entering this Agreement, BANA does not admit any wrongdoing, and this Agreement shall not constitute an admission of liability by BANA.  In addition to the termination rights otherwise set forth in this Agreement, if the Settlement is not approved, is set aside, or is materially modified by any court, the certification of the Settlement Class will be void, and the Parties are released from their obligations under this Agreement.  No agreements made by or entered into by BANA in connection with the Settlement may be used by Plaintiffs, any person in the Settlement Class, or any other person to establish any of the elements of class certification in any litigated certification proceedings, whether in the Action or any other judicial or regulatory proceeding.

17.   NOW THEREFORE, IT IS HEREBY AGREED, BY AND BETWEEN the undersigned Parties, that this Action shall be settled, subject to the approval of the Court, pursuant to the following terms and conditions:

SETTLEMENT AGREEMENT AND RELEASE

## PROSPECTIVE RELIEF

18.     <u>Commissions</u>.  For three (3) years from the Effective Date of the Settlement Agreement, neither BANA nor its affiliates shall receive any commission payments in connection with BANA's placement of LPFI on any property securing a residential mortgage loan, home equity line of credit, reverse mortgage loan, or security instrument secured by shares in a cooperative housing association within BANA's servicing portfolio.

19.     <u>Right to Request Flood Coverage Opt-Out Form</u>.  For three (3) years from the Effective Date of the Settlement Agreement, BANA shall provide a Flood Coverage Opt-Out Form, an example of which is attached as **Exhibit C** hereto, to any member of the Settlement Class who requests a Flood Coverage Opt-Out Form, provided that the Settlement Class Member's UPB on their mortgage loan, line of credit under their home equity line of credit, or principal limit on their reverse mortgage loan is less than $250,000, and subject to the limitation that BANA is not obligated to accept the Flood Coverage Opt-Out Form if the Flood Coverage Opt-Out Form is returned to BANA more than 35 days after the date on the Flood Coverage Opt-Out Form.  BANA shall have the discretion to determine the format and content of the Flood Coverage Opt-Out Form, which may change from time to time.

20.     <u>Flood Coverage Opt-Out Form Provided with All "Gap" Cycle Letters</u>.  For three (3) years from the Effective Date of the Settlement Agreement, BANA shall enclose a Flood Coverage Opt-Out Form with each "gap" cycle letter requesting additional flood insurance coverage.

21.     <u>Nature and Effect of Flood Coverage Opt-Out Form</u>.  The Flood Coverage Opt-Out Form referenced in Paragraphs 19 and 20 above shall provide each Settlement Class Member who receives the Form with an opportunity to elect to maintain flood insurance coverage in the amount of the Settlement Class Member's UPB/line of credit amount/principal limit, where the Settlement Class Member's UPB/line of credit amount/principal limit is less

-13-

than $250,000.  Consistent with its current practice, BANA shall honor the Settlement Class Member's election for at least until the expiration of the Settlement Class Member's flood insurance policy term.  In the event the Settlement Class Member's LPFI policy is renewed, BANA shall provide the Settlement Class Member with a Flood Coverage Opt-Out Form with respect to the renewal policy.  If the Flood Coverage Opt-Out Form is completed and returned within 35 days from the date on the Flood Coverage Opt-Out Form, BANA shall cancel any portion of the existing LPFI coverage in excess of UPB/line of credit amount/principal limit and shall completely refund any charges associated with such excess coverage, and, if necessary, issue a substitute policy at the UPB/line of credit amount/principal limit.[1]

22.    <u>Effect of Change to UPB Standard</u>.  In the event that BANA changes its flood insurance coverage requirement to the lesser of UPB, replacement cost value, or $250,000, the Parties agree that any obligation that BANA has under this Settlement Agreement to provide borrowers with a Flood Coverage Opt-Out Form is extinguished.

23.    <u>No Flood Coverage Requirement for Co-Op Borrowers Unless Required by Mortgage</u>.  BANA shall not knowingly require Settlement Class Members with loans or lines of credit secured by shares in housing cooperatives ("Co-Op Borrowers") to maintain flood insurance coverage where flood insurance is not required by their security instrument, and shall fully refund Co-Op Borrowers for any LPFI coverage that was not required by their security instrument to the extent that BANA becomes aware of such coverage.[2]  The payments or refunds that have been made or will be made by BANA to Co-Op Borrowers pursuant to this subparagraph shall not be paid out of, or in any way reduce, the Gross Settlement Fund.

_____

[1] The Flood Coverage Opt-Out Form shall state that it must be returned within 35 days.
[2] BANA represents that it already has attempted to identify Co-Op borrowers who were not required to maintain flood insurance coverage by their security instrument, and will continue its reasonable search in a further effort to identify such Co-Op Borrowers.

SETTLEMENT AGREEMENT AND RELEASE

24.     The foregoing prospective relief shall be subject to changes in applicable law or changes in investor or insurer requirements which would prevent BANA from implementing such prospective relief.  Should any provision of the foregoing prospective relief conflict or be inconsistent with any existing or subsequently adopted state or federal statute, regulation, rule, order, or regulatory directive, or any existing or subsequently adopted agency or investor rule or requirement, such statute, regulation, rule, order, regulatory directive, or requirement shall control.  In that event, the final judgment confirming this Agreement shall be deemed amended to conform to such statute, regulation, rule, order, requirement, or regulatory directive.  BANA shall not be liable for engaging in any practice or failing to engage in any practice during the period where such conduct was authorized by state or federal statute, regulation, rule, order, or regulatory directive or by any investor rule or requirement.

25.     As of the date of this Settlement Agreement, BANA represents that it is not aware of any legal, investor, or insurer requirements which would currently prevent it from implementing these changes.

26.     The Parties agree that the value of the prospective relief set forth in this Agreement is substantial and that it is a significant part of the valuable consideration for the Parties' Agreement.

## MONETARY RELIEF TO ELIGIBLE CLASS MEMBERS

27.     The Gross Settlement Fund.  Except as set forth in Paragraph 23, BANA agrees to pay any and all amounts in settlement, including to Settlement Class Members, for service awards, for attorneys' fees and expenses, and any fees and expenses of the Claims Administrator, in an amount that shall not exceed the "Gross Settlement Fund."  The Gross Settlement Fund shall be Thirty-One Million Dollars ($31,000,000.00).  No portion of the Gross Settlement Fund shall revert to BANA at any time.

28.     Calculation of the Net Settlement Fund.  Monetary relief to Eligible Class

SETTLEMENT AGREEMENT AND RELEASE

Members shall be paid from the Net Settlement Fund, which shall be determined by subtracting from the Gross Settlement Fund: (a) any service awards that are awarded by the Court; (b) any attorneys' fees and expenses to Class Counsel that are awarded by the Court; and (c) any fees and expenses of the Claims Administrator that are awarded by the Court.

29.     <u>Calculation of the Class Member Amounts Owed</u>.  Eligible Class Members shall each be entitled to a *pro rata* share of the Net Settlement Fund based on each Eligible Class Member's Settlement Shares.  Each Eligible Class Member's Settlement Shares shall be calculated by Plaintiffs' Damages Expert as described in subparagraphs (i), (ii), and/or (iii), below, subject to the approval of the Court:

      i.      Settlement Class Members who were lender-placed with flood insurance during the Class Period by BANA shall receive Settlement Shares equal to 12% of their net LPFI premiums charged by BANA during the Class Period;[3]

      ii.      Settlement Class Members who timely return a Claim Form postmarked or otherwise sent on or before the Claim Deadline stating that, for any particular year during the Class Period, they were required by BANA to purchase flood insurance in excess of their UPB/line of credit amount/principal limit (either excess LPFI or excess private insurance or both), and that they did not want such coverage, shall receive Settlement Shares equal to the average amount that a Settlement Class Member would have paid for the average coverage amount of BANA's "gap" policies by purchasing insurance through the National Flood Insurance Program, as determined by Plaintiffs' Damages Expert, for each year in

---

[3] In light of the *pro rata* distribution to Settlement Class Members, the actual dollars received by Settlement Class Members will be less than the amount of their Settlement Shares.

which excess coverage is claimed.  The Claim Form shall be prepared by the Claims Administrator for each Settlement Class Member so that Class Members are unable to submit claims for years which pre-date their being sent a cycle letter or which post-date the date their loan was paid off or otherwise removed from BANA's active servicing portfolio. Settlement Class Members who return Claim Forms but whose most recent available UPB/line of credit amount/principal limit information from BANA reasonably suggests that their UPB/line of credit amount/principal limit was equal to or greater than $250,000 during the year(s) in which they claimed they purchased excess insurance shall be sent a letter requiring them to submit proof that their insurance coverage amount exceeded their UPB/line of credit amount/principal limit for the year(s) claimed;

iii.     Settlement Class Members who are identified by BANA as Co-Op Borrowers and who timely return a Claim Form postmarked or otherwise sent on or before the Claim Deadline stating that they were required by BANA to purchase private flood insurance in excess of their UPB/line of credit amount/principal limit (and did purchase such insurance) shall receive a Settlement Share equal to the amount that a Settlement Class Member would have paid for the average class flood insurance coverage amount by purchasing insurance through the National Flood Insurance Program, as determined by Plaintiffs' Damages Expert.  Settlement Class members who return Claim Forms but whose most recent available UPB/line of credit amount/principal limit information from BANA reasonably suggests that their UPB/line of

-17-

credit amount/principal limit was equal to or greater than $250,000 during the year(s) in which they claimed they purchased excess insurance shall be sent a letter requiring them to submit proof that their insurance coverage amount exceeded their UPB/line of credit amount/principal limit for the year(s) claimed.

An Eligible Class Member may receive Settlement Shares under more than one subparagraph above and for each force-placement of flood insurance within the Class Period.

30.  <u>Calculation of Class Member Amounts Owed</u>.  Within ten (10) business days after the Court's Final Approval Order, Plaintiffs' Damages Expert shall calculate the total Settlement Shares for all Eligible Class Members based on the Class Data and any Claim Forms that are returned, and shall determine the amount owed to each Eligible Class Member based upon their *pro rata* share of the Net Settlement Fund (the "Class Member Amounts Owed"), and shall provide the Class Member Amounts Owed to Co-Lead Counsel, BANA and the Claims Administrator.  The Parties shall thereafter use best efforts to resolve any disputes over the Class Member Amounts Owed as soon as practicable and if there is any dispute that remains unresolved, they shall bring it to the attention of the Court within ten (10) business days.

31.  <u>No Offsets</u>.  There shall be no offset to any Settlement Payments to any Eligible Class Members under this Agreement to account for any payments to Eligible Class Members under the National Mortgage Settlement or any other settlement between BANA and any governmental or private entity, including the Office of the Comptroller of the Currency.

32.  <u>Establishment of a Qualified Settlement Fund</u>.  Within two (2) business days after the Effective Date, the Claims Administrator shall set up a Qualified Settlement Fund pursuant to Internal Revenue Code Section 1.468B-1 with a federally-chartered national bank selected by Co-Lead Class Counsel.  The Qualified Settlement Fund shall be administered by

-18-

the Claims Administrator and distributed as set forth in this Agreement.  Distributions to be paid out of the Qualified Settlement Fund include:  (i) the Settlement Payments to Eligible Class Members that are to be paid by check (as opposed to escrow credit); (ii) any service awards; (iii) Class Counsel's attorneys' fees and expenses; and (iv) all fees and expenses of the Claims Administrator.

33.    <u>Calculation of the Amount to be Deposited into the Qualified Settlement Fund</u>. Eligible Class Members shall be paid by check, unless they have an active escrow account and an active mortgage loan or home equity line of credit serviced by BANA, in which case they may be paid via escrow credit by BANA at BANA's election.  Within ten (10) business days after the time to dispute the Class Member Amounts Owed has expired, BANA shall provide the Claims Administrator with updated data and instructions as to which Eligible Class Members are to be paid by escrow credit and which Eligible Class Members are to be paid by check.  Within three (3) business days after BANA provides the Claims Administrator with this information, the Claims Administrator shall calculate the total amounts to be paid by escrow credit and by check (the "Check/Escrow Credit Calculation") and provide the Check/Escrow Credit Calculation to BANA and Class Counsel.  BANA shall have five (5) business days after receiving the Check/Escrow Credit Calculation to contest it with Co-Lead Class Counsel.  The Parties shall use their best efforts to resolve any disputes over the Check/Escrow Credit Calculation.

34.    <u>Distribution of Escrow Credits to Eligible Class Members by BANA</u>.  Within forty-five (45) days after the date that the Claims Administrator provides BANA with the Check/Escrow Credit Calculation or within forty-five (45) days after the Effective Date, whichever is later, BANA shall, with respect to all Eligible Class Members whose loans with BANA have an active escrow account as of the Effective Date and at the Bank's discretion, credit such escrow accounts with escrow credits equal to the Settlement Payment to which the

-19-

Eligible Class Members are entitled under this Settlement Agreement.  If there are any Eligible Class Members who cannot receive their Settlement Payment via escrow credit because it is not deemed feasible by BANA to do so for any reason, then such Eligible Class Members shall receive their Settlement Payment via check from the Claims Administrator, and BANA shall deposit by wire transfer the amounts necessary into the Qualified Settlement Fund for this purpose.

35.    Funding of the Qualified Settlement Fund by BANA.  Within three (3) business days after the Effective Date, BANA shall deposit by wire transfer into the Qualified Settlement Fund all amounts approved by the Court in its Final Approval Order for service awards, Class Counsel's attorneys' fees and expenses, and any fees and expenses of the Claims Administrator, and the Claims Administrator shall immediately distribute these payments (except that the Claims Administrator shall only distribute fees and expenses to itself that have already been incurred).  Within forty-five (45) days after the date that the Claims Administrator provides BANA with the Check/Escrow Credit Calculation or within forty-five (45) days after the Effective Date, whichever is later, BANA shall deposit by wire transfer into the Qualified Settlement Fund an amount equal to all Settlement Payments to be made to Eligible Class Members by check.

36.    Distribution of the Qualified Settlement Fund by the Claims Administrator. Subject to the Court's Final Approval Order, within thirty (30) days after BANA deposits into the Qualified Settlement Fund an amount equal to all Settlement Payments to be made to Eligible Class Members by check, the Claims Administrator shall distribute these monies to the Eligible Class Members who are to be paid by check in accordance with the Class Member Amounts Owed.  All Settlement Payments to Eligible Class Members that are distributed in the form of a check shall be sent via United States First Class Mail in a distinctive envelope stating, on the outside in large bold letters: "**Settlement Communication Pursuant to Class**

SETTLEMENT AGREEMENT AND RELEASE

Case 3:11-cv-01372-SI   Document 237-1   Filed 04/09/14   Page 22 of 78   Page ID#:
Case 1:14-cv-20484-BB   Document 34-1   Entered on FLSD Docket 04/21/2014   Page 22 of 78
7584

**Action Settlement Approved by the Court.**"   For purposes of this mailing, the Claims Administrator shall use the addresses that were used to send the Notice of Settlement, subject to appropriate updating by the Claims Administrator prior to mailing, which shall consist of the following:

> a.   The Claims Administrator will check each address against the United States Post Office National Change of Address ("NCOA") Database;
>
> b.   The Claims Administrator will conduct reasonable searches to locate valid address information for Eligible Class Members whose previous Class Notices were returned as undeliverable;
>
> c.   The Claims Administrator shall update addresses based on forwarding information received from the United States Post Office; and
>
> d.   The Claims Administrator will update addresses based on any requests received from Settlement Class Members or Class Counsel.

37.   <u>Re-Mailing of Returned Settlement Payments</u>.   Any Settlement Payments to Eligible Class Members from the Qualified Settlement Fund that are returned as non-deliverable with a forwarding address shall be re-mailed by the Claims Administrator to such forwarding address within three (3) days.   To the extent that any Settlement Payments are returned as non-deliverable without a forwarding address, the Claims Administrator shall conduct reasonable searches to locate valid address information for the intended recipients of such Settlement Payments, and shall, within three (3) days, re-mail the Settlement Payment, as applicable, to any Eligible Class Members for whom updated address information is identified.

38.   <u>Time Period to Accept Payment</u>.   Eligible Class Members shall have 180 days from the date of distribution of their payments to cash their check.   Eligible Class Members may request new checks to be issued by the Claims Administrator during this time period, if they lose or misplace their original check, however, the time period for cashing the check will

SETTLEMENT AGREEMENT AND RELEASE

be the same as the original time period set forth above.

39.   <u>Uncashed checks</u>.  Within ten (10) days after the conclusion of the time period for Eligible Class Members to cash their checks, the Claims Administrator shall determine the amount of money remaining in the Qualified Settlement Fund as the result of voided or undeliverable checks.  If there is $750,000 or more remaining in the Qualified Settlement Fund as a result of voided or undeliverable checks, such funds will be redistributed on a *pro rata* basis to Eligible Class Members who received escrow credits or negotiated their checks (minus any additional costs of settlement administration).  If there is less than $750,000 remaining in the Qualified Settlement Fund as a result of voided or undeliverable checks, such funds will be distributed to the Center for Responsible Lending, a non-profit organization, as a *cy pres* award, subject to the Court's Final Approval Order.  In the event that any redistributed funds remain unclaimed by Settlement Class more than 180 days after such redistribution, such unclaimed funds shall be distributed to the Center for Responsible Lending as *cy pres*.

40.   <u>Eligible Class Member Claims on Their LPFI Policies.</u>  Eligible Class Members who have previously made or who make an insurance coverage claim in the future on any LPFI policy will not be affected in any way as a result of their participation in this Settlement, and may participate in this Settlement to the same extent as Eligible Class Members who have not made an insurance coverage claim on their LPFI policy.

41.   <u>Final Accounting</u>.  No later than thirty (30) days after the period for cashing all checks expires, the Claims Administrator shall provide a final accounting to the Parties, and at any time prior to such final accounting, the Claims Administrator shall provide interim reports or declarations to any Party upon request at any time, which may be filed with the Court.

42.   <u>Taxability of Settlement Amount</u>.  The Agreement is enforceable regardless of the taxability of the Settlement Payments to Eligible Class Members or any portion thereof, or the taxability of Service Awards to Named Plaintiffs or any portion thereof.  Releasors (as

defined in Paragraph 66) are solely responsible for the taxes, interest, and penalties due and owing, if any, on their respective Settlement Payments or Service Awards.  No representations regarding the tax consequences of this Agreement have been made by any Party or any of the Parties' attorneys.

43.    <u>No Claim as to Settlement Administration</u>.  No person shall have any claim against BANA, the Named Plaintiffs, the Settlement Class, Co-Lead Class Counsel, Class Counsel, the Released Parties, or the Claims Administrator based on distributions or payments made in accordance with this Settlement Agreement.

## ADDITIONAL PAYMENTS

44.    <u>Service Awards</u>.    Subject to the Court's approval, each Named Plaintiff household, and Darrell A. Purifoy and Lynda C. Purifoy (collectively), and Herta S. Theberge, may receive a service award not to exceed Two Thousand Five Hundred Dollars ($2,500.00) for their time and effort in bringing and prosecuting the flood insurance claims that are the subject of this Settlement Agreement.  Any service awards shall be paid from the Gross Settlement Fund, as approved by the Court.  Whether and to what extent any service awards are approved by the Court shall be within the discretion of the Court, and the Parties' Settlement Agreement (and Plaintiffs' support of the Settlement Agreement) is not conditioned upon Court approval of such service awards in any amount.

45.    <u>Attorneys' Fees and Expenses</u>.  At least 30 days prior to the Opt-Out Deadline, Class Counsel shall file a Motion for Attorneys' Fees and Expenses in accordance with Fed. R. Civ. P. 23(h).  Class Counsel shall seek an award of attorneys' fees not to exceed thirty percent (30%) of the Gross Settlement Fund.  In addition, Class Counsel's request for reimbursement of expenses shall be limited to Class Counsels' out-of-pocket expenses in this Action and in the original proceedings initiated by the Named Plaintiffs.  All of Class Counsel's attorneys' fees and expenses shall be paid from the Gross Settlement Fund, as approved by the Court.

Whether and to what extent attorneys' fees and expenses are awarded by the Court shall be within the discretion of the Court, but in no event shall attorneys' fees exceed 30% of the Gross Settlement Fund.  If for any reason an award of attorneys' fees exceeds 30% of the Gross Settlement Fund, Class Counsel expressly disclaim any and all right to collect an amount for attorneys' fees that exceeds 30% of the Gross Settlement Fund from any person or entity, and agree, upon demand, to execute a release of any person's or entity's obligation to pay such sums.  Class Counsel's Motion for Attorneys' Fees and Expenses shall be considered separately by the Court from its consideration of the fairness and adequacy of this Settlement Agreement, and any order with respect to this separate Motion shall not affect or delay the approval of this Settlement Agreement.  This Settlement Agreement (and Plaintiffs' support of the Settlement Agreement) is not conditioned upon Court approval of attorneys' fees and expenses in any amount.

46.     <u>Settlement Administration</u>.  All fees and expenses of the Claims Administrator shall be paid from the Gross Settlement Fund in addition to Class Counsel's expenses, as approved by the Court.  The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the Claims Administrator's fees and expenses related to its administration of this Settlement.

## PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

47.     <u>Application for Preliminary Approval of Proposed Settlement</u>.  After good faith consultation with counsel for BANA, Co-Lead Class Counsel will present a Motion for Preliminary Approval of Class Action Settlement to the Court within three (3) business days following the execution of this Agreement.  The motion shall include a proposed Preliminary Approval Order in substantially similar form as **Exhibit D** hereto.  The Parties shall, in good faith, take reasonable steps to secure expeditious entry by the Court of the Preliminary Approval Order and shall request that the Court schedule a Final Approval Hearing no earlier

SETTLEMENT AGREEMENT AND RELEASE

than ninety (90) business days after the service of the required Notices under 28 U.S.C. § 1715.

48.    <u>Settlement Class Certification</u>.    In connection with the proceedings on preliminary and final approval of the proposed Settlement, the Named Plaintiffs shall seek orders (preliminary and final, respectively) certifying the Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3) for purposes of this Settlement only.

49.    <u>Entry of Preliminary Approval Order</u>.    The Court shall enter a Preliminary Approval Order in substantially similar form as **Exhibit D**, which shall, among other things:

a.    Certify for purposes of settlement a nationwide Settlement Class, approve the Named Plaintiffs as class representatives and appoint Class Counsel as counsel for the Settlement Class, pursuant to Fed. R. Civ. P. 23;

b.    Preliminarily approve the Settlement as fair, reasonable, and adequate;

c.    Order the issuance of the Class Notice to the Settlement Class and determine that such Notice complies with all legal requirements, including, but not limited to, the Due Process Clause of the United States Constitution and Fed. R. Civ. P. 23;

d.    Schedule a date and time for a Final Approval Hearing to determine whether the Preliminary Approval Order should be finally approved by the Court;

e.    Require Settlement Class Members who wish to exclude themselves to submit an appropriate and timely written request for exclusion by the Opt-Out Deadline, as directed in the Settlement Agreement and Class Notice, and advise that a failure to do so shall bind those Settlement Class Members who remain in the Settlement Class;

f.    Require Settlement Class Members who wish to object to the Settlement Agreement to submit an appropriate and timely written objection by the Opt-Out Deadline, as directed in the Settlement Agreement and Class Notice, and advise that a failure to do so shall prevent those Settlement Class Members from objecting to or appealing final approval of the Settlement;

SETTLEMENT AGREEMENT AND RELEASE

g.      Require any Settlement Class Member who wishes to appear at the Final Approval Hearing to file a notice of appearance with the Court, as directed in the Settlement Agreement and Class Notice;

h.      Authorize the Settling Parties to take all necessary and appropriate steps to establish the means necessary to implement the Settlement Agreement; and

i.      Issue related orders to effectuate the preliminary approval of the Settlement Agreement.

## NOTICE OF SETTLEMENT

50.     <u>Notice</u>.  Notice of this Settlement shall be provided to the Settlement Class Members.  The Parties will request that the Court determine that the proposed procedures for notice set forth below constitute the best practicable notice to Settlement Class Members.

51.     <u>Production of Class List</u>.  Within five (5) business days after the Preliminary Approval Date, BANA will produce (or will supplement to the extent this information has already been produced) pursuant to the Stipulated Protective Order entered in this Action on March 26, 2012 as ECF No. 45 (to which the Claims Administrator shall agree to be bound), based upon its regularly maintained mortgage banking business records, the following information to Class Counsel and the Claims Administrator for all Settlement Class Members, in electronic format:

a.      Settlement Class Members' names;

b.      Settlement Class Members' last-known mailing address;

c.      Date of first flood insurance cycle letter sent to the Settlement Class Member during the Class Period;

d.      Net premiums charged to the Settlement Class Member for LPFI during the Class Period;

e.      Most recent UPB/line of credit amount/principal limit;

SETTLEMENT AGREEMENT AND RELEASE

    f.     For loans that are no longer active, the date the loan was paid off or otherwise removed from BANA's active servicing portfolio;

    g.     Whether the loan is in a Co-Op to BANA's knowledge; and

    h.     Whether the loan has an active escrow account.

The Claims Administrator shall ensure that all information provided to it by BANA will be used solely for the purpose of administering this Settlement.

52.    The Claims Administrator shall be responsible for preparing, printing and mailing to all Settlement Class Members the Class Notice via first class mail, as directed by the Court in its Preliminary Approval Order.  The Class Notice shall be substantially in the form of **Exhibit B** or as approved by the Court (provided that the font size, folding, and other printing elements or presentation may be adjusted to accommodate a booklet format and for efficient envelope and postage considerations).  The Claims Administrator shall take reasonable measures to verify and update the Class List with respect to the contact information of inactive borrowers (*i.e.*, borrowers whose loans are not currently serviced by BANA), and before mailing the Class Notice, will run the list of Settlement Class Members who are inactive borrowers through the U.S. Postal Service's NCOA database.

53.    Within twenty-one (21) days after receiving the Class List, the Claims Administrator shall mail the Court-approved Class Notice to all Settlement Class Members, which shall provide instructions and information to Settlement Class Members concerning the Settlement and their right to receive a share of the Net Settlement Fund, as well as their objection rights and opt-out rights.

54.    Effective on the Class Notice Date, the Claims Administrator shall arrange for a telephone call center facility with a toll free number to be active until such time as all distributions of Settlement Payments are completed to Eligible Class Members and the period for cashing settlement checks expires, in order to respond to questions from Settlement Class

Case 3:11-cv-01372-SI   Document 237-1   Filed 04/09/14   Page 29 of 78   Page ID#:
Case 1:14-cv-20484-BB   Document 34-1   Entered on FLSD Docket 04/21/2014   Page 29 of 78
7321

Members.

55.     Effective on the Class Notice Date, the Claims Administrator shall also make active a settlement website describing the terms of the Settlement and from which Settlement Class Members can download relevant documents such as the Consolidated Amended Complaint; the Class Notice; the Claim Form; the Settlement Agreement; the Court's Preliminary Approval Order; Class Counsel's Motion for Final Approval and Motion for Attorneys' Fees and Expenses; and the Court's Final Approval Order.  The website shall include the toll free number applicable to this Settlement and shall remain active until such time as distributions of Settlement Payments are completed to Eligible Class Members and the period for cashing settlement checks expires.  The domain name of the settlement website shall be determined by agreement of the Parties.

56.     Any Class Notice returned to the Claims Administrator as non-deliverable before the deadline for opting out of the Settlement shall be sent to the forwarding address affixed thereto.  If no forwarding address is provided, then the Claims Administrator shall perform a standard skip trace to attempt to determine the most current mailing address, and shall resend the Class Notice to the appropriate address(es).  Any undelivered Class Notices shall be resent within three (3) business days after the Claims Administrator receives notice that the Class Notice was undeliverable.  The opt-out deadline and objection deadline shall not be extended for Settlement Class Members whose original Class Notices are re-mailed pursuant to this paragraph.

57.     The Claims Administrator will update addresses based on any forwarding address received and/or requests to do so received from Settlement Class Members or Class Counsel.

58.     At least five (5) business days prior to the deadline for the filing of Plaintiffs' Motion for Final Approval, the Claims Administrator shall provide counsel for the Parties with

SETTLEMENT AGREEMENT AND RELEASE

Case 3:11-cv-01372-SI   Document 237-1   Filed 04/09/14   Page 30 of 78   Page ID#:
Case 1:14-cv-20484-BB   Document 34-1   Entered on FLSD Docket 04/21/2014   Page 30 of 78
7322

a declaration setting forth: (a) due diligence and proof of mailing of the Class Notice; (b) the total number of Settlement Class Members who were sent the Class Notice; and (c) the total number of Settlement Class Members who submitted timely requests for exclusion or objections to the Settlement, along with complete copies of all requests for exclusion and objections, including the postmark dates for each request for exclusion or objection.  Co-Lead Class Counsel shall file such declaration with the Court, including information concerning whether any requests for exclusion or objections to the Settlement have been withdrawn.

## OPT-OUTS AND OBJECTIONS

59.    <u>Requests for Exclusion</u>.  The Class Notice shall provide that Settlement Class Members who wish to exclude themselves from the Settlement must submit a written statement requesting exclusion from the Settlement ("opt-out"), postmarked no later than the Opt-Out Deadline.  Such written request for exclusion must contain the name, address, telephone number, and email address of the Settlement Class Member requesting exclusion, and be personally signed by the Settlement Class Member who seeks to opt out.  No opt-out request may be made on behalf of a group of Settlement Class Members.  The opt-out request must be sent by mail to the Claims Administrator and must be timely postmarked as set forth above. The postmark date of the mailing envelope shall be the exclusive means used to determine whether an opt-out has been timely submitted.  The Claims Administrator shall provide the parties with copies of all opt-out requests on a weekly basis.  Within five (5) business days after the Opt-Out Deadline, the Claims Administrator shall provide the parties with a report that includes the total number of Settlement Class Members who submitted opt-out requests (the "Opt-Out Report").  If the number of Settlement Class Members who file opt-out requests equals or exceeds one percent (1%) of the total number of all Settlement Class Members, then BANA, in its sole discretion may, at any time within ten (10) business days after it receives the Opt-Out Report, notify Co-Lead Class Counsel that it believes that the Settlement Agreement

-29-

cannot achieve its purpose.  In that event, this Settlement Agreement shall become null and void; the Action may continue; the Parties shall jointly move that any and all orders entered pursuant to this Settlement Agreement be vacated; and the status quo ante shall be restored and all defenses to class certification preserved.  Any Settlement Class Member who requests exclusion from the Settlement will not be entitled to any Settlement Payment and will not be bound by this Settlement Agreement or have any right to object, appeal or comment thereon.

60.    Objections.  The Class Notice shall provide that any Settlement Class Member who wishes to object to the Settlement Agreement must file a written statement of objection with the Court and mail a copy to the Claims Administrator, filed and postmarked no later than the Opt-Out Deadline.  The notice of objection must state the basis for the objection.  Such objection must contain the name, address, telephone number, and email address of the Settlement Class Member making the objection, and be personally signed by the Settlement Class Member.  The objection must be sent by mail to the Claims Administrator and must be timely postmarked as set forth above.  The postmark date of the mailing envelope shall be the exclusive means used to determine whether an objection has been timely submitted.  The Claims Administrator shall provide the Parties with copies of all objections on a weekly basis. Settlement Class Members who fail to make objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from seeking review or making any objection (whether by appeal or otherwise) to the Settlement or the terms of the Agreement.

61.    Appearance.  Subject to the approval of the Court, any Settlement Class Member who files and serves a written objection in accordance with Paragraph 60 may appear, in person or by counsel, at the Final Approval Hearing, to show cause why the proposed Settlement should not be finally approved, but only if the objecting Settlement Class Member: (i) files with the Clerk of the Court a notice of intention to appear at the Final Approval

SETTLEMENT AGREEMENT AND RELEASE

Case 3:11-cv-01372-SI   Document 237-1   Filed 04/09/14   Page 32 of 78   Page ID#:
Case 1:14-cv-20484-BB   Document 34-1   Entered on FLSD Docket 04/21/2014   Page 32 of 78
7324

Hearing by the Opt-Out Deadline ("Notice of Intention to Appear"); and (ii) serves the Notice of Intention to Appear on all counsel designated in the Class Notice by the Opt-Out Deadline. The Notice of Intention to Appear must include copies of any papers, exhibits or other evidence that the objecting Settlement Class Member will present to the Court in connection with the Final Approval Hearing. Any Settlement Class Member who does not file a Notice of Intention to Appear in accordance with the deadlines and other specifications set forth in this paragraph shall not be entitled to appear at the Final Approval Hearing and raise any objections.

## **FINAL APPROVAL AND JUDGMENT ORDER**

62.    <u>Final Approval Motion</u>.  At least fourteen (14) days before the Final Approval Hearing or as otherwise ordered by the Court, Plaintiffs shall file a Motion for Final Approval of Class Action Settlement.

63.    <u>Matters to Be Considered at Final Approval Hearing</u>.  At the Final Approval Hearing, the Court will consider and determine whether the provisions of this Agreement should be approved; whether the Class Notice sent to Settlement Class Members constituted the best notice practicable under the circumstances; whether the terms of the Settlement are fair, reasonable, and adequate; whether any objections to the Settlement should be overruled; whether Class Counsel's Motion for Approval of Attorneys' Fees and Expenses should be approved; whether the requested service awards and the fees and expenses of the Claims Administrator should be approved; and whether a Judgment finally approving the Settlement should be entered.

64.    This Agreement is subject to and conditioned upon the issuance by the Court of a Final Approval Order which grants final approval of this Agreement and:

a.    Finds that the Class Notice satisfies the requirements of due process and Fed. R. Civ. P. 23;

SETTLEMENT AGREEMENT AND RELEASE

b.      Finds that the Agreement is fair, reasonable and adequate to the Settlement Class, that each Settlement Class Member (except those who submit a timely and valid request for exclusion) shall be bound by this Agreement;

c.      Dismisses on the merits and with prejudice all claims asserted in the Action against BANA;

d.      Permanently enjoins all Settlement Class Members (except those who submit a timely and valid request for exclusion), and any person actually or purportedly acting on their behalf, from bringing, joining, or continuing to prosecute against BANA any action asserting the Released Claims; and

e.      Retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this Settlement.

This Agreement is not, however, conditioned upon the Court's approval of any amounts requested for attorneys' fees and expenses, service awards, or fees and expenses of the Claims Administrator.

## TERMINATION OF AGREEMENT

65.     The Named Plaintiffs, on behalf of the Settlement Class Members, by Class Counsel, and BANA, by its counsel, shall each have the right to unilaterally terminate this Agreement by providing written notice of their election to do so to all other Parties hereto within ten (10) business days of:  (a) the Court's refusal to grant Preliminary Approval of this Agreement; (b) the Court's refusal to grant final approval of this Agreement; (c) the date upon which the Judgment is modified or reversed in any material respect by the Ninth Circuit Court of Appeals or the United States Supreme Court; or (d) the agreement being materially modified in any way.  Further, BANA shall have the additional right to unilaterally terminate this Agreement by providing written notice of its election to do so to all other Parties hereto within ten (10) business days of receiving the Opt-Out Report if the number of Settlement Class

-32-

Case 3:11-cv-01372-SI   Document 237-1   Filed 04/09/14   Page 34 of 78   Page ID#:
Case 1:14-cv-20484-BB   Document 34-1   Entered on FLSD Docket 04/21/2014   Page 34 of 78
7326

Members who file opt-out requests equals or exceeds one percent (1%) of the total number of all Settlement Class Members.  The above notwithstanding, the Parties agree that should the Court modify the Agreement in any respect, the Parties will, within the above-indicated period, meet and confer in a good faith attempt to reach agreement and preserve the Agreement.

## **RELEASES**

66.   <u>Class Release</u>.  Subject to the approval of the Court and in consideration of the benefits inuring to the Named Plaintiffs and Eligible Class Members, upon the Effective Date of this Settlement, the Named Plaintiffs and each Eligible Class Member and each of their respective spouses, children, executors, representatives, guardians, wards, heirs, estates, bankruptcy estates, bankruptcy trustees, successors, predecessors, joint tenants, tenants in common, tenants by the entirety, co-mortgagors, co-obligors, co-debtors, attorneys, agents and assigns, and all those who claim through them or who assert claims (or could assert claims on their behalf) (collectively, the "Releasors"), shall release, resolve, relinquish, and discharge BANA and its employees, agents, affiliates, predecessors, parents, subsidiaries, and BANA's LPFI vendors including any brokers, agents, insurance providers, and providers of tracking and placement services ("Released Parties") from any and all claims, counterclaims, actions, causes of action, demands, obligations and liabilities, of whatever kind or character, including, without limitation, those known or unknown, that arose during the Class Period, in any way arising from or related to the Released Parties' conduct, policies, or practices as to flood insurance that Releasors have, had, or may have had against the Released Parties; including, without limitation, any and all claims for individual money damages that were asserted or could have been asserted against Released Parties concerning BANA's conduct, policies, or practices as to flood insurance on behalf of Releasors in the Consolidated Amended Complaint through April 4, 2014 ("Released Claims").  The Releasors further agree that they shall be enjoined by the Court as part of its Final Approval Order from instituting any action or cause

SETTLEMENT AGREEMENT AND RELEASE

of action (in law, in equity, or administratively), suits, debts, liens, or claims, known or unknown, fixed or contingent, which they may have or claim to have in state or federal court, or with any state, federal or local government agency or with any administrative or advisory body, asserting the Released Claims.[4]   Nothing in this Agreement shall affect in any way a claim for coverage under any insurance policy, including any LPFI policy.

67.    The Released Claims in Paragraph 66 include, without limitation, all claims related to charges for BANA's placement of LPFI Policies during the Class Period; BANA's flood insurance requirements; the relationship, whether contractual or otherwise, between BANA and its employees, agents, affiliates, predecessors, parents, and subsidiaries, and BANA's LPFI vendors including any brokers, agents, insurance providers, and providers of tracking and placement services regarding LPFI, including, but not limited to, the procuring, underwriting, placement, insurance tracking, or costs of BANA's LPFI Policies; the coverage amount, duration, issue date, alleged "backdating," or alleged excessiveness of any LPFI Policies placed or charged by BANA; the payment or receipt of commissions, expense reimbursements, alleged "kickbacks," or any other compensation under any LPFI Policies placed or charged by BANA; any alleged "tying" arrangement involving BANA and LPFI; any alleged breach of fiduciary duty by BANA concerning LPFI; any alleged tortious interference by BANA and its employees, agents, affiliates, predecessors, parents, and subsidiaries, and BANA's LPFI vendors including any brokers, agents, insurance providers, and providers of tracking and placement services with mortgage contracts serviced by BANA; the disclosure or non-disclosure of any payment, expenses, fees, charges, or feature pertaining to or under any

---

[4] This Agreement resolves and releases all claims in the *Holmes* and *Purifoy* actions concerning LPFI. This Agreement is not intended to resolve and does not resolve or release any claims in the *Holmes* and *Purifoy* actions concerning lender-placed wind insurance or lender-placed hazard insurance, to the extent that such claims are asserted in the *Holmes* and *Purifoy* actions. This Agreement is also not intended to resolve any lender-placed hazard or lender-placed wind insurance claims in any other actions.

SETTLEMENT AGREEMENT AND RELEASE

Case 3:11-cv-01372-SI   Document 237-1   Filed 04/09/14   Page 36 of 78   Page ID#:
Case 1:14-cv-20484-BB   Document 34-1   Entered on FLSD Docket 04/21/2014   Page 36 of 78
7328

LPFI Policies placed or charged by BANA; the receipt or non-disclosure of any benefit under any LPFI Policies placed or charged by BANA; the content, manner, or accuracy of any communications regarding the placement of any LPFI Policies by BANA; and to the regulatory approval or non-approval of any LPFI Policies, or the premium thereon, placed or charged by BANA.

68.     Without in any way limiting their scope, the Released Claims cover by example, and without limitation, any and all claims for attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, or any other fees, costs, and/or disbursements incurred by Class Counsel, the Named Plaintiffs, Eligible Class Members, or Releasors in connection with or related in any manner to the litigation involving Named Plaintiffs or Releasors, the settlement of the Named Plaintiffs' litigation, the administration of this Agreement, and/or the Released Claims, except to the extent otherwise specified in this Agreement.

69.     With respect to the Released Claims, the Named Plaintiffs and each Releasor shall be deemed, as of the entry of the final Judgment, to have waived any and all provisions, rights, benefits conferred by Section 1542 of the California Civil Code, and any statute, rule and legal doctrine similar, comparable, or equivalent to California Civil Code Section 1542, which provides that:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

To the extent that anyone might argue that these principles of law are applicable—notwithstanding that the Settling Parties have chosen Oregon law to govern this Settlement Agreement—the Named Plaintiffs hereby agree, and each Releasor will be deemed to agree, that the provisions of all such principles of law or similar federal or state laws, rights, rules, or legal principles, to the extent they are found to be applicable herein, are hereby knowingly and

Case 3:11-cv-01372-SI    Document 237-1    Filed 04/09/14    Page 37 of 78    Page ID#:
Case 1:14-cv-20484-BB    Document 34-1    Entered on FLSD Docket 04/21/2014    Page 37 of 78
7329

voluntarily waived, relinquished, and released.  The Named Plaintiffs recognize, and each Releasor will be deemed to recognize, that, even if they may later discover facts in addition to or different from those which they now know or believe to be true, they nevertheless agree that, upon entry of the final Judgment, they fully, finally, and forever settle and release any and all claims covered by these Releases.  The Parties acknowledge that the foregoing Releases were bargained for and are a material element of the Agreement.

70.    Plaintiffs represent and warrant that they are the sole and exclusive owners of their Released Claims and that they have not assigned or otherwise transferred any interest in any of their Released Claims against any of the Released Parties, and further covenant that they will not assign or otherwise transfer any interest in any of Named Plaintiffs' Released Claims.  Further, Named Plaintiffs represent and warrant that they have no surviving claim or cause of action against any of the Released Parties with respect to any of the Released Claims.

71.    The administration and consummation of the Settlement as embodied in this Agreement shall be under the authority of the Court.  The Court shall retain jurisdiction to protect, preserve, and implement the Agreement, including, but not limited to, enforcement of the Releases contained in the Agreement.  The Court shall retain jurisdiction in order to enter such further orders as may be necessary or appropriate in administering and implementing the terms and provisions of the Agreement.

72.    Upon issuance of the Final Approval Order:  (i) the Agreement shall be the exclusive remedy for any and all Releasors, except those who have properly requested exclusion (opted out) in accordance with the terms and provisions hereof; (ii) the Released Parties shall not be subject to liability or expense for any of the Released Claims to any Releasors; (iii) Releasors shall be permanently barred and enjoined from filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise) any action in any jurisdiction based on or relating to any of the Released Claims or the facts and

SETTLEMENT AGREEMENT AND RELEASE

Case 3:11-cv-01372-SI   Document 237-1   Filed 04/09/14   Page 38 of 78   Page ID#:
Case 1:14-cv-20484-BB   Document 34-1   Entered on FLSD Docket 04/21/2014   Page 38 of 78
7390

circumstances relating thereto; and (iv) Releasors shall be permanently barred and precluded from organizing Releasors, or soliciting the participation of Releasors, for purposes of pursuing any action (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action in any jurisdiction) based on or relating to any of the Released Claims or the facts and circumstances relating thereto.

## **MISCELLANEOUS**

73.     <u>Acknowledgment</u>.  Each of the Parties acknowledges and represents that such Party: (a) has fully and carefully read this Agreement prior to execution; (b) has been fully apprised by counsel of the legal effect and meaning of the terms of this Agreement; (c) has had the opportunity to undertake whatever investigation or inquiry is necessary or appropriate in connection with this Agreement; (d) has been afforded the opportunity to negotiate any and all terms of this Agreement; and (e) is executing this Agreement voluntarily and free from any undue influence, coercion, or duress of any kind.

74.     <u>Agreement to Cooperate</u>.  Until the Court denies Preliminary Approval or Final Approval or judgment is modified in any material respect by the Ninth Circuit Court of Appeals or the United States Supreme Court, the Parties and their counsel will cooperate with each other and use their best efforts to effect the implementation of the Agreement.

75.     <u>Authority</u>.  Each person executing this Settlement Agreement on behalf of any of the Parties represents that such person has the authority to execute this Agreement.

76.     <u>Binding Upon Successors and Assigns</u>.  This Agreement shall be binding upon, and inure to the benefit of, the successors or assigns of the Released Parties and the Parties, as previously defined.

77.     <u>Communications to Media</u>.  The Parties agree that the terms of this Agreement shall remain confidential and not be disclosed by any party until this Settlement Agreement is filed in connection with Plaintiffs' Motion for Preliminary Approval of Class Action

Settlement.  The Parties agree further that both before and after Preliminary Approval of the Settlement Agreement they shall not publish a press release or advertisement concerning the Settlement Agreement.  If contacted by the press, the Parties shall provide answers to factual questions about the Settlement based on information in the public record and shall say:  "The Settlement reached is satisfactory to the Parties, and the Parties look forward to the Court approving the Settlement."  Nothing in this Paragraph shall prevent Class Counsel or counsel for BANA from posting general, factual case updates to their firm websites regarding this Settlement, based on information in the public record.

78.  <u>Construction</u>.  The Parties believe that the terms of this Agreement are a fair, adequate and reasonable settlement of this Action, and have arrived at this Settlement Agreement in arm's-length negotiations and with the assistance of a professional mediator, taking into account all relevant factors, present and potential.  This Agreement has been drafted jointly by counsel for the Parties.  Hence, in any construction or interpretation of this Agreement, the same shall not be construed against any of the Parties.

79.  <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts. All executed copies of this Agreement and photocopies thereof (including facsimile and/or emailed copies of the signature pages), shall have the same force and effect and shall be as legally binding and enforceable as the original.

80.  <u>Defense Fees and Costs</u>.  All of BANA's own attorneys' fees and legal costs and expenses incurred in the Action (and in the original proceedings initiated by the Named Plaintiffs) shall be borne by BANA from BANA's separate funds and not from the Gross Settlement Fund.

81.  <u>Entire Agreement</u>.  This Agreement constitutes the entire fully-integrated agreement among the Parties relating to the Settlement.  All prior or contemporaneous agreements, understandings and statements, whether oral or written, and whether by a party or

its counsel, are merged herein.  No oral or written representations, warranties or inducements of any kind have been made to any Party concerning this Agreement, other than as set forth herein.

82. <u>Governing Law</u>.  This Agreement shall be governed by the laws of the State of Oregon.

83. <u>Headings and Captions</u>.  The headings and captions in this Agreement are for convenience only and in no way define, limit, or otherwise describe the scope or intent of this Agreement, or any term of this Agreement.  Each term of this Agreement is contractual and is not merely a recital.

84. <u>No Oral Modifications</u>.  This Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors-in-interest.  No rights hereunder may be waived except in writing.  No oral amendment or modification shall be permitted or effective.

85. <u>Notices</u>.  Unless otherwise agreed in writing, all notices to the Parties or counsel required by the Agreement shall be made in writing and communicated by first class mail and email to the following:

If to the Named Plaintiffs or Class Counsel:

Shanon J. Carson
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-4656
Fax: (215) 875-4604
Email: scarson@bm.net

and

Kai Richter
**NICHOLS KASTER, PLLP**
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

-39-

Telephone: (612) 256-3200
Fax: (612) 215-6870
Email: krichter@nka.com

If to Bank of America:

John C. Englander
Matthew G. Lindenbaum
**GOODWIN PROCTER LLP**
Exchange Place, 53 State Street
Boston, MA 02109
617-570-1000
Fax: 617-523-1231
Email: jengander@goodwinprocter.com
    mlindenbaum@goodwinprocter.com

86.     Retention of Jurisdiction.    The Court shall retain jurisdiction to interpret,
implement and enforce this Settlement Agreement.  The Parties consent to jurisdiction for this
purpose.

**IN WITNESS WHEREOF, the Parties have executed and caused this Settlement
on the dates set forth below.**

Bank of America, N.A.

_____
Signature

Date: _4/1/2014_____

By: _Stephen Staid_____

Title _Senior Vice President_____

_____
Larry Arnett

Date: _____

_____
Ronda Arnett

Date: _____

_____
Alice A. Berger

Date: _____

-40-

Telephone: (612) 256-3200
Fax: (612) 215-6870
Email: krichter@nka.com

If to Bank of America:

John C. Englander
Matthew G. Lindenbaum
**GOODWIN PROCTER LLP**
Exchange Place, 53 State Street
Boston, MA 02109
617-570-1000
Fax: 617-523-1231
Email: jengander@goodwinprocter.com
          mlindenbaum@goodwinprocter.com

86.    Retention of Jurisdiction.    The Court shall retain jurisdiction to interpret,

implement and enforce this Settlement Agreement. The Parties consent to jurisdiction for this

purpose.

**IN WITNESS WHEREOF, the Parties have executed and caused this Settlement
on the dates set forth below.**

Bank of America, N.A.

_____                     Date:_____
Signature

                                            By:_____

                                            Title_____

_____                     Date:  3 APRIL 2014
Larry Arnett

_____                     Date: April 3, 2014
Ronda Arnett

_____                     Date:_____
Alice A. Berger

-40-

04/03/2014 THU 14:45    [JOB NO. 8903]    ☑002

> Telephone: (612) 256-3200
> Fax: (612) 215-6870
> Email: krichter@nka.com

If to Bank of America:

> John C. Englander
> Matthew G. Lindenbaum
> **GOODWIN PROCTER LLP**
> Exchange Place, 53 State Street
> Boston, MA 02109
> 617-570-1000
> Fax: 617-523-1231
> Email: jenglander@goodwinprocter.com
> mlindenbaum@goodwinprocter.com

86.   Retention of Jurisdiction.   The Court shall retain jurisdiction to interpret,

implement and enforce this Settlement Agreement. The Parties consent to jurisdiction for this

purpose.

**IN WITNESS WHEREOF, the Parties have executed and caused this Settlement on the dates set forth below.**

Bank of America, N.A.

_____          Date:_____
Signature

                                 By:_____

                                 Title_____


_____          Date:_____
Larry Arnett


_____          Date:_____
Ronda Arnett


_____          Date: April 3rd - 2014
Alice A. Berger

SETTLEMENT AGREEMENT AND RELEASE

_____     Date: _April 3, 2014_____
Lee M. Berger

_____     Date: _____
Susan Lass

_____     Date: _____
Mark Lemmer

_____     Date: _____
Pamela Lemmer

_____     Date: _____
Karyl Resnick

_____     Date: _____
Eric Skansgaard

_____     Date: _____
Donna M. Wade

_____     Date: _____
Edward M. Wallace, Jr.


**APPROVED AS TO FORM AND CONTENT:**

**FOR BANK OF AMERICA, N.A.**


_____
**GOODWIN PROCTER LLP**
John C. Englander
Matthew G. Lindenbaum
53 State Street, Exchange Place
Boston, MA 02109
617-570-1000
Fax: 617-523-1231
Email: jengander@goodwinprocter.com
         mlindenbaum@goodwinprocter.com


-41-

Date: _____
Lee M. Berger

Date: ___4/2/14___
Susan Lass

Date: _____
Mark Lemmer

Date: _____
Pamela Lemmer

Date: _____
Karyl Resnick

Date: _____
Eric Skansgaard

Date: _____
Donna M. Wade

Date: _____
Edward M. Wallace, Jr.

## APPROVED AS TO FORM AND CONTENT:

## FOR BANK OF AMERICA, N.A.

_____

**GOODWIN PROCTER LLP**
John C. Englander
Matthew G. Lindenbaum
53 State Street, Exchange Place
Boston, MA 02109
617-570-1000
Fax: 617-523-1231
Email: jengander@goodwinprocter.com
         mlindenbaum@goodwinprocter.com

-41-

_____  Date:_____
Lee M. Berger


_____  Date:_____
Susan Lass


_____  Date: 4-2-14
Mark Lemmer


_____  Date: 4-2-14
Pamela Lemmer


_____  Date:_____
Karyl Resnick


_____  Date:_____
Eric Skansgaard


_____  Date:_____
Donna M. Wade


_____  Date:_____
Edward M. Wallace, Jr.


**APPROVED AS TO FORM AND CONTENT:**

**FOR BANK OF AMERICA, N.A.**


_____

**GOODWIN PROCTER LLP**
John C. Englander
Matthew G. Lindenbaum
53 State Street, Exchange Place
Boston, MA 02109
617-570-1000
Fax: 617-523-1231
Email: jengander@goodwinprocter.com
        mlindenbaum@goodwinprocter.com


-41-

_____        Date:_____
Lee M. Berger


_____        Date:_____
Susan Lass


_____        Date:_____
Mark Lemmer


_____        Date:_____
Pamela Lemmer


_____        Date:___4/2/14_____
Karyl Resnick


_____        Date:_____
Eric Skansgaard


_____        Date:_____
Donna M. Wade


_____        Date:_____
Edward M. Wallace, Jr.


**APPROVED AS TO FORM AND CONTENT:**

**FOR BANK OF AMERICA, N.A.**


_____
**GOODWIN PROCTER LLP**
John C. Englander
Matthew G. Lindenbaum
53 State Street, Exchange Place
Boston, MA 02109
617-570-1000
Fax: 617-523-1231
Email: jengander@goodwinprocter.com
        mlindenbaum@goodwinprocter.com


-41-

_____  Date:_____
Lee M. Berger

_____  Date:_____
Susan Lass

_____  Date:_____
Mark Lemmer

_____  Date:_____
Pamela Lemmer

_____  Date:_____
Karyl Resnick

_____  Date: 4-3-14
Eric Skansgaard

_____  Date:_____
Donna M. Wade

_____  Date:_____
Edward M. Wallace, Jr.

**APPROVED AS TO FORM AND CONTENT:**

**FOR BANK OF AMERICA, N.A.**

_____

**GOODWIN PROCTER LLP**
John C. Englander
Matthew G. Lindenbaum
53 State Street, Exchange Place
Boston, MA 02109
617-570-1000
Fax: 617-523-1231
Email: jengander@goodwinprocter.com
    mlindenbaum@goodwinprocter.com

SETTLEMENT AGREEMENT AND RELEASE

_____        Date: _____
Lee M. Berger


_____        Date: _____
Susan Lass


_____        Date: _____
Mark Lemmer


_____        Date: _____
Pamela Lemmer


_____        Date: _____
Karyl Resnick


_____        Date: _____
Eric Skansgaard

_Donna M. Wade_                          Date: _4/3/2014_____
Donna M. Wade


_____        Date: _____
Edward M. Wallace, Jr.


**APPROVED AS TO FORM AND CONTENT:**

**FOR BANK OF AMERICA, N.A.**


_____

**GOODWIN PROCTER LLP**
John C. Englander
Matthew G. Lindenbaum
53 State Street, Exchange Place
Boston, MA 02109
617-570-1000
Fax: 617-523-1231
Email: jengander@goodwinprocter.com
        mlindenbaum@goodwinprocter.com

SETTLEMENT AGREEMENT AND RELEASE

_____        Date:_____
Lee M. Berger


_____        Date:_____
Susan Lass


_____        Date:_____
Mark Lemmer


_____        Date:_____
Pamela Lemmer


_____        Date:_____
Karyl Resnick


_____        Date:_____
Eric Skansgaard


_____        Date:_____
Donna M. Wade


_____        Date:    4/7/14
Edward M. Wallace, Jr.


**APPROVED AS TO FORM AND CONTENT:**

**FOR BANK OF AMERICA, N.A.**


_____

**GOODWIN PROCTER LLP**
John C. Englander
Matthew G. Lindenbaum
53 State Street, Exchange Place
Boston, MA 02109
617-570-1000
Fax: 617-523-1231
Email: jengander@goodwinprocter.com
        mlindenbaum@goodwinprocter.com

_____     Date:_____
Lee M. Berger


_____     Date:_____
Susan Lass


_____     Date:_____
Mark Lemmer


_____     Date:_____
Pamela Lemmer


_____     Date:_____
Karyl Resnick


_____     Date:_____
Eric Skansgaard


_____     Date:_____
Donna M. Wade


_____     Date:_____
Edward M. Wallace, Jr.


**APPROVED AS TO FORM AND CONTENT:**

**FOR BANK OF AMERICA, N.A.**


_____
**GOODWIN PROCTER LLP**
John C. Englander
Matthew G. Lindenbaum
53 State Street, Exchange Place
Boston, MA 02109
617-570-1000
Fax: 617-523-1231
Email: jengander@goodwinprocter.com
       mlindenbaum@goodwinprocter.com

-41-

Case 3:11-cv-01372-SI   Document 237-1   Filed 04/09/14   Page 52 of 78   Page ID#:
Case 1:14-cv-20484-BB   Document 34-1   Entered on FLSD Docket 04/21/2014   Page 52 of 78
7384

**LANE POWELL** PC
Tanya Durkee Urbach, OSB No. 962668
601 S.W. Second Avenue
Suite 2100
Portland, OR 97204
Telephone: (503) 778-2100
Fax: (503) 778-2200
Email: durkeet@lanepowell.com

**FOR PLAINTIFFS**

**BERGER & MONTAGUE, P.C.**
Shanon J. Carson
Patrick Madden
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-4656
Fax: (215) 875-4604
Email: scarson@bm.net
       pmadden@bm.net

**NICHOLS KASTER, PLLP**
Kai Richter
E. Michelle Drake
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
Email: krichter@nka.com
       drake@nka.com

**SHAPIRO HABER & URMY LLP**
Edward F. Haber
Adam M. Stewart
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134
Email: ehaber@shulaw.com
       astewart@shulaw.com

**TAUS, CEBULASH & LANDAU, LLP**

-42-

SETTLEMENT AGREEMENT AND RELEASE

LANE POWELL PC
Tanya Durkee Urbach, OSB No. 962668
601 S.W. Second Avenue
Suite 2100
Portland, OR 97204
Telephone: (503) 778-2100
Fax: (503) 778-2200
Email: durkeet@lanepowell.com

FOR PLAINTIFFS

BERGER & MONTAGUE, P.C.
Shanon J. Carson
Patrick Madden
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-4656
Fax: (215) 875-4604
Email: scarson@bm.net
        pmadden@bm.net

NICHOLS KASTER, PLLP
Kai Richter
E. Michelle Drake
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
Email: krichter@nka.com
        drake@nka.com

SHAPIRO HABER & URMY LLP
Edward F. Haber
Adam M. Stewart
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134
Email: ehaber@shulaw.com
        astewart@shulaw.com

TAUS, CEBULASH & LANDAU, LLP

-42-

Brett Cebulash
Kevin S. Landau
80 Maiden Lane, Suite 1204
New York, NY 10038
Telephone: (212) 931-0704
Fax: (212) 931-0703
Email: bcebulash@tcllaw.com
        klandau@tcllaw.com


**STOLL STOLL BERNE LOKTING & SHLACHTER P.C.**
Timothy S. DeJong, OSB No. 940662
Scott A. Shorr, OSB No. 961873
209 S.W. Oak Street, Fifth Floor
Portland, Oregon 97204
Telephone:     (503) 227-1600
Facsimile:     (503) 227-6840
Email: tdejong@stollberne.com
        sshorr@stollberne.com

SETTLEMENT AGREEMENT AND RELEASE

# Exhibit A

# CLASS ACTION CLAIM FORM

*Arnett v. Bank of America, N.A.*, No. 3:11-cv-01372 (D. Or.)

You received this Claim Form because you have been identified by Bank of America as a Settlement Class Member in this lawsuit involving Bank of America's flood insurance policies and practices. If Bank of America, BAC Home Loans Servicing, LP or Countrywide Home Loans ("BOA") required you to purchase flood insurance coverage <u>in excess of your unpaid principal balance or principal limit</u> (on a mortgage loan or reverse mortgage loan) <u>or in excess of your line of credit amount</u> (on a home equity line of credit), and you maintained flood insurance coverage in excess of your principal balance, principal limit, or line of credit amount after receiving a form letter from BOA between January 1, 2007 and April 4, 2014 requiring such coverage, you may be entitled to compensation under the Settlement for the excess coverage you did not want (including any excess lender-placed flood insurance coverage, any excess coverage you purchased on your own, or both).

To receive compensation, **PLEASE FULLY COMPLETE THIS CLAIM FORM, SIGN IT, AND RETURN IT BY [DATE] TO THE CLAIMS ADMINISTRATOR** via any of the methods listed below. If more than one person is listed on the Notice of Class Action Settlement that you received, please provide information for both individuals on this Claim Form. Incomplete or late Claim Forms may be deemed invalid so please make sure that this Claim Form is filled out completely and returned on time.

Claimant(s) Name(s)                           _____

Claimant(s) Current Address                   _____
(if different from address on the envelope     _____
enclosing this form)                           _____

Claimant(s) Telephone Numbers                 _____
                                              (Home)                    (Cell)

Claimant(s) Email Address                     _____

Claimant(s) Social Security Number(s)         _____
(Last four digits only)

## <u>YEARS IN WHICH EXCESS FLOOD INSURANCE COVERAGE WAS PURCHASED</u>

Please indicate the years in which you were required to purchase flood insurance coverage in excess of your unpaid principal balance, principal limit, or line of credit amount, either in the form of lender-placed flood insurance or flood insurance you purchased yourself as a result of receiving a letter from BOA requiring such coverage:

2007: ____  2008: ____  2009: ____  2010: ____  2011: ____  2012: ____  2013: ____  2014: ____

## <u>CERTIFICATION</u>

By signing below you declare that you did not want flood insurance coverage in excess of your unpaid principal balance, principal limit, or line of credit amount for the years indicated above.

Date: _____    _____    _____
                    (Signature of Claimant)           (Signature of Co-Claimant, if applicable)

**YOU MAY SUBMIT YOUR CLAIM FORM VIA ANY OF THE FOLLOWING METHODS:**

    **Mail to**: [Claims Administrator], [Street Address], [City], [State], [ZIP]
    **Fax to**: XXX-XXX-XXXX
    **Email to**: XXXXXXX@xxx
    **Online via**: www.XXXXXXXXXXXXXXX.com

Case 3:11-cv-01372-SI   Document 237-1   Filed 04/09/14   Page 57 of 78   Page ID#:
7349
Case 1:14-cv-20484-BB   Document 34-1   Entered on FLSD Docket 04/21/2014   Page 57 of 78

# Exhibit B

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| LARRY ARNETT, RONDA ARNETT, ALICE A. BERGER, LEE M. BERGER, SUSAN LASS, MARK LEMMER, PAMELA LEMMER, KARYL RESNICK, ERIC SKANSGAARD, DONNA M. WADE, and EDWARD M. WALLACE, JR., individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BANK OF AMERICA, N.A. in its own capacity and as successor by merger to BAC HOME LOANS SERVICING, L.P., <br><br> Defendant. | Case No. 3:11-CV-01372-SI <br><br> **NOTICE OF CLASS ACTION SETTLEMENT** |

**THIS IS A NOTICE OF A PROPOSED CLASS ACTION SETTLEMENT.
PLEASE READ THIS NOTICE CAREFULLY.  YOUR RIGHTS MAY BE AFFECTED.
<u>YOU MAY BE ENTITLED TO MONEY FROM THIS SETTLEMENT.</u>**

This is an important notice from the United States District Court for the District of Oregon regarding a proposed class action settlement and upcoming hearing in the above-referenced class action lawsuit that may affect your rights.  This notice is being sent to you because you have been identified as a class member in this lawsuit.  **A Claim Form is enclosed with this notice.  You must return this Claim Form by [INSERT DATE] if you wish to receive certain monetary relief under this settlement and are eligible for such relief, as explained further below on pages 3-5 of this notice.**

## I.  BACKGROUND AND SUMMARY OF LITIGATION

This class action lawsuit alleges that Defendant Bank of America, N.A., in its own capacity and as successor by merger to BAC Home Loans Servicing, L.P. ("BANA" or "Defendant") violated the legal rights of its customers by requiring them to purchase excessive amounts of flood insurance coverage and by arranging for improper kickbacks for itself and/or its affiliates (including in the form of commissions) in connection with force-placed flood insurance.  BANA denies that it has done anything unlawful, but has agreed to enter into a settlement agreement to resolve these allegations.  By agreeing to this settlement, BANA does not admit any wrongdoing, and its agreement shall not constitute an admission of liability by BANA.

The Court has certified the following class for settlement purposes:

> All persons who were sent a flood insurance cycle letter by BANA, Countrywide Home Loans, Inc., or Countrywide Home Loans Servicing, LP or who were charged for lender-placed flood insurance by BANA, Countrywide Home Loans,

Inc., or Countrywide Home Loans Servicing, LP on or after January 1, 2007 and before April 4, 2014 in connection with a residential mortgage loan, home equity line of credit, reverse mortgage loan, or loan secured by shares in a cooperative housing association.

## II.     SUMMARY OF THE PROPOSED SETTLEMENT TERMS

The Court certified the Settlement Class and preliminarily approved the settlement on [INSERT, 2014]. The Settlement Agreement provides for the following relief:

### A.     Prospective Relief (meaning changes BANA agrees to make to its flood insurance policies and practices)

1.     <u>Commissions</u>.  For three (3) years from the Effective Date of the Settlement Agreement, neither BANA nor its affiliates shall receive any commission payments in connection with BANA's placement of force-placed flood insurance on any property securing a residential mortgage loan, home equity line of credit, reverse mortgage loan, or security instrument secured by shares in a cooperative housing association within BANA's servicing portfolio.

2.     <u>Right to Request Flood Coverage Opt-Out Form</u>.  For three (3) years from the Effective Date of the Settlement Agreement, BANA shall provide a Flood Coverage Opt-Out Form to any member of the Settlement Class who requests a Flood Coverage Opt-Out Form, provided that the Settlement Class Member's unpaid principal balance ("UPB") on their mortgage loan, line of credit under their home equity line of credit, or principal limit on their reverse mortgage loan is less than $250,000, and subject to the limitation that BANA is not obligated to accept the Flood Coverage Opt-Out Form if the Flood Coverage Opt-Out Form is returned to BANA more than 35 days after the date on the Flood Coverage Opt-Out Form.

3.     <u>Flood Coverage Opt-Out Form Provided with All "Gap" Cycle Letters</u>.  For three (3) years from the Effective Date of the Settlement Agreement, BANA shall enclose a Flood Coverage Opt-Out Form with each "gap" cycle letter requesting additional flood insurance coverage.

4.     <u>Nature and Effect of Flood Coverage Opt-Out Form</u>.  The Flood Coverage Opt-Out Form shall provide each Settlement Class Member who receives the Form with an opportunity to elect to maintain flood insurance coverage in the amount of the Settlement Class Member's UPB/line of credit amount/principal limit, where the Settlement Class Member's UPB/line of credit/principal limit is less than $250,000.  Consistent with its current practice, BANA shall honor the Settlement Class Member's election for at least until the expiration of the Settlement Class Member's flood insurance policy term.  In the event the Settlement Class Member's lender-placed flood insurance policy is renewed, BANA shall provide the Settlement Class Member with a Flood Coverage Opt-Out Form with respect to the renewal policy.  If the Flood Coverage Opt-Out Form is completed and returned within 35 days from the date on the Flood Coverage Opt-Out Form, BANA shall cancel any portion of the existing lender-placed flood insurance coverage in excess of UPB/line of credit amount/principal limit and shall completely refund any charges associated with such coverage, and, if necessary, issue a substitute policy at the UPB/line of credit amount/principal limit.

5.     <u>Effect of Change to UPB Standard</u>.  In the event that BANA changes its flood insurance coverage requirement to the lesser of UPB, replacement cost value, or $250,000, any obligation that BANA has under the Settlement Agreement to provide borrowers with a Flood Coverage Opt-Out Form is extinguished.

6.      No Flood Coverage Requirement for Co-Op Borrowers Unless Required by Mortgage.  BANA shall not knowingly require Settlement Class Members with loans or lines of credit secured by shares in housing cooperatives ("Co-Op Borrowers") to maintain flood insurance coverage where flood insurance is not required by their security instrument, and shall fully refund Co-Op Borrowers for any force-placed flood insurance coverage that was not required by their security instrument to the extent that BANA becomes aware of such coverage.

The foregoing prospective relief shall be subject to changes in applicable law or changes in investor or insurer requirements which would prevent BANA from implementing such prospective relief. Should any provision of the foregoing prospective relief conflict or be inconsistent with any existing or subsequently adopted state or federal statute, regulation, rule, order, or regulatory directive, or any existing or subsequently adopted agency or investor rule or requirement, such statute, regulation, rule, order, regulatory directive, or requirement shall control..

## B.      Monetary Relief to Settlement Class Members and Distribution Formula

Pursuant to the Settlement Agreement, BANA has agreed to establish a non-reversionary Gross Settlement Fund of Thirty-One Million Dollars ($31,000,000.00).  The following amounts will be deducted from the Gross Settlement Fund: any amounts approved by the Court for (a) service awards to Plaintiffs Larry Arnett, Ronda Arnett, Alice A. Berger, Lee M. Berger, Susan Lass, Mark Lemmer, Pamela Lemmer, Karyl Resnick, Eric Skansgaard, Donna M. Wade, and Edward M. Wallace, Jr., plus Darrell A. Purifoy, Lynda C. Purifoy and Herta S. Theberge (though only one service award per household), for their efforts in bringing and prosecuting this litigation, not to exceed $2,500 each; (b) attorneys' fees to Class Counsel (not to exceed thirty percent (30%) of the Gross Settlement Fund); (c) Class Counsel's expenses that are approved by the Court; and (d) the fees and costs of the Claims Administrator.  The Court has not yet decided whether to award some or all of these amounts, but to the extent that any amounts are awarded, they will be deducted from the Gross Settlement Fund and the remainder will constitute the Net Settlement Fund that will be available to provide monetary relief to Settlement Class Members who do not timely opt out of the Settlement ("Eligible Class Members"), and who have claims that are eligible for monetary relief under the Settlement Agreement as set forth below. Class Counsel will file a Motion for Attorneys' Fees and Expenses at least 30 days prior to the deadline for submitting opt-out requests, as described below.

The Net Settlement Fund shall be distributed to Eligible Class Members *pro rata* based on each Eligible Class Member's "Settlement Shares."  Each Eligible Class Member's Settlement Shares shall be calculated as described in subparagraphs (i), (ii), and/or (iii) below.  Eligible Class Members may receive Settlement Shares under more than one subparagraph below and for each force-placement of flood insurance within the Class Period (January 1, 2007 to April 4, 2014).  Due to the *pro rata* distribution of the Net Settlement Fund to Settlement Class Members, "Settlement Shares" are not equal to actual dollars, and the amount each Class Member will receive from the Net Settlement Fund will not be known until after all Claim Forms have been returned and compiled.

i.      Settlement Class Members who were force-placed with flood insurance during the Class Period by BANA shall receive Settlement Shares equal to 12% of their net force-placed flood insurance premiums charged by BANA during the Class Period;

ii.      Settlement Class Members who timely return the enclosed Claim Form postmarked or otherwise returned on or before [INSERT DATE], stating that, for any particular year during the Class Period, they were required by BANA to purchase flood insurance in

3

excess of their UPB/line of credit amount/principal limit (either excess LPFI or excess private insurance or both), and that they did not want such coverage, shall receive Settlement Shares equal to the average amount that a Settlement Class Member would have paid for the average coverage amount of BANA's "gap" policies by purchasing insurance through the National Flood Insurance Program, as determined by Plaintiffs' Damages Expert, for each year in which excess coverage is claimed; and

iii.    Settlement Class Members who are identified by BANA as Co-Op Borrowers and who timely return the enclosed Claim Form postmarked or otherwise returned on or before [INSERT DATE], stating that they were required by BANA to purchase private flood insurance in excess of their UPB/line of credit amount/principal limit (and did purchase such insurance) shall receive a Settlement Share equal to the amount that a Settlement Class Member would have paid for the average class flood insurance coverage amount by purchasing insurance through the National Flood Insurance Program, as determined by Plaintiffs' Damages Expert.

**You do not need to submit a Claim Form to be entitled to monetary relief under Paragraph (i) above.  However, you must fill out and return the enclosed Claim Form by [INSERT DATE] if you believe that you qualify for additional monetary relief pursuant to paragraphs (ii) or (iii) above.**  You can submit your completed and signed Claim Form in any of the following ways:

- **Mail to:** [INSERT CLAIMS ADMINISTRATOR ADDRESS]
- **Fax to:** XXX-XXX-XXXX
- **Email to:** xxxxxxxx.com
- **Online via:** www.xxxxxxxxxxxxxxx.com

A Claim Form is enclosed with this notice.  In addition, copies of the Claim Form can also be obtained on the settlement website at [INSERT WEBSITE ADDRESS].

Within 10 business days after the Court's Final Approval Order, Plaintiffs' Damages Expert shall calculate the total Settlement Shares for all Eligible Class Members based on the loan-level data that has been produced by BANA in this litigation and any Claim Forms that are returned, and shall determine the amount owed to each Eligible Class Member based upon their *pro rata* share of the Net Settlement Fund.

Eligible Class Members who have previously made or who make an insurance coverage claim in the future on any force-placed flood insurance policy will not be affected in any way as a result of their participation in this Settlement, and may participate in this Settlement to the same extent as Eligible Class Members who have not made an insurance coverage claim on their force-placed flood insurance policy.

Eligible Class Members shall be paid by check, unless they have an active escrow account and an active mortgage loan or home equity line of credit serviced by BANA, in which case they may be paid via escrow credit by BANA, at BANA's election.  With respect to such Eligible Class Members, by 45 days after the Effective Date of the Settlement, BANA shall credit such escrow accounts with escrow credits equal to the Settlement Payment to which the Eligible Class Members are entitled under the Settlement Agreement.  Within an additional 30 days, the Claims Administrator shall distribute all settlement payments to those Eligible Class Members who are to be paid by check.

Eligible Class Members who are issued their settlement payments by check will have 180 days

from the date of distribution of their payments to cash their check. Eligible Class Members may request new checks to be issued by the Claims Administrator during this time period, if they lose or misplace their original check; however, the time period for cashing the check will be the same as the original time period set forth above.

Within 10 days after the conclusion of the time period for Eligible Class Members to cash their checks, the Claims Administrator shall determine the amount of money remaining in the Qualified Settlement Fund as the result of voided or undeliverable checks. If there is $750,000 or more remaining in the Qualified Settlement Fund as a result of voided or undeliverable checks, such funds will be redistributed on a *pro rata* basis to Eligible Class Members who received escrow credits or negotiated their checks (minus any additional costs of settlement administration). If there is less than $750,000 remaining in the Qualified Settlement Fund as a result of voided or undeliverable checks, such funds will be distributed to the Center for Responsible Lending, a non-profit organization, subject to the Court's Final Approval Order. In the event that any redistributed funds remain unclaimed by Settlement Class members more than 180 days after such redistribution, such unclaimed funds shall be distributed to the Center for Responsible Lending.

## III.    Class Counsel

Co-Lead Class Counsel (the lawyers representing the Plaintiffs and the class members), consist of the following law firms:

BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103

NICHOLS KASTER, PLLP
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

In addition to the co-lead firms identified above, the following law firms also represent the Class: Stoll Stoll Berne Lokting & Shlachter P.C., Taus, Cebulash & Landau, LLP, and Shapiro Haber & Urmy LLP.

## IV.    Release of Claims

In exchange for the prospective and monetary relief provided by the Settlement Agreement, all Settlement Class Members who do not timely exclude themselves by opting out of the settlement, will release BANA and its employees, agents, affiliates, predecessors, parents, subsidiaries, and BANA's lender-placed flood insurance vendors including any brokers, agents, insurance providers, and providers of tracking and placement services (collectively, the "Released Parties"), from all claims actually made or that could have been made on behalf of Settlement Class Members related to the Released Parties' conduct, policies, or practices as to flood insurance. Specifically, the Settlement Agreement sets forth the Class Release as follows:

> Subject to the approval of the Court and in consideration of the benefits inuring to the Named Plaintiffs and Eligible Class Members, upon the Effective Date of this Settlement, the Named Plaintiffs and each Eligible Class Member and each of their respective spouses, children, executors, representatives, guardians, wards, heirs, estates, bankruptcy estates, bankruptcy trustees, successors,

5

predecessors, joint tenants, tenants in common, tenants by the entirety, co-mortgagors, co-obligors, co-obligors, co-debtors, attorneys, agents and assigns, and all those who claim through them or who assert claims (or could assert claims on their behalf) (collectively, the "Releasors"), shall release, resolve, relinquish, and discharge BANA and its employees, agents, affiliates, predecessors, parents, subsidiaries, and BANA's LPFI vendors including any brokers, agents, insurance providers, and providers of tracking and placement services ("Released Parties") from any and all claims, counterclaims, actions, causes of action, demands, obligations and liabilities, of whatever kind or character, including, without limitation, those known or unknown, that arose during the Class Period, in any way arising from or related to the Released Parties' conduct, policies, or practices as to flood insurance that Releasors have, had, or may have had against the Released Parties; including, without limitation, any and all claims for individual money damages that were asserted or could have been asserted against Released Parties concerning BANA's conduct, policies, or practices as to flood insurance on behalf of Releasors in the Consolidated Amended Complaint through April 4, 2014 ("Released Claims"). The Releasors further agree that they shall be enjoined by the Court as part of its Final Approval Order from instituting any action or cause of action (in law, in equity, or administratively), suits, debts, liens, or claims, known or unknown, fixed or contingent, which they may have or claim to have in state or federal court, or with any state, federal or local government agency or with any administrative or advisory body, asserting the Released Claims. Nothing in this Agreement shall affect in any way a claim for coverage under any insurance policy, including any LPFI policy.

The Released Claims include, without limitation, all claims related to charges for BANA's placement of LPFI Policies during the Class Period; BANA's flood insurance requirements; the relationship, whether contractual or otherwise, between BANA and its employees, agents, affiliates, predecessors, parents, and subsidiaries, and BANA's LPFI vendors including any brokers, agents, insurance providers, and providers of tracking and placement services regarding LPFI, including, but not limited to, the procuring, underwriting, placement, insurance tracking, or costs of BANA's LPFI Policies; the coverage amount, duration, issue date, alleged "backdating," or alleged excessiveness of any LPFI Policies placed or charged by BANA; the payment or receipt of commissions, expense reimbursements, alleged "kickbacks," or any other compensation under any LPFI Policies placed or charged by BANA; any alleged "tying" arrangement involving BANA and LPFI; any alleged breach of fiduciary duty by BANA concerning LPFI; any alleged tortious interference by BANA and its employees, agents, affiliates, predecessors, parents, and subsidiaries, and BANA's LPFI vendors including any brokers, agents, insurance providers, and providers of tracking and placement services with mortgage contracts serviced by BANA; the disclosure or non-disclosure of any payment, expenses, fees, charges, or feature pertaining to or under any LPFI Policies placed or charged by BANA; the receipt or non-disclosure of any benefit under any LPFI Policies placed or charged by BANA; the content, manner, or accuracy of any communications regarding the placement of any LPFI Policies by BANA; and to the regulatory approval or non-approval of any LPFI Policies, or the premium thereon, placed or charged by BANA.

6

Case 3:11-cv-01372-SI    Document 237-1    Filed 04/09/14    Page 64 of 78    Page ID#:
Case 1:14-cv-20484-BB    Document 34-1    Entered on FLSD Docket 04/21/2014    Page 64 of 78
7350

If the proposed settlement is approved by the Court, a judgment will be entered by the Court following the Final Fairness Hearing that will dismiss with prejudice the Released Claims as set forth above. <u>This release will not affect in any way any claim for coverage under any insurance policy, including any lender-placed insurance policy.</u>

## V.    <u>Your Legal Rights and Options</u>

All Settlement Class members who do not submit a timely request to exclude themselves from the settlement will be entitled to participate in the Settlement and will be subject to the release set forth above.

If you do not wish to participate in this settlement (in which case, you will not be entitled to any benefits under the settlement and will not be bound by the release set forth above), then you must submit a written statement requesting exclusion from the settlement ("opt-out") postmarked no later than [INSERT DATE].    Your written request for exclusion must contain your name, address, telephone number and email address, and be personally signed by you.  No opt out request may be made on behalf of a group of Settlement Class Members.  If more than one person was obligated on the loan, then the opt-out notice needs to be signed by all obligors on the loan to be valid.  The opt-out request must be sent by mail to the Claims Administrator at [INSERT ADDRESS] and must be timely postmarked as set forth above.  The postmark date of the mailing envelope shall be the exclusive means used to determine whether an opt-out has been timely submitted.  Any Settlement Class Member who requests exclusion from (opts out of) the settlement will not be entitled to any settlement payment and will not be bound by the Settlement Agreement or have any right to object, appeal or comment thereon.

If you wish to object to the settlement, you must file a written statement of objection with the Court by mailing a copy to the Clerk of Court and the Claims Administrator at the following addresses, filed and postmarked no later than [INSERT DATE]:

INSERT COURT ADDRESS

ANALYTICS, LLC
INSERT CLAIMS ADMINISTRATOR ADDRESS

You must state the basis for your objection, as well as your name, address, telephone number, and email address, and the objection must be personally signed by you.  The postmark date of the mailing envelope shall be the exclusive means used to determine whether an objection has been timely submitted.  Settlement Class Members who fail to make objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from seeking review or making any objection (whether by appeal or otherwise) to the settlement or the terms of the Settlement Agreement.

Subject to the approval of the Court, any Settlement Class Member who files and serves a written objection in accordance with the provisions set forth above may appear, in person or by counsel, at the Final Approval Hearing, to show cause why the proposed settlement should not be finally approved, but only if the objecting Settlement Class Member: (i) files with the Clerk of the Court a notice of intention to appear at the Final Approval Hearing by [INSERT DATE] ("Notice of Intention to Appear"); and (ii) serves the Notice of Intention to Appear on all the parties identified below, postmarked no later than [INSERT DATE]:

ANALYTICS, LLC INC
INSERT CLAIMS ADMINISTRATOR ADDRESS

Shanon J. Carson
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103

Kai H. Richter
NICHOLS KASTER, PLLP
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

Matthew G. Lindenbaum
GOODWIN PROCTER LLP
Exchange Place, 53 State Street
Boston, MA 02109

The Notice of Intention to Appear must include copies of any papers, exhibits or other evidence that the objecting Settlement Class Member will present to the Court in connection with the Final Approval Hearing.  Any Settlement Class Member who does not file a Notice of Intention to Appear in accordance with the deadlines and other specifications set forth in this paragraph shall not be entitled to appear at the Final Approval Hearing and raise any objections.

## VI.    The Final Fairness Hearing

On [INSERT DATE], at [INSERT TIME], in Courtroom __ on the ___ Floor of the United States Courthouse, 1000 Southwest Third Ave, Portland, Oregon 97204, the Court will hold a Final Fairness Hearing to determine whether to grant final approval to the proposed settlement and determine the appropriate amount of compensation to be awarded to Class Counsel, the appropriate amount of any service awards to be approved, and the appropriate amount of fees and costs to be paid to the Claims Administrator, out of the Gross Settlement Fund.  You may, but are not required, to attend this hearing. You may also enter an appearance in the case through your own attorney, if you so desire.

You may review a copy of the Settlement Agreement and other documents that are pertinent to this case, including Class Counsel's Motion for Attorneys' Fees and Costs (when it is filed), at the settlement website, [INSERT WEBSITE].  You may also review a copy of the Settlement Agreement at the Clerk's Office at the Court (1000 Southwest Third Ave, Portland, Oregon 97204).

## VII.    How to Obtain Additional Information

This Notice of Class Action Settlement provides a summary of the proposed Settlement Agreement.  If you have any questions concerning this settlement, you should visit the settlement website, [INSERT WEBSITE].  If you have further questions after visiting the settlement website, you may call the Claims Administrator at [INSERT TOLL FREE NUMBER], or mail or email your inquiry to the Claims Administrator at the address below:

ANALYTICS, LLC
[INSERT CLAIMS ADMINISTRATOR ADDRESS AND CONTACT INFORMATION]

**PLEASE DO NOT CONTACT THE COURT**

8

Case 3:11-cv-01372-SI   Document 237-1   Filed 04/09/14   Page 66 of 78   Page ID#:
Case 1:14-cv-20484-BB   Document 34-1   Entered on FLSD Docket 04/21/2014   Page 66 of 78
7358

# Exhibit C

LCHL 9046                    CIS/BIS and SWBC(Flood GAP) Additional Coverage LKA.SI and Opt Out Certificate Notice                    E(G862G)  04/02/14
                                                                                                                                       [01]
                                                                                                                                       [15]

[LOGO]
[77]
[78]                                                                      Date: [BO]
[79]  [80]
                                                                         Control Number: [42]


000022 – 000045
[16]
[54]
[17]
[18]
[19]  [20]


RE    Loan Number:        [01]-[15]
      Property Address    [82]
                          [97]  [85]

Dear [BN]:

The amount of lender-placed additional flood insurance coverage we may obtain is based on the homeowners insurance coverage amount you last purchased or, if we did not have that information, then the total unpaid principal balance of the loan on your property was used, neither to exceed the National Flood Insurance Program (NFIP) maximum of $250,000 for residential and $500,000 for commercial properties. If your unpaid principal loan balance is less than the amount of homeowners insurance coverage you last purchased, then you may reduce the lender-placed additional flood insurance coverage amount to the difference, if any, between your current flood insurance coverage amount and your unpaid principal loan balance. If you choose to reduce your flood insurance coverage amount to the unpaid principal loan balance, the amount of lender-placed additional flood insurance coverage will be reduced to the amount indicated in Option B below. If you choose Option B below and (1) the amount shown is less than $2,000, or (2) if your current flood insurance coverage amount is, or is increased to, an equal to your unpaid principal loan balance, then the additional flood insurance requirement will be waived for the current coverage period.

Option A.   Current Coverage Amount (based on the difference between your current flood coverage and your homeowners coverage amount):  [84]

Option B.   Coverage Amount (based on the difference between your current flood coverage and your unpaid principal loan balance):  [B9]

**If you wish to lower the lender-placed additional flood insurance coverage amount to your unpaid principal loan balance (if your unpaid principal loan balance is less than the last known amount of homeowners insurance coverage), check the box below, sign this form and mail the entire form to the address shown in the top left corner of this letter. You have up to 35 calendar days from the date posted on this letter to mail your request or it shall be conclusively presumed that you have elected not to change the coverage amount.**

Upon receipt of your request, we will cancel the current lender-placed flood insurance coverage and, if applicable, reissue with a coverage amount equal to the amount shown in Option B above. We will then bill you the appropriate insurance charges for a one year term. If you request this coverage amount change, it will be effective as of the effective date of your last preferred flood insurance policy received.

** PLEASE NOTE, YOU MUST SIGN AND RETURN THIS ENTIRE LETTER
TO LOWER THE COVERAGE AMOUNT.

YOU ARE NOT OBLIGATED TO LOWER THE COVERAGE AMOUNT, AND WE WILL NOT CHANGE THE COVERAGE AMOUNT UNLESS YOU MAIL THIS SIGNED LETTER WITHIN THE TIME SPECIFIED IN THIS LETTER.**

☐   Yes, please lower my required flood insurance Coverage Amount for the current coverage term to be equal to my unpaid principal loan balance amount of [C5]. I am aware that by lowering the amount of flood insurance coverage, the flood coverage amount will be less than a flood insurance coverage amount based on the amount of homeowners insurance coverage I last purchased and may not be enough to fully replace or repair the property in the event of damage or destruction due to flood.

Signature: _____        Date: _____

                                                                                                        AR90051

Case 3:11-cv-01372-SI   Document 237-1   Filed 04/09/14   Page 68 of 78   Page ID#:
Case 1:14-cv-20484-BB   Document 34-1   Entered on FLSD Docket 04/21/2014   Page 68 of 78
7360

# Exhibit D

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LARRY ARNETT, RONDA ARNETT,                   Case No. 3:11-CV-01372-SI
ALICE A. BERGER, LEE M. BERGER,
SUSAN LASS, MARK LEMMER,
PAMELA LEMMER, KARYL
RESNICK, ERIC SKANSGAARD,
DONNA M. WADE, and EDWARD M.
WALLACE, JR., individually and on
behalf of all others similarly situated,

        Plaintiffs,

v.

BANK OF AMERICA, N.A., in its own
capacity and as successor by merger to
BAC HOME LOANS SERVICING, L.P.,

        Defendant.

**[PROPOSED] ORDER: (1) PRELIMINARILY APPROVING PROPOSED CLASS ACTION SETTLEMENT, (2) APPROVING PROPOSED NOTICE OF SETTLEMENT AND AUTHORIZING DISTRIBUTION OF NOTICE VIA FIRST CLASS MAIL, (3) CERTIFYING SETTLEMENT CLASS, (4) APPOINTING PLAINTIFFS' COUNSEL AS COUNSEL FOR THE SETTLEMENT CLASS, (5) DESIGNATING PLAINTIFFS AS CLASS REPRESENTATIVES, AND (6) SETTING FINAL APPROVAL HEARING**

This matter came before the Court on Plaintiffs' unopposed Motion for Preliminary Approval of Class Action Settlement with Defendant Bank of America, N.A., in its own capacity and as successor by merger to BAC Home Loans Servicing, L.P. ("BANA" or "Defendant"). The Court has considered the Motion, the proposed Class Action Settlement Agreement ("Settlement Agreement" or "Settlement"), the Notice of Proposed Class Action Settlement ("Class Notice"), the other papers submitted in connection with the Motion, and all files, records, and proceedings in the above-captioned action (the "Action"). Finding good cause to approve the Motion, the Court now finds and ORDERS as follows:

1

1.      All defined terms contained herein shall have the same meaning as set forth in the Settlement Agreement executed by the Parties and filed with the Court.

2.      The Court preliminarily approves the Settlement Agreement and the terms set forth therein, subject to further consideration at the Final Approval Hearing after members of the Settlement Class have had an opportunity to opt-out of the Settlement or object to the Settlement.

3.      Pursuant to Federal Rule of Civil Procedure 23, the Court certifies, solely for purpose of effectuating this Settlement, the following Settlement Class:

> All persons who were sent a flood insurance cycle letter by BANA, Countrywide Home Loans, Inc., or Countrywide Home Loans Servicing, LP or who were charged for lender-placed flood insurance by BANA, Countrywide Home Loans, Inc., or Countrywide Home Loans Servicing, LP on or after January 1, 2007 and before April 4, 2014 in connection with a residential mortgage loan, home equity line of credit, reverse mortgage loan, or loan secured by shares in a cooperative housing association.

4.      The Court finds that the Settlement Class meets the criteria for certification under Federal Rule of Civil Procedure 23(a).  The number of class members in the Settlement Class is sufficiently numerous that joinder of all members is impractical.  There are questions of law and fact common to the Settlement Class with respect to both the challenged "commission" practice and BANA's flood insurance coverage requirements.  Plaintiffs' claims are typical of the claims of the Settlement Class.  Finally, Plaintiffs and their counsel have fairly and adequately represented the interests of the Settlement Class, and will do so in connection with the Settlement Agreement.

5.      The Court further finds that the Settlement Class meets the criteria for certification under Federal Rule of Civil Procedure 23(b)(3).  The aforementioned common issues predominate over any individualized issues, and resolution of this action as a class action

is superior to alternative methods of adjudicating the claims of the members of the Settlement Class.

6.      The Court appoints the named Plaintiffs in the Consolidated Amended Complaint -- Larry Arnett, Ronda Arnett, Alice A. Berger, Lee M. Berger, Susan Lass, Mark Lemmer, Pamela Lemmer, Karyl Resnick, Eric Skansgaard, Donna M. Wade, and Edward M. Wallace, Jr. -- as Class Representatives for the Settlement Class.

7.      The Court appoints Plaintiffs' counsel, Berger & Montague, P.C., Nichols Kaster, PLLP, Stoll Stoll Berne Lokting & Shlachter P.C., Taus, Cebulash & Landau, LLP, and Shapiro Haber & Urmy LLP, as Class Counsel for the Settlement Class, and appoints Berger & Montague, P.C. and Nichols Kaster, PLLP as co-lead Class Counsel.

8.      The Court also hereby approves Analytics, LLC as the Claims Administrator.

9.      The Court finds on a preliminary basis that the terms of the Settlement Agreement (including the monetary relief, prospective relief, and release of claims) are fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e).  The Court further finds that the Settlement Agreement is the result of arms-length negotiations conducted after Class Counsel adequately investigated the claims of the named Plaintiffs and the Settlement Class and became familiar with the strengths and weaknesses of those claims. The assistance of an experienced mediator in the settlement process supports the Court's conclusion that the Settlement is non-collusive.  The Court therefore grants preliminary approval of the Settlement.

10.     The Court finds and concludes that the Class Notice and the procedure set forth in the Settlement Agreement for providing notice to the Settlement Class will provide the best notice practicable, satisfies the notice requirements of Rules 23(c)(2)(B) and 23(e), adequately advises members of the Settlement Class of their rights under the Settlement, and meets the

Case 3:11-cv-01372-SI   Document 237-1   Filed 04/09/14   Page 72 of 78   Page ID#:
7964
Case 1:14-cv-20484-BB   Document 34-1   Entered on FLSD Docket 04/21/2014   Page 72 of 78

requirements of due process.  The Class Notice fairly, plainly, accurately, and reasonably provides Settlement Class members with all required information, including (among other things): (1) a summary of the lawsuit and the claims asserted; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) an explanation as to which Settlement Class members must submit a claim and instructions as to how such Settlement Class members may make a claim; (5) a disclosure of the release of claims should they choose to remain in the class; (6) an explanation of Settlement Class members' opt-out rights, a date by which Settlement Class members must opt out, and information regarding how to do so; (7) instructions as to how to object to the Settlement and a date by which Settlement Class members must object; (8) the date, time, and location of the final approval hearing; (9) the internet address for the settlement website and the toll-free number from which Settlement Class members may obtain additional information about the Settlement; and (10) the names of the law firms representing the Settlement Class, contact information for the co-lead firms, and information regarding how Class Counsel and the named Class Representatives will be compensated.

11.    The proposed plan for mailing the Class Notice by first class mail to the last known addresses of the members of the Settlement Class is an appropriate method, reasonably designed to reach all individuals who would be bound by the Settlement.  Any Class Notice returned to the Claims Administrator as non-deliverable before the deadline for opting out of the Settlement shall be sent to the forwarding address affixed thereto.  If no forwarding address is provided, then the Claims Administrator shall perform a standard skip trace to attempt to determine the most current mailing address, and shall resend the Class Notice to the appropriate address(es).  Any undelivered Class Notices shall be resent within three (3) business days after

the Claims Administrator receives notice that the Class Notice was undeliverable, and the Claims Administrator will update addresses based on any forwarding addresses received, any skip traces performed, and/or any updated address information provided by Settlement Class Members or Class Counsel.  Accordingly, the Court approves the Class Notice, and the manner of distributing the Class Notice to Settlement Class members.

12.     The Court further finds that the Claim Form set forth in the Settlement Agreement is not unduly burdensome for Settlement Class members to complete, and that the claims process established by the Settlement for Settlement Class members to receive compensation in connection with their claims regarding excessive flood insurance requirements is reasonable and appropriate.[1]  Members of the Settlement Class who wish to receive monetary compensation under the Settlement in connection with their claims regarding excessive flood insurance requirements must submit a valid and timely Claim Form to the designated Claims Administrator, as provided in the Settlement Agreement, postmarked no later than 60 days after the Class Notice Date.

13.     Following entry of this Preliminary Approval Order, BANA shall produce (or shall supplement to the extent this information has already been produced), based upon its regularly maintained mortgage banking business records, the following information to Class Counsel and the Claims Administrator for all Settlement Class Members, in electronic format:

　　　　a.      Settlement Class Members' names;

　　　　b.      Settlement Class Members' last-known mailing address;

---

[1]  Settlement Class members who were charged for lender-placed insurance will receive compensation in connection with their claims regarding improper commissions without being required to complete and return a Claim Form.

Case 3:11-cv-01372-SI   Document 237-1   Filed 04/09/14   Page 74 of 78   Page ID#:
Case 1:14-cv-20484-BB   Document 34-1   Entered on FLSD Docket 04/21/2014   Page 74 of 78
7966

     c.      Date of first flood insurance cycle letter sent to borrower during the Class Period;

     d.      Net premiums charged to borrower for lender-placed flood insurance ("LPFI") during the Class Period;

     e.      Most recent unpaid principal balance ("UPB");

     f.      For loans that are no longer active, the date the loan was paid off or otherwise removed from BANA's active servicing portfolio;

     g.      Whether the loan is in a Co-Op to BANA's knowledge; and

     h.      Whether the loan has an active escrow account.

14.     Within twenty-one (21) days after receiving the Class List, the Claims Administrator shall mail the Court-approved Class Notice and Claim Form to all Settlement Class Members, which shall provide instructions and information to Settlement Class Members concerning the Settlement, their right to receive a share of the Net Settlement Fund, which Settlement Class members must submit a claim and instructions as to how such Settlement Class members may make a claim, and Settlement Class members' objection rights and opt-out rights. For purposes of this mailing, the Claims Administrator shall use the address information supplied by BANA, subject to appropriate updating based on the information in the United States Post Office National Change of Address Database.

15.     On or before the Class Notice Date, the Claims Administrator shall make active a website describing the terms of the Settlement and from which Settlement Class Members can download relevant forms such as the Consolidated Amended Complaint; the Class Notice; the Claim Form; the Settlement Agreement; the Court's Preliminary Approval Order; Class Counsel's Motion for Final Approval and Motion for Attorneys' Fees and Expenses; and the

Court's Final Approval Order.  The website shall allow Settlement Class Members to upload completed claim forms, and shall include the toll free number applicable to this Settlement.  This website shall remain active until such time as distributions of Settlement Payments are completed to Eligible Class Members and the period for cashing settlement checks expires.

16.     On or before the Class Notice Date, the Claims Administrator also shall arrange for a telephone call center facility with a toll free number to be active until such time as all distributions of Settlement Payments are completed to Eligible Class Members and the period for cashing settlement checks expires, in order to respond to questions from Settlement Class Members.

17.     Members of the Settlement Class who wish to exclude themselves from the Settlement Class must submit a written statement requesting exclusion from the Settlement ("opt-out"), postmarked no later than 60 days after the Class Notice Date.  Such written request for exclusion must contain the name, address, telephone number, and email address of the Settlement Class member requesting exclusion, and be personally signed by the Settlement Class member who seeks to opt out.  The opt-out request must be sent by mail to the Claims Administrator and must be timely postmarked as set forth above.  The postmark date of the mailing envelope shall be the exclusive means used to determine whether an opt-out has been timely submitted.  Untimely requests to opt-out will be deemed invalid and ineffective.  No opt-out request may be made on behalf of a group of Settlement Class Members.  If more than one person was obligated on the loan, then the opt-out notice needs to be signed by all obligors on the loan to be valid.  Any member of the Settlement Class who timely requests exclusion from the Settlement Class and chooses to opt-out of the Settlement will not be entitled to any compensation in connection with the Settlement and will not be bound by the Settlement

Case 3:11-cv-01372-SI   Document 237-1   Filed 04/09/14   Page 76 of 78   Page ID#:
7364
Case 1:14-cv-20484-BB   Document 34-1   Entered on FLSD Docket 04/21/2014   Page 76 of 78

Agreement or have any right to object, appeal, or comment thereon.  Members of the Settlement

Class who do not submit a valid and timely request to opt-out shall be bound by all terms of the

Settlement Agreement.  The Claims Administrator shall provide the Parties with copies of all

opt-out requests on a weekly basis.

18.     Any member of the Settlement Class who wishes to object to the Settlement must

file a written statement of objection with the Court and mail a copy to the Claims Administrator,

filed and postmarked no later than 60 days after the Class Notice Date.  The Notice of Objection

must state the basis for the objection.  Such objection must contain the name, address, telephone

number, and email address of the Settlement Class member making the objection, and be

personally signed by the Settlement Class Member.  The objection must be sent by mail to the

Claims Administrator and must be timely postmarked as set forth above.  The postmark date of

the mailing envelope shall be the exclusive means used to determine whether an objection has

been timely submitted.  The Claims Administrator shall provide the Parties with copies of all

objections on a weekly basis.  Settlement Class Members who fail to make objections in the

manner specified above shall be deemed to have waived any objections and shall be foreclosed

from seeking review or making any objection (whether by appeal or otherwise) to the Settlement

or the terms of the Settlement Agreement.

19.     Any Settlement Class Member who files and serves a written objection in

accordance with Paragraph 18 above may appear, in person or by counsel, at the Final Approval

Hearing, to show cause why the proposed Settlement should not be finally approved, but only if

the objecting Settlement Class Member: (i) files with the Clerk of the Court a notice of intention

to appear at the Final Approval Hearing ("Notice of Intention to Appear") by the deadline for

submitting objections; and (ii) serves the Notice of Intention to Appear on all counsel designated

8

Case 3:11-cv-01372-SI   Document 237-1   Filed 04/09/14   Page 77 of 78   Page ID#:
Case 1:14-cv-20484-BB   Document 34-1   Entered on FLSD Docket 04/21/2014   Page 77 of 78
7360

in the Class Notice.  The Notice of Intention to Appear must include copies of any papers, exhibits or other evidence that the objecting Settlement Class Member will present to the Court in connection with the Final Approval Hearing.  Any Settlement Class Member who does not file a Notice of Intention to Appear in accordance with the deadlines and other specifications set forth in this paragraph shall not be entitled to appear at the Final Approval Hearing and raise any objections.

20.     The Court will conduct a Final Approval Hearing on _____, 2014, at _____ [a.m.] [p.m.], to determine whether the Settlement is fair, reasonable and adequate, whether the notice provided to Settlement Class members constitutes the best notice practicable and satisfies due process, whether any objections to the Settlement should be overruled, whether Class Counsel's motion for attorneys' fees, costs, and expenses (including expenses of settlement administration) should be approved, and whether a class representative award to the named Class Representatives should be approved (and in what amount).

21.     At least 30 days prior to the Opt-Out Deadline and objection deadline, Class Counsel shall file a Motion for Attorneys' Fees and Expenses in accordance with Fed. R. Civ. P. 23(h).  Plaintiffs' Final Approval Motion shall be filed no later than fourteen (14) days prior to the date of the Final Approval Hearing.  In the Final Approval Motion, Class Counsel shall address any timely submitted objections to the Settlement.

22.     Pending the Court's final determination as to whether the Settlement should be approved, all members of the Settlement Class and all persons acting on behalf of any member of the Settlement Class are barred and enjoined from instituting, commencing, or continuing to prosecute, directly or indirectly, as an individual or collectively, representatively, derivatively on behalf of them, or in any other capacity of any kind whatsoever, any action in any state court,

any federal court, or any other tribunal or forum of any kind, against the Released Parties which falls within the definition of the Released Claims in the Settlement Agreement and shall not pursue any pending actions against the Released Parties asserting the Released Claims.

23.    In the event the Settlement is not finally approved, or otherwise does not become effective in accordance with the terms of the Settlement Agreement, this Order shall be rendered null and void and shall be vacated, and Plaintiffs, the Settlement Class members, and BANA shall revert to their respective positions before entering into the Settlement Agreement.

**IT IS SO ORDERED**

Dated: _____          _____
                                   Honorable Michael H. Simon
                                   United States District Court Judge