**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**CLASS ACTION**
**CASE NO. 1:14-cv20484-BLOOM**

**SARAH ALHASSID, &**
**SARAH DRENNEN**
on their own behalf and on behalf
of all others similar situated**,**

**Plaintiff,**

**vs.**

**BANK OF AMERICA, N.A., &**
**NATIONSTAR MORTGAGE LLC**
**(D/B/A CHAMPION MORTGAGE),**

**Defendants.**
**_______________________________________/**

**NOTICE OF TAKING VIDEO DEPOSITION DUCES TECUM OF DEFENDANT NATIONSTAR MORTGAGE LLC'S CORPORATE REPRESENTATIVE(S) PURSUANT TO FED. R. CIV. P. 30(B)(6)**

**TO:** **Alan G. Greer, Esquire**
**Richman Greer, PA**
**396 Alhambra Cir.**
**North Tower – 14th Floor**
**Miami, FL 33134**

**PLEASE TAKE NOTICE** that the Plaintiff will take the deposition(s), by oral examination, of the person(s) named below, at the time, on the date, at the hour, and at the place indicated:

**NAME:** **Defendant Nationstar Mortgage, LLC's Corporate Representative(s) able to testify concerning information known or reasonably available to Defendant regarding the topics listed in the attached Exhibit A**

**DATE:** **October 1, 2014**

**TIME:** **9:00 a.m.**

**LOCATION:** **Nationstar Mortgage LLC**
**8950 Cypress Waters Blvd.**
**Dallas, TX 75063**

**YOU ARE COMMANDED** to appear before a person authorized by law to take a video deposition at the address and time listed above, for the taking of your deposition in this action, to testify regarding the following topics:

**Exhibit A: 30(b)(6) Topics**

1. Defendant's corporate structure and how the named Defendant relates to "Champion Mortgage," supposedly a division within Defendant's business.
2. The precise reason(s) why Nationstar Mortgage, LLC ("Defendant") accused, or adopted Bank of America N.A's accusation, Plaintiff Alhassid of defaulting on her reverse mortgage loan, and the level, type and scope of due diligence, if any, regarding same.
3. The precise reason(s) why Defendant accepted the assignment or sale of reverse mortgage and traditional mortgage servicing rights from Bank of America, N.A. during the past five years, including all reasons for and the terms of your purchase of servicing rights with respect to Ms. Drennen's mortgage in 2013, and all due diligence performed regarding the status of her mortgage before or after servicing rights were obtained.
4. The due diligence Defendant performed regarding the assignment/sale of the reverse mortgage at issue involving Ms. Alhassid and whether it independently confirmed that the loan was in default prior to or after the time that it was assigned from or sold by Bank of America, N.A.
5. The nature, and terms, of the assignment of the mortgages and/or servicing rights from Bank of America, N.A., when this was done, whether Bank of America, N.A. still has a residual interest in the mortgages, and if not, when and how it was relinquished.
6. Why and whether Defendant was authorized in imposing and charging "property inspection," "preservation," "appraisal", and "service" fees, and charging for "delinquent property taxes" to Plaintiffs, and how (and by whom) the amounts of these charges and fees were determined.
7. Proof that property inspections, property preservations, property appraisals, and services, which were billed to Plaintiffs, actually occurred, the identities of all people and corporations that performed appraisals, inspections, preservations, services and paid property taxes, and how these corporations or people (if not employed by Defendant) were vetted by Defendant or Bank of America, N.A. prior to the time they were hired/tasked with the provision of these billed services.

8. Details concerning what a "property inspection" fee, as listed on Ms. Alhassid's and Ms. Drennen's mortgage statements, is, how often these were done with respect to their properties, precisely what was done, and how the fee is warranted or reasonable in light of the actual services rendered.
9. Details concerning what a "property preservation" fee, as listed on Ms. Alhassid's mortgage statements, is, how often these were billed with respect to her property, precisely what was preserved and why, and how the fee is warranted or reasonable in light of the actual services rendered.
10. Details concerning what a "property appraisal" fee, as listed on Ms. Alhassid's mortgage statements, is, how often these were billed with respect to her property, precisely what was preserved and why, and how the fee is warranted or reasonable in light of the actual services rendered.
11. Details concerning what a "servicing fee," as listed on Ms. Alhassid's and Ms. Drennen's mortgage statements, is, how often these were billed with respect to their properties, precisely what was done, and how the fee is warranted or reasonable in light of the actual services rendered.
12. Details concerning what a "payment for attorney fees/costs," fee as listed on Ms. Alhassid's and Ms. Drennen's mortgage statements, is, how often these were billed to Defendants, precisely what was done in connection with this fee, identification of the attorneys and costs that were being paid and why, and how the fee is warranted or reasonable in light of the actual services rendered.
13. Details concerning why Defendant charged Plaintiff Alhassid for "Delinquent property taxes," the due diligence (if any) performed prior to imposing this charge to ensure that Ms. Alhassid's property taxes were delinquent, the identity of the party that paid these taxes (if not Defendant) and this party's relationship with Defendant, how often and the total amount billed to Plaintiff, and why this fee is warranted, reasonable and authorized in your opinion.
14. Defendant's position as to whether the fees and charges on Plaintiffs' mortgage statements referenced in ##6-13 were unique to the named Plaintiffs, or whether they are part of customary nationwide mortgage servicing practices, and Defendant's position regarding commonality, typicality, and numerosity with respect to these charges that Plaintiffs have alleged are unauthorized and excessive.

15. Defendant's position as to whether the fees and charges on Plaintiffs' mortgage statements referenced in ##6-13, the force-placed insurance charge with respect to Plaintiff Alhassid's property, the failure to articulate how and why Ms. Alhassid had defaulted on her reverse mortgage loan, the filing of an unsupported foreclosure lawsuit against Plaintiff Alhassid, and the vague and inconsistent representations to Ms. Drennen when she inquired concerning her mortgage loan, is in accordance with Defendant's obligations as a "debt collector" that has an obligation to not make "false and misleading representations" or engage in "unfair practices" under the Fair Debt Collection Practices Act, 15 USC § 1692.
16. Whether Co-Defendant Bank of America, N.A. authorized, approved, had knowledge of, and had an interest in, Defendant's actions in imposing and charging "property inspection," "preservation," "appraisal", and "service" fees, and charging for "delinquent property taxes," with respect to any national mortgage borrower, including Plaintiffs, in the past five years.
17. The reasons why Nationstar Mortgage LLC served a reverse mortgage foreclosure lawsuit against Plaintiff Alhassid, and all due diligence, if any, that was done to ensure that it was a valid lawsuit and that the verified allegations were accurate.
18. Identification of the individuals who decided to serve a reverse mortgage foreclosure lawsuit against Plaintiff Alhassid.
19. Identification of the individuals with knowledge of the reasons and terms of the sale or assignment, en masse, of mortgages or servicing rights from Bank of America, N.A. during the past five years.
20. The reasons why Nationstar Mortgage LLC voluntarily dismissed its reverse mortgage foreclosure lawsuit against Plaintiff Alhassid.
21. Defendant's due diligence prior to serving a reverse mortgage foreclosure lawsuit against Plaintiff Alhassid.
22. The status of Sarah Drennen's mortgage, whether it is deemed to be in default, and the authority Defendant is relying on in charging her "property preservation," fees and "legal fees."
23. The precise reasons why Ms. Drennen's monthly bill increased even after her loan modification in or around January 2014.
24. Data (amount, location, and basis) concerning all reverse mortgage foreclosure lawsuits

filed by Defendant occurring anywhere in the United States within the past five years.

25. Data (amount, location, and basis) concerning all mortgage foreclosure lawsuits filed by Defendant occurring anywhere in the United States within the past five years, relating specifically to allegations that borrowers defaulted due to non-payment of force-placed insurance, or failure to maintain requisite property insurance.
26. Data (amount, location, and basis) concerning all mortgage foreclosure lawsuits filed by Defendant occurring anywhere in the United States within the past five years, relating specifically to allegations that borrowers defaulted due to non-payment of property taxes.
27. The nature, and terms of, Bank of America, NA's sale of $18 billion in servicing rights for reverse mortgage to Defendant for approximately $25 million in late 2011.
28. The nature, and precise terms of any other transactions, sales or agreements relating to reverse mortgages between Defendant and Bank of America, NA during the last five years.
29. Bank of America, N.A.'s residual and continuing financial interest in any of the loans that were assigned or sold to Defendant during the past five years.
30. Bank of America, N.A.'s residual and continuing financial interest in any of the foreclosure lawsuits filed by Defendant during the past five years.
31. Whether Defendant thinks it owes, or ever did owe, duties to its elderly reverse mortgage borrower, Plaintiff Alhassid.
32. The similarities and differences between the reverse mortgage agreement and documents between Plaintiff Alhassid and Defendant, and the reverse mortgage agreement and documents between Defendant and any other reverse mortgage borrower in the United States within the last five years, which have any impact on your position regarding commonality in this case.
33. The similarities and differences between how Bank of America, NA handled the assignment/sale of reverse mortgage interests and rights to Defendant as it relates to the named Plaintiff, versus how this was done as it relates to all of its national reverse mortgage borrowers during the past five years, and how this impacts your position regarding commonality in this case.
34. Your knowledge of federal and state regulatory investigations and actions regarding Bank of America, NA and Defendant's reverse mortgage consumer practices within the last five years.

35. Your knowledge of similar state and federal lawsuits regarding Bank of America, NA and Defendant's reverse mortgage consumer practices within the last five years.

**YOU ARE ALSO COMMANDED** to have with you the following:

**Exhibit B: Duces Tecum**

1. All documents referred to or relied on in preparing for this deposition.

2. All documents relating to the topics in Exhibit A.

3. All communications, including but not limited to emails and letters, between Defendant and Bank of America, NA (and their agents or subsidiaries), mentioning the word "Alhassid" since the inception of her reverse mortgage contract.

4. All documents mentioning the word "Alhassid" in your possession, custody or control.

5. All communications, including but not limited to emails and letters, between Defendant and Bank of America, NA (and their agents or subsidiaries), mentioning the word "Drennen" since the inception of Sarah Drennen's mortgage contract.

6. All documents mentioning the word "Drennen" in your possession, custody or control.

7. All communications, including but not limited to emails and letters, between Defendant and the insurer that supposedly provided coverage as a result of Defendants' decision to put force-placed insurance on Plaintiff Alhassid's property.

8. All agreements, declaration pages, insurance contracts, or other materials relating to the force-placed insurance on Plaintiff Alhassid's property.

9. All documents evidencing the due diligence you performed prior to concluding, or adopting Co-Defendant's conclusion, that Plaintiff Alhassid's reverse mortgage loan was in default, and deciding to put force-placed insurance on her property.

10. All documents evidencing the due diligence you performed prior to the sale or assignment of mortgages and servicing rights from Bank of America, NA both with respect to the specific reverse mortgage loan entered into by Plaintiff, and with respect to all national mortgage loans in existence within the past five years.

11. Any and all mortgage servicing rights agreements executed by Defendant and Bank of America, NA, or their agents and subsidiaries.

12. All documents, including contracts, drafts of contracts and proof of payment, that refer or relate to the sale or assignment of mortgages and servicing rights to Defendant during the past five years from Bank of America, NA.

13. All documents, including contracts, drafts of contracts and proof of payment, that refer or relate to the sale or assignment of mortgages and servicing rights to Defendant during the past five years from any party.

14. All contracts in your possession to which any class member is a party, including but not limited to notes, security agreements, financing statements, in connection with the mortgage and or Note attached to or referred to in the attachments to Plaintiff's second amended complaint, and all brokerage agreements, guarantees, UCC-1 forms, UCC-11 forms, mortgages, and insurance agreements.

15. All disclosure statements given to potential class members or other notices of their rights in connection with the agreement, the reverse mortgage and or mortgage deed attached to or referred to in the attachments to Plaintiff's second amended complaint with respect to all affected potential class members.

16. All telephone log sheets or other internal memoranda or notes concerning the transactions which are the subject of this lawsuit, and communications with Plaintiffs.

17. All documents summarizing or memorializing any oral communications between the potential class members and Defendant related to or in any way connected with the loan transactions which are the subject of this lawsuit, and all documents containing or relating to any written communications between you and potential class members in connection with the agreement, the mortgage and or mortgage deed attached to or referred to in the attachments to Plaintiff's complaint.

18. All documents relating to any fees, commissions or other debits or payments received to or from potential class members in connection with the agreement, the reverse mortgage and or mortgage deed attached or referred to in the attachments to Plaintiff's second amended complaint.

19. All documents prepared in connection with or relating to all actions taken by any person acting on your behalf to ensure compliance with the Truth in Lending Act in the transactions which are the subject matter of this lawsuit.

20. Any internal memoranda, including in any electronic format, regarding the property appraisal fees and any companies retained to conduct property appraisals.

21. All documents indicating payments received and/or posted to the potential class members' and whether the payment was posted to interest or principal, late charges, or escrows for the mortgage and note sued upon.

22. All documents relating to the collection of escrow charges assessed against the Homeowner and paid by you or your agents and or employees.

23. All documents related to the acquisition of the mortgages or reverse mortgages and or notes for which you claim the right to reestablish and enforce, including but not limited to any and all pooling and or servicing agreements, assignments, endorsements, allonges, and copies of both sides of each and every check, and/or other evidence of payment, issued by you or received by anyone in connection with or related to the acquisition of the mortgage and note that you claim to hold and/or have the right to reestablish and or foreclose. The requested include the following:

    - Checks you made payable to anyone;
    - Checks payable to any of your agents;
    - Checks endorsed to you or any of your agents;
    - Checks made payable to any other persons receiving a portion of the forced placed insurance proceeds which you paid in connection with the transaction;
    - Any checks issued to pay for force placed insurance premiums, the costs associated with force placed insurance premiums, appraisal fees associated with any force placed insurance for which you seek reimbursement, credit reporting fees associated with force placed insurance, real estate title searches associated with force placed insurance, checks made payable to anyone other than the homeowner issued in connection with force placed insurance for which you seek reimbursement;
    - Any checks issued to pay for delinquent taxes, the costs associated with the payment of delinquent taxes, and any fees associated with the payment of delinquent taxes; and
    - Checks made payable to anyone other than the potential class members issued in connection with the payment of delinquent taxes for which you seek reimbursement.

24. All documents relating to any and all property inspection, property appraisal, and property preservation charges passed on to potential class members, including notices of amounts due, any delinquency, checks evidencing payment and dates of payment, and the amounts of any payments made.

25. All documents relating to any and all property appraisals done on any loan that Defendant serviced, including photos of the properties, copies of the actual appraisals, copies of the [relevant State issued] license numbers for the property appraisers that conducted the appraisals, copies of any and all proof that a copy of the appraisal was mailed to the homeowner, copies of any and all correspondence between the companies that that handled the appraisals, Bank of America, NA, and Defendant.

26. All documents relating to the collection of escrow charges assessed against the potential class members and paid by you.

27. All documents relating to the escrow charges passed on to the potential class members, including notices of amounts due, any delinquency, checks evidencing payment and dates of payment, and the amounts of any payments made.

28. Any and all documents, writings, or notes which show or establish or tend to establish that there were unpaid and delinquent taxes "and/or" insurance associated with the s potential class members properties at any time in 2007, 2008, 2009, 2010, 2011, 2012, or 2013.

29. Any and all documents, writings, or notes which show or establish or tend to establish that Defendant or Bank of America notified the potential class members that there were unpaid and delinquent taxes "and/or" insurance associated with the subject property.

30. Any and all documents, writings, or notes which show or establish or tend to establish that there was a lapse in the insurance coverage required of the potential class members with regard to the subject properties at any time in 2007, 2008, 2009, 2010, 2011, 2012, or 2013.

31. All documents constituting, summarizing or memorializing any communications between your company and any representative of the Mystic Pointe Condominium No. 2 Association relating to Plaintiff Alhassid.

32. All documents constituting, summarizing or memorializing any communications between your company and Sarah Drennen relating to her residential mortgage.

33. All written correspondence between your company and any representative of Mystic Pointe Condominium No. 2 Association that are related in any way to the Ms. Alhassid.

34. All documents summarizing or memorializing any oral communications between your company and any representative of Bank of America, NA (and its agents and subsidiaries) that are related in any way to Plaintiffs, their properties, and any actual or potential Class Members.

35. All written correspondence between your company and Bank of America, NA (and its agents and subsidiaries) that are related in any way to Plaintiffs, their properties, and any actual or potential Class Members.

36. Any and all documents, writing, notes and or contracts which may show or establish or tend to establish that you met the requirements of Florida Administrative Code 3D-40.008(1)-(10) entitled "Fees and Commissions" in connection with the loan(s) referred to above

37. Any and all documents, writing, notes and or contracts which may show or establish or tend to establish that you met the requirements of Florida Administrative Code 3D-40.175 entitled “Mortgage Brokerage Files” entitled “Fees and Commissions” in connection with the loan(s) referred to above, and the entire contents of all such Mortgage Brokerage files kept in connection with the loan(s) referred to above.

38. Any and all documents, writing, notes and or contracts which may show or establish or tend to establish that you met the requirements of Florida Administrative Code 3D-40.177 entitled “Mortgage Brokerage and Lending Transaction Journal” in connection to the loans referred to above, and the entire contents of all such Mortgage Brokerage and Lender Transactions Journal” kept in connection with the loan(s) referred to above.

39. Any and all documents, writing, notes and or contracts which may show or establish or tend to establish that you met the requirements of Florida Administrative Code 3D-40.260 entitled “Mortgage Lender Files” in connection to the loans referred to above, and the entire contents of all such Mortgage Lender Files” kept in connection with the loan(s) referred to above.

40. Any and all documents that are related in any way to the securitization of the potential class members’ mortgages and note from the date of closing to the present date.

41. Any and all documents reflecting or relating to the relationship between or among any of the following: Bank of America, Nationstar Mortgage, LLC, and Champion Mortgage Company, including documents reflecting co-ownership of corporations, partnership agreements, joint venture agreements, and communications reflecting transactions and/or all agreements between or among these entities.

42. If the chain of title does not provide the entire ownership of the note and mortgage uninterrupted, provide the documents which demonstrate the uninterrupted ownership of the note and mortgage from closing until today.

43. Copies of any and all allonges to the note under Plaintiff’s control for the potential class members mortgages and note which are the subject of this lawsuit.

To be taken before a court reporter and notary public or before their duly designated representative, who is not of counsel to the parties nor interested in the event of the cause. The video deposition(s) are being taken for the purposes of discovery, for use at trial, or for such other purposes as are permitted under the Federal Rules of Civil Procedure.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of this document has been furnished via email to the below addressees on this 28th day of August, 2014.

/s/ Max M. Nelson, Esq.
Max M. Nelson

Alan Graham Greer
agreer@richmangreer.com,

Brendan I Herbert
brendan.herbert@akerman.com,

Christopher Stephen Carver
christopher.carver@akerman.com

David L. Permut
dpermut@goodwinprocter.com

David S. Kantrowitz
dkantrowitz@goodwinprocter.com

Franklin G. Burt
fburt@cfjblaw.com

Geoff Hirshberg
geoff@hersseinlaw.com

Iris Joy Herssein
iris@hersseinlaw.com

Jeffrey Louis Goodman
jeffrey@hersseinlaw.com

Matthew G. Lindenbaum
mlindenbaum@goodwinprocter.com

Maury Lorne Udell
mudell@bmulaw.com

Maxwell Miller Nelson
max@hersseinlaw.com

Nathaniel Mark Edenfield
nedenfield@richmangreer.com

Reuven T. Herssein
reuven@hersseinlaw.com

Respectfully submitted,

**HERSSEIN LAW GROUP**
**12000 Biscayne Boulevard**
**Suite 402**
**North Miami, Florida 33181**
**Telephone No: (305) 531-1431**
**Facsimile No: (305) 531-1433**

**REUVEN HERSSEIN, ESQUIRE**
**FBN 0461504**
**IRIS HERSSEIN, ESQUIRE**
**FBN 0462391**
**JEFFREY L. GOODMAN, ESQUIRE**

**FBN 0068878**
**GEOFF HIRSHBERG, ESQUIRE**
**FBN 0092772**
**MAX M. NELSON, ESQUIRE**
**FBN 0084532**
**Attorneys for Plaintiff**

**Beighley, Myrick & Udell, P.A.**
**66 West Flagler Street**
**7th Floor**
**Miami, FL 33130**
**(305)-349-3930 – Phone**
**(305) 349-3931 – Fax**

**/s/ Maury L. Udell**

**MAURY L. UDELL, ESQUIRE**
**FBN 121673**
**Attorney for Plaintiff**