**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 14-CIV-20484-BLOOM/Valle**

SARAH ALHASSID and SARAH DRENNAN,
on their own behalf and on behalf
of all others similar situated,

       Plaintiff,

vs.

BANK OF AMERICA, N.A., NATIONSTAR
MORTGAGE, LLC (d/b/a CHAMPION
MORTGAGE),

       Defendants.

_____/

**MEMORANDUM OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART**
**DEFENDANTS' MOTIONS TO DISMISS AND MOTION TO SEVER**

     **THIS CAUSE** is before the Court on the Motions to Dismiss Plaintiffs Sarah Alhassid

and Sarah Drennan's ("Plaintiffs") Second Amended Class Action Complaint, ECF No. [73]

("SAC"), filed by Defendant Nationstar Mortgage, LLC ("Nationstar" and Nationstar's "Motion

to Dismiss", ECF No. [87]) and Defendant Bank of America, N.A. ("Bank of America" and

Bank of America's "Motion to Dismiss", ECF No. [91]), and Nationstar's Motion to Sever, ECF

No. [88]. The Court has reviewed the Motions, all supporting and opposing filings, and the

record in this case, and is otherwise fully advised as to the premises. For the reasons set forth

below, the Court in part grants and in part denies the Motions.

**I. BACKGROUND**

     This case involves allegations that Defendants manufactured, imposed and inflated

unauthorized and improper fees in connection with mortgage loans they owned and/or serviced,

first by improperly placing the loans in some form of default status and then, using the default status as a pretext, assessing excessive fees designed to obtain windfall profits at their borrowers' expense.  Plaintiff Alhassid initially instituted this putative class action several weeks following the filing of a foreclosure action by Nationstar against her in Florida state court.  Arguing that the state court foreclosure action was first-filed, Bank of America requested that this Court abstain from exercising jurisdiction over Alhassid's claims.  Prior to the Court's ruling on that motion, Plaintiff Alhassid filed her First Amended Class Action Complaint.  Bank of America renewed its request to abstain, and in the alternative, argued that the complaint should be dismissed for failure to state a claim.  Nationstar then voluntarily dismissed the state court action.  Bank of America dropped its request to abstain but reiterated its motion to dismiss.  The Court subsequently granted Alhassid leave to amend.  Plaintiffs – now including Drennan – filed the operative complaint.

Plaintiffs allege that both Alhassid and Drennan had obtained mortgages owned and/or serviced by Bank of America, which were later sold to Nationstar.  SAC ¶¶ 40-41, 53.  Alhassid, a resident and citizen of Florida, entered into a reverse mortgage for her condominium in February, 2007.  SAC ¶ 17.  Bank of America later acquired Alhassid's reverse mortgage.  SAC ¶ 40.  Under the terms of her reverse mortgage agreement, Alhassid was responsible for paying property taxes and flood and hazard insurance for the property.  SAC ¶ 18.  However, the agreement excused Alhassid from the personal obligation to pay for property insurance so long as her condominium association maintained a satisfactory blanket insurance policy.  SAC ¶ 19.  The agreement further provided that, if Alhassid failed to fulfil her tax and insurance obligations, the lender could request that Alhassid furnish receipts of payment, and "may do whatever is

necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items [previously] mentioned."  SAC ¶¶ 20, 24.

During the relevant period, Alhassid never missed a tax payment, and satisfied her property insurance coverage obligations through timely condominium fee payments to her condominium association, which maintained the requisite property insurance.  SAC ¶¶ 22-23. Nevertheless, in 2009, Bank of America notified Alhassid by letter that she had missed "one or more of these tax or insurance payments" and unilaterally sought and purchased force-placed flood insurance for Alhassid's property.  SAC ¶¶ 25-26.  Bank of America placed the reverse mortgage loan in default, and charged Alhassid with $6,467.31 "for the full amount of the tax and/or insurance payment."  SAC ¶ 27.  Nationstar acquired the underlying note and became servicer of Alhassid's reverse mortgage sometime in 2012 or 2013.  SAC ¶ 41.  Plaintiffs allege that, without performing any separate diligence on the loan's status, Nationstar began systematically and consistently adding various unnecessary and unauthorized charges to Alhassid's loan balance, including for services never performed.  SAC ¶¶ 42, 44.  Alhassid, personally and through her condominium association, contacted Bank of America and Nationstar numerous times between 2009 and 2013 to "clear up any misunderstanding."  SAC ¶ 46. Defendants never responded to Alhassid's proof of property insurance, and never articulated the basis for her mortgage's default and the subsequent fees and charges.  SAC ¶¶ 46-48.  In December, 2013, a third party prematurely paid Alhassid's property taxes; Nationstar then charged Alhassid for "delinquent taxes."  SAC ¶¶ 49-50.  Alhassid alleges that Bank of America and Nationstar used the unnecessary force-placed insurance as a catalyst to place the loan in default, to then assess unauthorized and exorbitant fees, and finally to accelerate the loan and

foreclose on the property.  SAC ¶¶ 30, 34.  On January 15, 2014, Nationstar served Alhassid with a foreclosure lawsuit.  SAC ¶ 51.

Drennan maintained a traditional mortgage loan on her residential property.  SAC ¶ 54.  Her loan and servicing rights were sold by Bank of America to Nationstar in June, 2013.  SAC ¶ 53.  In January, 2014, Drennan undertook to modify her mortgage loan; the modification was completed in April, 2014.  SAC ¶ 54.  After modification, Nationstar notified Drennan that there was a shortage in escrow.  SAC ¶ 55.  Her monthly payments then rose to a level much higher than they been pre-modification.  SAC ¶ 55.  Without formally notifying Drennan that her loan was in default, Nationstar then began to charge Drennan with several hundred dollars per month for various unauthorized and excessive fees.  SAC ¶¶ 56-58.  Plaintiffs allege that Nationstar engaged in this process in order to strip its borrowers of their homes through eventual foreclosure actions.  SAC ¶ 61.

Plaintiffs assert their claims on behalf of a purported nationwide class of Bank of America and Nationstar's traditional and reverse mortgage borrowers who had their loans placed in default for any reason and on that basis, or without having their loans placed in default, were charged for unauthorized and excessive fees of any type.  SAC ¶ 63.  Plaintiffs seek to certify six classes, including subclasses of the foregoing who were parties to foreclosure actions, and borrowers specifically located in Florida and Nevada.  *Id.*

Plaintiffs' SAC asserts nine causes of action:   (I) breach of contract regarding unnecessary and excessive servicing fees and charges; (II) breach of contract regarding unauthorized foreclosure proceedings; (III) breach of contract regarding unauthorized charges of attorneys' fees and costs; (IV) breach of the covenant of good faith and fair dealing regarding Bank of America's assignment or sale to Nationstar and the resulting imposition of unnecessary

and excessive fees and charges; (V) unjust enrichment; (VI) violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* ("FDUTPA"); (VII) violation of Nevada's Deceptive Trade Practices Act, Nev. Rev. Stats. § 598.0903 *et seq.* ("NDTPA"); (VIII) violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"); and (IX) civil conspiracy.

## II. DISCUSSION

In its Motion to Dismiss, Bank of America maintains that Alhassid's claims are subject to, enjoined by and released through a nationwide class settlement resolving lender force-placed property insurance claims.  Bank of America argues further that neither Alhassid nor Drennan allege any actionable conduct by Bank of America other than the placement of flood insurance on Alhassid's property. It further asserts that Plaintiffs allege no facts to support an allegation that Bank of America charged additional improper fees, failing to state a claim against Bank of America, thereby mandating dismissal pursuant to Rule 12(b)(6).   Nationstar argues that Plaintiffs' non-contract claims – counts five through nine – are non-viable, and requests dismissal of what it characterizes as Plaintiffs' attempt to pursue their contract-based allegations of improper fee assessment outside the terms of those contracts.  Nationstar further seeks to sever Drennan and her claims from this suit for misjoinder under Rules 21 and 20(a)(1).

### A.    Standard for Dismissal for Failure to State a Claim

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To satisfy the Rule 8 pleading requirements, a complaint must provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, (2002).  While a complaint "does not need detailed factual allegations," it must provide "more

than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1288-90 (11th Cir. 2010).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true." ); *Iqbal*, 556 U.S. at 678. A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, but may also consider documents referred to in the complaint that are central to the claim and whose authenticity is undisputed. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)). While

the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.  "Dismissal pursuant to Rule 12(b)(6) is not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

> **B.** **Bank of America's Motion to Dismiss**

> **1.** **The Bank of America Force-Placed Flood Insurance Settlement**

Bank of America's lender-placed insurance practices are subject to a class action before the United States District Court for the District of Oregon, *Arnett v. Bank of America, N.A.*, Case No. 11-01372 (D. Or.), which was filed in November, 2011.  Plaintiffs specifically reference the *Arnett* class action in the SAC.  SAC ¶ 31.  On January 17, 2014, one month before Alhassid initiated this lawsuit, Bank of America filed notice that it had reached an agreement in the *Arnett* action to enter into a nationwide settlement of all claims concerning those practices.  *See Arnett* [Dkt. 219].  The detailed terms of that settlement were made public on April 9, 2014.  *See Arnett* [Dkt. 237-1].  The *Arnett* court granted preliminary approval of the settlement on April 17, 2014, and final approval on September 18, 2014.  *See* ECF No. [111-1] ("*Arnett* Settlement Order and Agreement").

> The *Arnett* settlement class members are defined as:

> All persons who were sent a flood insurance cycle letter by [Bank of America], Countrywide Home Loans, Inc., or Countrywide Home Loans Servicing, LP or who were charged for lender-placed flood insurance by [Bank of America], Countrywide Home Loans, Inc., or Countrywide Home Loans Servicing, LP on or after January 1, 2007 and before April 4, 2014 in connection with a residential mortgage loan, home equity line of credit, reverse mortgage loan, or loan secured by shares in a cooperative housing association.

*Arnett* Settlement ¶ 2.hh.  The *Arnett* Settlement Order enjoins all class members from "joining, continuing to prosecute, or initiating any action or cause of action" asserting any claims settled and released through the Agreement.  Similarly, the *Arnett* Settlement permanently enjoins all class members "from bringing, joining, or continuing to prosecute against [Bank of America] any of the settled and released claims.  *Arnett* Settlement ¶ 64.d.  The Settlement further contains the following class release from all settlement members:

> release, resolve, relinquish, and discharge [Bank of America] and its employees, agents, affiliates, predecessors, parents, subsidiaries, and [Bank of America's] [lender-placed flood insurance] vendors including any brokers, agents, insurance providers, and providers of tracking and placement services ("Released Parties") from any and all claims, counterclaims, actions, causes of action, demands, obligations and liabilities, of whatever kind or character, including, without limitation, those known or unknown, that arose during the Class Period, in any way arising from or related to the Released Parties' conduct, policies, or practices as to flood insurance that Releasors have, had, or may have had against the Released Parties.

*Arnett* Settlement ¶ 66.  The release encompasses any claims related to "charges for [Bank of America's] placement of [lender-placed flood insurance];" "[Bank of America's] flood insurance requirements;" "the coverage amount, duration, issue date . . . or alleged excessiveness of any [lender-placed flood insurance] Policies placed or charged by [Bank of America];" and "the payment or receipt of commissions, expense reimbursements, alleged 'kickbacks,' or any other compensation under any [lender-placed flood insurance] Policies placed or charged by [Bank of America]."  *Arnett* Settlement ¶ 67.

### 2.    Alhassid Is Subject To The Force-Placed Insurance Settlement

Bank of America argues that Alhassid is a member of the *Arnett* settlement class, that Alhassid did not opt-out of and is not otherwise excepted from the *Arnett* Settlement, and that Alhassid is therefore subject to the suit-injunction and claim-releases in the *Arnett* force-placed insurance class action settlement.  Plaintiffs insist that the *Arnett* Settlement does not preclude

the instant action.  Bank of America's force-placed insurance practices are, they explain, only a factual predicate to the causes of action asserted here, which are based on Defendants' subsequent practices:  allegedly unauthorized and excessive fees and foreclosure actions. Plaintiffs maintain that their claims here are broader than and not enjoined or released by the claims settled in *Arnett*.  Plaintiffs further argue that the extent to which their claims are released by the *Arnett* Settlement is a factual issue which cannot be resolved on a motion to dismiss

Despite Plaintiffs' protestations, the facts as alleged by Plaintiffs conclusively establish that Alhassid is a member of the *Arnett* class.  Alhassid alleges that Bank of America unilaterally and improperly force-placed flood insurance on her property, that she received a flood insurance letter from Bank of America, and that Bank of America impermissibly charged her for the force-placed flood insurance – and herself provides documentation supporting these allegations.  The viability of Alhassid's claims against Bank of America thus turns on the extent to which the *Arnett* Settlement Agreement governs the claims asserted here.

### 3.    The Settlement Effectively Precludes Counts I-III and V-VIII of the SAC

The *Arnett* Settlement Agreement is properly considered in evaluating, and to the extent it is not ambiguous, can be enforced to resolve, Bank of America's Motion to Dismiss.  *See Steinberg v. Alpha Fifth Grp.*, 2008 WL 906270, at *5 (S.D. Fla. Mar. 31, 2008) (enforcing settlement agreement to dismiss claims at motion to dismiss stage); *Bonita Villas Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, 2010 WL 2541763, at *2-3 (S.D. Fla. June 23, 2010) (same). "[A] settlement agreement is essentially a contract and is subject to the traditional rules of contract interpretation."  *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1290 (11th Cir. 2004) (citing *Monahan v. Comm'r*, 321 F.3d 1063, 1068 (11th Cir.2003) ("Principles governing general contract law apply to interpret settlement agreements."); *see also Brunick v.*

*Clatsop Cnty.*, 204 Or. App. 326, 338, (Or. Ct. App. 2006) ("A written settlement agreement is subject to the ordinary rules of contract interpretation."); *Arnett* Settlement ¶ 82 (governed by Oregon law).  Contract interpretation is typically inappropriate at the motion to dismiss stage. *See Geter v. Galardi S. Enterprises, Inc.*, 2014 WL 4290550, at *5 (S.D. Fla. Aug. 29, 2014) ("[T]he Court may not engage in contract interpretation at the motion to dismiss stage, as these arguments are more appropriate for summary judgment.") (citations omitted); *Larach v. Standard Chartered Bank Int'l (Americas) Ltd.*, 724 F .Supp.2d 1228, 1239 (S.D.Fla.2010) (denying motion to dismiss because plaintiff had "sufficiently alleged the required elements for claims of breach of contract" and the differing interpretations of the contract was not yet ripe for ruling); *Mizner Grand Condo. Ass'n, Inc. v. Travelers Prop. Cas. Co. of Am.*, 2010 WL 2162902, at *3 (S.D. Fla. May 26, 2010) (declining to enforce settlement agreement on motion to dismiss where terms were ambiguous).  However, where the contract or settlement agreement terms are unambiguous, a court may properly consider a motion to dismiss for failure to state a claim for breach.  *See Sarria Holdings, Inc. v. Walgreen Co.*, 2003 WL 1528711, at *2 (S.D. Fla. Jan. 31, 2003) ("[T]his court can look to the contract itself and determine if it speaks to the issues in dispute.  If the contract covers plaintiff's claims in clear and unambiguous language, then plaintiff's ability to state a claim upon which relief may be granted, thus surviving this motion to dismiss, depends on the specific terms of the contract, which the court analyzes as a matter of law."); *By George, LLC v. Hurricane Shooters, LLC*, 2012 WL 50498, at *5 (M.D. Fla. Jan. 9, 2012) (enforcing unambiguous settlement language on motion to dismiss); *Bar Codes Talk, Inc. v. GS1 US, Inc.*, 2010 WL 4510982, at *2 (M.D. Fla. Nov. 2, 2010) (dismissing action where claims were unambiguously subject to settlement agreement and jurisdiction of settling court).

"Whether a contract is or is not ambiguous is a question of law to be determined by the trial court."  *Ocean Reef Club, Inc. v. UOP, Inc.*, 554 F. Supp. 123, 128 (S.D. Fla. 1982).

The *Arnett* Settlement enjoins and releases all claims "in any way arising from or related to the [Bank of America's] conduct, policies, or practices as to flood insurance."  It would therefore bar Alhassid from asserting claims based on Bank of America's alleged purchase of flood insurance on Alhassid's property and the directly associated fees.  *See*, *e.g.*, *N-Tron Corp. v. Rockwell Automation, Inc.*, 2010 WL 653760, at *5 & n. 11 (S.D. Ala. Feb. 18, 2010) (stating that the phrases "arising out of" and "related to" are routinely construed broadly).  For example, any claim for the $6,467.31 first charged to Alhassid by Bank of America would be covered by the *Arnett* Settlement.  However, Plaintiffs have not asserted any claims for Bank of America's unilateral placement of flood insurance on Alhassid's property.  As Plaintiffs state, "this is not a force-placed insurance case."  ECF No. [103] ("Resp. to Bank of America") at 7.  Rather, Plaintiffs claims pertain to the *subsequent* assessment of servicing and other fees and charges and the initiation of foreclosure proceedings.  Those claims are not subject to the force-placed insurance settlement – at least not as this Court can determine from the Settlement terms at this stage.

However, stripped of any basis in Bank of America's force-placed insurance policies and related claims, counts one through three and five through eight of Plaintiffs' SAC fail to state a claim with respect to Bank of America.  First, the only allegedly improper charges the SAC specifically attributes to Bank of America are Alhassid's lender-placed insurance premiums, i.e., the $6,467.31 initial fee.  The SAC alleges that Nationstar, not Bank of America, assessed all subsequent fees and charges against Alhassid, and that Nationstar, not Bank of America, prosecuted Alhassid's foreclosure proceedings.  Second, Plaintiffs do not allege that Bank of

America assessed any fees or took any improper action against Drennan.  Nationstar, not Bank of America, placed Drennan's loan in technical default and assessed subsequent fees and charges. Based on the facts as alleged, the improper practices complained of here took place after Bank of America relinquished ownership and/or servicing rights to Nationstar.  The SAC simply contains no factual allegations giving rise to plausible claims against Bank of America for the allegedly improper fees and foreclosure practices.  With respect to Bank of America, counts one through three and five through eight of the SAC must be dismissed.

### 4.    Plaintiffs' Claim that Bank of America Breached the Implied Covenant of Good Faith and Fair Dealing Is Not Sufficiently Pleaded

Count four of the SAC asserts that Bank of America breached the implied covenant of good faith and fair dealing by transferring its rights to service Plaintiffs' loans to Nationstar. Specifically, Plaintiffs allege that:

> [Bank of America] breached its duty of good faith and fair dealing by selling, or assigning the servicing rights (the precise circumstances are unknown) of Plaintiff and the Class Members' loans to [Nationstar].  [Bank of America] knew that [Nationstar] would not properly abide by its limitations and obligations under the contract, and [Bank of America] failed to perform proper due diligence to ensure that [Nationstar] would properly adopt the role as lender and servicer.  While [Bank of America] was entitled to assign its rights, it breached its duty of good faith and fair dealing by assigning rights to an irresponsible party.

> Were it not for this sale/assignment, Plaintiff and the Class Members would not have been charged for unauthorized and fraudulent servicing fees (the intent and effect of which is to hyper-inflate the balance of the loan), and would not have been served with unauthorized foreclosure proceedings.

> [Bank of America]'s actions did not comport Plaintiff and the Class Members' reasonable contractual expectations because they did not expect [Bank of America]'s interest to be assigned or sold to an irresponsible party that would later impose unauthorized fees and institute illegitimate foreclosure proceedings.

SAC ¶¶ 143-45.

Under Florida law, every contract contains an implied covenant of good faith and fair dealing which protects "the reasonable expectations of the contracting parties in light of their express agreement." *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 548 (Fla. 2012) (quoting *Barnes v. Burger King Corp.*, 932 F.Supp. 1420, 1438 (S.D. Fla. 1996)); *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005). The covenant is implied as a gap-filling default rule where the terms of the contract vest a party with substantial discretion, requiring that party to act in a commercially reasonable manner and limiting its ability to act capriciously to contravene the reasonable expectations of the contract counterparty. *See Karp v. Bank of Am., N.A.*, 2013 WL 1121256, at *3 (M.D. Fla. Mar. 18, 2013); *Martorella v. Deutsche Bank Nat. Trust Co.*, 931 F. Supp. 2d 1218, 1225 (S.D. Fla. 2013). "A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." *Centurion*, 420 F.3d at 1151.  The implied duty of good faith must therefore "relate to the performance of an express term of the contract . . . [and] cannot be used to vary the terms of an express contract." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1316 (11th Cir. 1999) (quoting *Hospital Corp. of America v. Florida Med. Ctr., Inc.*, 710 So. 2d 573, 575 (Fla. 4th DCA 1998) and *City of Riviera Beach v. John's Towing*, 691 So. 2d 519, 521 (Fla. 4th DCA 1997)).  Further, the covenant cannot "add an obligation to the contract which was not negotiated by the parties and not in the contract." *Hosp. Corp. of Am. v. Florida Med. Ctr., Inc.*, 710 So. 2d 573, 575 (Fla. 4th DCA 1998).  As such, "there are two limitations on such claims: (1) where application of the covenant would contravene the express terms of the agreement; and (2) where there is no accompanying action for breach of an express term of the agreement." *QBE*, 94 So. 3d at 548 (citing *Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.*, 785 So.2d 1232, 1234 (Fla. 4th DCA 2001)).

13

The Court's dismissal of Plaintiffs' breach of contract claims against Bank of America undermines Plaintiffs' ability to state a claim for breach of implied good faith. Considering this claim independently, Plaintiffs concede that Bank of America was contractually entitled to transfer its rights in and to their mortgage loans.  They point to no contractual provision restricting that right or requiring any form of pre-sale diligence.  Certainly, the implied covenant of good faith and fair dealing cannot impose a requirement – such as transferee diligence – where none exists.

But, the SAC does allege – without, it is noted, pointing the Court to any specific contractual provision – that Bank of America had broad discretion in its ability to sell or assign its mortgage ownership and/or servicing rights.  That discretionary space is subject to the implied covenant, which would restrict Bank of America's exercise of that discretion if commercially unreasonable and in contravention of Plaintiffs' reasonable expectations.  Interpreting the covenant here to bar Bank of America from assigning its servicing rights to "an irresponsible party that would later impose unauthorized fees and institute illegitimate foreclosure proceedings," as Plaintiffs maintain, is plausible, and does not appear to contravene an express provision of Plaintiffs' mortgage contacts.

However, the SAC does not provide a sufficient factual basis for its assertion that Bank of America had any reason to expect that Nationstar would be so "irresponsible" as to render Bank of America's sale to Nationstar commercially unreasonable or defeat Plaintiffs' reasonable contractual expectations.  Nationstar's alleged "irresponsibility" consists of "unauthorized and fraudulent servicing fees (the intent and effect of which is to hyper-inflate the balance of the loan), and . . . unauthorized foreclosure proceedings."  The SAC only alleges that Bank of America improperly force-placed insurance on Alhassid's property and that it placed Alhassid's

loan in default on the basis of her non-payment of an improper insurance fee; it does not allege that Bank of America itself assessed improper subsequent fees.  The connection between Bank of America's force-placed insurance impropriety and Plaintiffs' implication that Bank of America should have known about Nationstar's alleged fraudulent fee practices is far too attenuated.[1]  Plaintiffs' claim against Bank of America for breach of the implied covenant of good faith and fair dealing falls short of the required pleading standard under Rule 8.[2]

### 5.     Plaintiffs Fail to State a Claim for Civil Conspiracy Against Bank of America

Plaintiffs allege that, through entry into two separate Mortgage Loan Sale and Servicing Agreements ("MLSA"), Bank of America and Nationstar engaged in a conspiracy scheme "of consistently tacking on various unnecessary and unauthorized charges to the loans . . . designed to induce defaults which would either end in the loan being foreclosed and property eventually sold with the unauthorized fraudulent fees included in the (foreclosure) sale price, or the mortgage being refinanced which will again lead the payment of the mortgage in full, plus the fraudulent fees."  SAC ¶¶ 217, 219-220.  Bank of America challenges the sufficiency of their claim.

### a.     Pleading Civil Conspiracy

To plead civil conspiracy, a plaintiff must allege "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy."  *Cordell Consultant, Inc. Money Purchase Plan & Trust v. Abbott*, 561

---

[1] *See also* § 5(d) below regarding Plaintiffs' failure to allege any conspiratorial agreement between Defendants.

[2] To the extent Plaintiffs imply that their breach of good faith claim pertains to Bank of America's force-placement of flood insurance, *see* Resp. to Bank of America at 17-18, the Arnett Settlement would enjoin and release such claim.

Fed. App'x 882, 886 (11th Cir. 2014) (quoting *Raimi v. Furlong,* 702 So. 2d 1273, 1284 (Fla. 3d

DCA 1997)); *see Boorman v. Nevada Mem'l Cremation Soc'y, Inc.*, 772 F. Supp. 2d 1309, 1315

(D. Nev. 2011) ("Under Nevada law, to establish a civil conspiracy claim, a plaintiff must show

(1) the commission of an underlying tort; and (2) an agreement between the defendants to

commit that tort.") (quoting *Jordan v. State ex rel. Dep't of Motor Vehicles & Pub. Safety*, 110

P.3d 30, 51 (Nev. 2005) (per curiam) (stating that "an underlying cause of action for fraud is a

necessary predicate to a cause of action for conspiracy to defraud")).

Neither Florida nor Nevada recognizes an independent cause of action for civil

conspiracy; rather, the plaintiff must allege an underlying illegal act or tort on which conspiracy

is based.  *See Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997) ("an actionable

conspiracy requires an actionable underlying tort or wrong"); *Kee v. Nat'l Reserve Life Ins. Co.*,

918 F.2d 1538, 1541-42 (11th Cir. 1990) ("The basis for the conspiracy must be 'an independent

wrong or tort which would constitute a cause of action if the wrong were done by one person.'")

(quoting *American Diversified Ins. Servs. v. Union Fidelity Life Ins. Co.*, 439 So.2d 904, 906

(Fla. 2d DCA 1983)); *Paul Steelman Ltd. v. HKS, Inc.*, 2007 WL 295610, at *3 (D. Nev. Jan. 26,

2007) ("Civil conspiracy is not an independent cause of action – it must arise from some

underlying wrong."); *Jordan v. State ex rel. Dep't of Motor Vehicles & Pub. Safety*, 110 P.3d 30,

51 (Nev. 2005) *abrogated on other grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 181 P.3d

670 (Nev. 2008) ("[A]n underlying cause of action for fraud is a necessary predicate to a cause

of action for conspiracy to defraud.").  Both Florida and Nevada law (which the parties apply to

Alhassid and Drennan, respectively) require an overt act in furtherance of the conspiracy.  *See*

*Armbrister v. Roland Int'l Corp.*, 667 F. Supp. 802, 809 (M.D. Fla. 1987) (requiring "one or

more overt acts" pursuant to the conspiratorial agreement); *Caldwell v. Compass Entm't Grp.*,

16

*LLC*, 2014 WL 202039, at *4 (D. Nev. Jan. 14, 2014) (requiring "an overt act [] in furtherance of the conspiracy").

### b.        Rule 9(b) Heightened Pleading Standard

In addition to the Rule 8(a) plausibility pleading requirement, Rule 9(b) imposes a heightened pleading standard for claims sounding in fraud:  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Rule 9(b) thus forces a plaintiff to "offer more than mere conjecture," *U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002), and "requires that a complaint plead facts giving rise to an inference of fraud."  *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 Fed. App'x 81, 86 (11th Cir. 2008).  "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."  *Clausen*, 290 F.3d at 1310 (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)); *see also Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (Rule 9(b) requires that the complaint state the "who, what, when where, and how" of the alleged misconduct).

The purpose of the Rule 9(b) particularity requirement is to "alert[] defendants to the precise misconduct with which they are charged and protect[] defendants against spurious charges of immoral and fraudulent behavior."  *Zeimba*, 256 F.3d at 1202 (internal quotations omitted).  "Essentially, the requirements of Rule 9(b) are satisfied if the complaint provides a reasonable delineation of the underlying acts and transactions allegedly constituting the fraud

such that the defendants have fair notice of the nature of plaintiff's claim and the grounds upon which it is based."  *U.S. ex rel. Heater v. Holy Cross Hosp., Inc.*, 510 F. Supp. 2d 1027, 1033 (S.D. Fla. 2007) (quotations omitted); *see also Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006) ("The rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of . . . .") (quotations omitted).

### c.      Plaintiffs Fail to Allege an Underlying Illegal Act or Tort

Here, Plaintiffs have failed to allege the existence of any underlying wrong which could form the basis of their civil conspiracy claim against Bank of America.  First, as Plaintiffs acknowledge, they have not alleged any tortious action by either Defendant which could support their conspiracy claim.  Second, because Plaintiffs' breach of contract and statutory violation claims, etc., against Bank of America do not survive this Motion to Dismiss, they cannot substantiate Plaintiffs' civil conspiracy claim.  *See Rebman v. Follett Higher Educ. Grp., Inc.*, 575 F. Supp. 2d 1272, 1280 (M.D. Fla. 2008) (dismissing civil conspiracy claim where underlying FDUTPA claim was defeated); *Heath v. Estate of Heath*, 2014 WL 4792283, at *3 (N.D. Ala. Sept. 24, 2014) ("[B]ecause the underlying claim of breach of contract fails . . . the claim for civil conspiracy must also necessarily fail.").

Arguably, Plaintiffs' contract claims against Nationstar could support their claim for civil conspiracy.  Nationstar has not sought dismissal or severance of Alhassid's contract claims against it.  At least one court has held that a breach of contract claim can support a claim for civil conspiracy.  *See Original Appalachian Artworks, Inc. v. Schlaifer Nance & Co.*, 679 F. Supp. 1564, 1579 (N.D. Ga. 1987) (denying motion to dismiss conspiracy claim where underlying breach of contract claim was viable); *see also Rebman v. Follett Higher Educ. Grp., Inc.*, 575 F.

Supp. 2d 1272, 1280 (M.D. Fla. 2008) (dismissing civil conspiracy claim, but suggesting that had breach of contract claim survived, it could substantiate civil conspiracy claim).  And, "[s]o long as a valid [] claim is alleged to have been committed, and the named Defendants are alleged to have conspired with the primary tortfeasor, the civil conspiracy claim may proceed."  *Liva v. Mendolia*, 2014 WL 2118814, at *4 (S.D. Fla. May 21, 2014).

However, courts across the country interpreting civil conspiracy actions identical or nearly identical to those in Florida and Nevada have held that a breach of contract may not serve as basis for a civil conspiracy claim.  *See NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 35 (Del. Ch. 2009) ("A breach of contract is not an underlying wrong that can give rise to a civil conspiracy claim."); *Station #2, LLC v. Lynch*, 695 S.E.2d 537, 541 (Va. 2010) (same) *Hooper v. Columbus Reg'l Healthcare Sys., Inc.*, 956 So. 2d 1135, 1141 (Ala. 2006) (same); *Law Corp. of Brian Finander, P.C. v. Alexander*, 2009 WL 449233, at *4 (Ariz. Ct. App. Feb. 24, 2009); *Rock v. Rangos*, 61 A.3d 239, 249 (Pa. Sup. 2013) (same); *see also Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 611 (S.D.N.Y. 2011) (requiting underlying tort under New York law).  As one court explained, to construe a mere breach of contract claim as a "wrong" or "unlawful act" in substantiating a civil conspiracy claim would be inconsistent with the fundamental division between contract and tort actions.  *Lynch*, 695 S.E.2d at 541.

Even if contract claims could help establish civil conspiracy, Plaintiffs' claim for civil conspiracy cannot be stated alongside their contract claims against Nationstar as alleged here. Florida's economic loss doctrine no longer extends beyond the products liability context and thus no longer bars civil conspiracy claims *per se*.  *See Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399, 407 & 410 n.10 (Fla. 2013) (identifying civil

conspiracy as a claim made available by the court's restatement of the economic loss rule).[3] However, *Tiara* did not upset "fundamental contractual principles" which continue to delineate the general boundary between contract law and tort law regardless of the breadth of the economic loss doctrine.  *Id.* at 408 (Pariente, J., concurring).  That is, "[f]undamental contractual principles continue to bar a tort claim where the offending party has committed no breach of duty independent of a breach of its contractual obligations."  *Freeman v. Sharpe Res. Corp.*, 2013 WL 2151723, at *8 (M.D. Fla. May 16, 2013) (citing *Tiara*, 110 So. 3d at 407-09).

The minimal facts alleged by Plaintiffs to substantiate their claim for civil conspiracy are identical to their remaining breach of contract allegations:  Nationstar's improper defaulting, fee charging and foreclosure procedures.  Because – given the failure of Plaintiffs other claims against Bank of America – Plaintiffs have not pleaded any breach or injury separate and apart from their breach of contract claims against Nationstar, their claim for civil conspiracy cannot survive.  *See Freeman*, 2013 WL 2151723, at *8 (dismissing claim for fraud in the inducement where alleged fraud had no distinction or independence from non-performance under the contract).

Finally, Plaintiffs' attempt to apply the narrow "force of members" exception to the requirement that a claim for civil conspiracy allege an underlying illegal act or tort is unavailing.

---

[3] Under the older statement of Florida's economic loss rule, "a party to a contract [could] not pursue a claim in tort for solely economic losses unless the party breaching the contract has committed a tort which is distinguishable from or independent of the breach of contract."  *Medalie v. FSC Securities Corp.*, 87 F. Supp. 2d 1295, 1299-1300 (S.D. Fla. 2000) (citing *Strickland-Collins Constr. v. Barnett Bank of Naples*, 545 So. 2d 476 (Fla. 2d DCA 1989); and *Keys Jeep Eagle, Inc. v. Chrysler Corp.*, 897 F. Supp. 1437, 1443 (S.D. Fla. 1995)).  The rule categorically "bar[ed] tort claims . . . based on actions inextricably intertwined with the acts constituting the breach of contract."  *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 208 F. Supp. 2d 1310, 1318 (S.D. Fla. 2002); *Bassler v. George Weston Bakeries Distribution, Inc.*, 2008 WL 4724434, at *2 (M.D. Fla. Oct. 24, 2008) (holding that despite certain exceptions, economic loss rule applies where tort claims is "inextricably intertwined and dependent upon the breach of contract claim").  That included claims for civil conspiracy.  *See, e.g., Behrman v. Allstate Ins. Co.*, 388 F. Supp. 2d 1346, 1350 (S.D. Fla. 2005) (dismissing civil conspiracy claim "inextricably intertwined" with breach of contract claims); *Lehman Bros. Holdings v. Hirota*, 2007 WL 1471690, at *5 (M.D. Fla. May 21, 2007) (same).

Under this exception, a conspiracy may exist without an underlying tort or wrong if the plaintiff "can show some 'peculiar power of coercion' possessed by the conspirators by virtue of their combination, which an individual acting alone does not possess." *Liva*, 2014 WL 2118814, at *4 (quoting *Walters v. Blankenship*, 931 So. 2d 137, 139 (Fla. 5th DCA 2006)).  However, "a showing of mere malice is not enough," *Watershed Treatment Programs, Inc. v. United Healthcare Ins. Co.*, 2007 WL 1099124, at *5 (S.D. Fla. Apr. 10, 2007), and the exception applies only where "the result of the defendants' concerted action [is] different from anything that could have been accomplished separately."  *Kee*, 918 F.2d at 1542 (citations omitted). Plaintiffs have nowhere maintained that the purported conspiracy between Bank of America and Nationstar was necessary to accomplish the alleged fee charging and foreclosure program.  They have not met the "rigorous requirement that the combination must result in a peculiar power of coercion which any individual standing in a like relation to the plaintiff would not have had." *Id.* (citations omitted).

### d.      Plaintiffs Fail to Allege a Conspiratorial Agreement

Even had Plaintiffs' alleged an actionable underlying wrongdoing, they have failed to sufficiently allege the existence of a conspiratorial agreement between Bank of America and Nationstar.  Plaintiffs allege that Defendants entered into the two MLSA agreements (ostensibly by which Nationstar acquired the rights to Plaintiffs' mortgages from Bank of America), and that they "believe that despite obtaining the right to service the various loans from [Bank of America], both [Nationstar] and [Bank of America] engaged in the scheme of" charging unauthorized fees.  SAC ¶ 217, 219.  They aver that "Bank of America's relationship to and involvement with, while Nationstar was charging the excessive fees at issue and foreclosing on borrowers, is a factual, evidentiary issue."  Resp. to Bank of America at 4 n.1.

Plaintiffs do not actually allege that Bank of America and Nationstar acted together, but merely that they engaged in the same "scheme."   "[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice.   Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."  *Twombly*, 550 U.S. at 556-57; *see also Collins v. Marsh*, 2012 WL 1058998, at *2 (M.D. Ala. Mar. 6, 2012) (dismissing civil conspiracy claim where plaintiff failed to allege facts suggesting a conspiracy agreement other than contending that defendants had a common goal, scheme, or purpose).

The fact that Defendants entered into the MLSAs, absent any allegations of any agreement to conspire, cannot alone support Plaintiffs' conclusory assertion that Defendants "engaged in a conspiracy."  SAC ¶ 220.  *See Russo v. Fink*, 87 So. 3d 815, 819 (Fla. 4th DCA 2012) ("Because [plaintiff] never alleged that there was an agreement, it has failed to allege sufficient facts with respect to the conspiracy count,"); *Tucci v. Smoothie King Franchises, Inc.*, 215 F. Supp. 2d 1295, 1300 (M.D. Fla. 2002) (dismissing claim for civil conspiracy where plaintiff did not allege or provide the court will sufficient facts to infer an agreement between defendants); *Carlson v. Armstrong World Indus., Inc.*, 693 F. Supp. 1073, 1078 (S.D. Fla. 1987) (dismissing where "[n]owhere in the complaint [wa]s there mention of any particular act in furtherance of a conspiracy [but where t]he conspiracy claims [were] vague, general, and conclusory."); *Bolinger v. First Multiple Listing Serv., Inc.*, 838 F. Supp. 2d 1340, 1368 (N.D. Ga. 2012) (dismissing claim for civil conspiracy where plaintiffs failed to allege sufficient facts to show a plausible agreement between defendants); *Ross v. State of Ala.*, 15 F. Supp. 2d 1173, 1195 (M.D. Ala. 1998) (dismissing claim for civil conspiracy where plaintiffs "fail[ed] to allege anything whatsoever concerning the 'nature' of the conspiracy in which defendants allegedly

engaged" or to provide specific facts to support an inference that defendants acted in concert).

As the Eleventh Circuit explained,

> In civil rights and conspiracy actions, courts have recognized that more than mere conclusory notice pleading is required.  . . . In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged.  It is not enough to simply aver in the complaint that a conspiracy existed.  A complaint may justifiably be dismissed because of the conclusory vague and general nature of the allegations of conspiracy.

*Fullman v. Graddick*, 739 F.2d 553, 556 (11th Cir. 1984) (citations omitted).

The SAC's pleading insufficiency is even more egregious to the extent Plaintiffs intended to support their civil conspiracy claim by a general suggestion of fraud, thereby implicating Rule 9.  Plaintiffs have failed to provide any detail at all as to the alleged conspiracy, let alone the who, what, when, where and how of Defendants' alleged agreement.  Certainly to satisfy the heightened pleading standard for conspiracy claims based in fraud, Plaintiffs must at least "show some evidence of agreement between the defendants."  *Prestige Restaurants & Entm't, Inc. v. Bayside Seafood Rest., Inc.*, 2010 WL 680905, at *4 (S.D. Fla. Feb. 23, 2010) (quoting *Albra v. City of Fort Lauderdale*, 232 Fed. App'x 885, 890-91 (11th Cir. 2007)).  They have not.

### 6.    Disposition of Bank of America's Motion to Dismiss

Bank of America requests that the Court dismiss the SAC with prejudice.  With respect to Plaintiff's claims against Bank of America which implicate the *Arnett* lender-placed insurance class action settlement – counts one through three and five through eight of the SAC – that request is well-taken.  Based on the facts as alleged and as explained above, neither Alhassid nor Drennan can state a claim against Bank of America for breach of contract, unjust enrichment, or violation of FDUTPA, NDTPA and the FDCPA.  However, Plaintiffs may seek leave to amend the SAC to remedy the deficiencies in their claims for breach of the covenant of good faith and fair dealing and for civil conspiracy.

**C.      Nationstar's Motion to Dismiss**

Nationstar seeks dismissal of Plaintiffs' fifth, sixth, seventh, eighth and ninth claims for relief, all for failure to state a claim.  The Court will address each in turn.

**1.      Plaintiffs Fail to State a Claim for Unjust Enrichment**

Nationstar contends that Plaintiffs' claim for unjust enrichment suffers from two independent defects:  Plaintiffs fail to allege that they conferred any benefit on Nationstar, and Plaintiffs cannot sue for unjust enrichment where, as here, their rights are governed by an express contract.

"The elements of an unjust enrichment claim are a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof."  *Florida Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1242 n.4 (Fla. 2004) (quoting *Ruck Bros. Brick, Inc. v. Kellogg & Kimsey, Inc.*, 668 So.2d 205, 207 (Fla. 2d DCA 1995)); *Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997) . No unjust enrichment claim will lie unless the plaintiff conferred a benefit on the defendant.  *See Peoples Nat. Bank of Commerce v. First Union Nat. Bank of Fla., N.A.*, 667 So. 2d 876, 879 (Fla. 3d DCA 1996) (conferral of direct benefit required); *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331 (Fla. 5th DCA 2007) (same); *In re Processed Egg Products Antitrust Litig.*, 851 F. Supp. 2d 867, 928-29 (E.D. Pa. 2012) ("Florida law allows unjust enrichment claims to arise from the conferral of an indirect benefit."); *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 257 (Nev. 2012) (unjust enrichment claim requires showing conferral of benefit on defendant).

     **a.**     **Whether Plaintiffs Conferred a Benefit on Nationstar Cannot Be Determined On The Pleadings**

Nationstar argues that Plaintiffs have not alleged that they actually conferred any benefit on Defendants.  Plaintiffs state that they were charged unauthorized fees, and that Alhassid has been subject to an improper foreclosure action.  But they do not allege that they paid those fees or that Nationstar reaped any benefit from Alhassid's foreclosure.  Plaintiffs, in response, maintain that Nationstar received a "benefit" in the form of the increased loan balances on Plaintiffs' mortgages, even if Plaintiffs have yet to remit any of the improperly assessed fees. They further argue that Plaintiffs conferred that benefit on Nationstar in the form of depleted equity in their mortgaged properties.  The facts as alleged here therefore present a two-fold question:  whether increased loan balances, where the assessed fees have not been paid, constitutes a "benefit" for unjust enrichment purposes; and whether that benefit was "conferred" by Plaintiffs on Nationstar.

There is some authority to suggest that outstanding bills represent unrealized and conjectural benefits insufficient to establish a claim for unjust enrichment.  *See*, *e.g.*, *Iglesia Cristiana El Buen Samaritano Inc. v. Guardian Servs. LLC*, 2011 WL 5854640, at *4 (S.D. Fla. Nov. 21, 2011) (dismissing claim for unjust enrichment for lack of standing where the claim was based on speculative outcome of mortgage proceedings, because "defendants have not alleged that they have suffered any injury at the present time or that an injury is imminent, justifying an unjust enrichment claim"); *Sandlin v. Shapiro & Fishman*, 168 F.R.D. 662, 667-68 (M.D. Fla. 1996) (plaintiffs who did not pay alleged unauthorized fee added to mortgage loan had suffered no actual personal injury and lacked standing to act as class representatives).  And, courts have required that the plaintiff specifically confer a benefit on the defendant in order to state a claim for unjust enrichment.  *See*, *e.g.*, *Tiller v. State Farm Mut. Auto. Ins. Co.*, 549 Fed. App'x 849,

856-57 (11th Cir. 2013) (interpreting Georgia law, rejected unjust enrichment claim where "plaintiffs had not conferred a benefit on the defendants in the traditional sense of that word – they did not actually give anything to [defendants]"); *Certified Fire*, 283 P.3d at 257 ("benefit" is "not confined to retention of money or property" but must be actually conferred by plaintiff to defendant).

However, "[w]hether [Defendants] did or did not receive a direct benefit from Plaintiff is a question of fact that cannot be resolved at the motion to dismiss stage in this case." *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1229 (S.D. Fla. 2009). Judge King's decision in *Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273 (S.D. Fla. 2009), is directly on point. There, the defendant bank contended that it received no benefit from the plaintiffs because, although it demanded reimbursement of a force-placed insurance payment, plaintiffs had refused to pay. Plaintiffs argued that because the unpaid insurance premiums were added to the outstanding balance of their mortgages, defendant accrued a benefit for unjust enrichment purposes. The court denied defendant's motion to dismiss, holding that "[a]lthough the term 'benefit' has not been specifically defined by Florida courts, if Plaintiffs have alleged that they conferred a benefit, whether a benefit was actually conferred is a factual question that cannot be resolved on a motion to dismiss." *Id.* at 1279.

As in *Abels*, Plaintiffs here allege that their increased loan balances and decreased equity constitute a benefit conferred by them on Nationstar. The allegation is reasonable: receivable balances are typically treated as assets by financial institutions. Ultimately, whether Nationstar received a benefit here is a factual matter which is improper for the Court to consider at this juncture.

      **b.**      **Unjust Enrichment Cannot Be Asserted Where An Express Contract Governs The Dispute**

Regardless of whether a benefit was conferred, Nationstar argues that Plaintiffs cannot sue for unjust enrichment because the subject matter of that claim is governed by an express contract.  "It is well settled that the law will not imply a contract where an express contract exists concerning the same subject matter."  *Kovtan v. Frederiksen*, 449 So. 2d 1, 1 (Fla. 2d DCA 1984).  Therefore, an "unjust enrichment claim [is] precluded by the existence of an express contract between the parties concerning the same subject matter.  *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008); *Leasepartners*, 942 P.2d at 187 ("An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement.").

Plaintiffs cannot maintain their unjust enrichment claims under the facts as alleged here because express contracts, the authenticity of which Plaintiffs cannot contest, do in fact govern the subject of Plaintiffs' dispute.  *See State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc.*, 2011 WL 6450769, at *5 (M.D. Fla. Dec. 21, 2011) ("[U]pon a showing that an express contract exists between the parties the unjust enrichment . . . count fails.")  (quoting *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 Fed. App'x 714, 722 (11th Cir. 2011)).  Plaintiffs base their contract claims on Alhassid's reverse mortgage and Drennan's deed of trust.  *See* ECF Nos. [73-1] and [87-1].  While Plaintiffs are entitled to plead in the alternative, they cannot dispute the authenticity of documents they submit to the Court for consideration and which are fundamental to their claims.  *See Degutis v. Fin. Freedom, LLC*, 978 F. Supp. 2d 1243, 1266 (M.D. Fla. 2013) ("In this case, it is undisputed by Plaintiff that an express mortgage contracts exists between Plaintiff and the Defendants.  Even though Plaintiff argues that it is alleging the unjust enrichment claim in the alternative, . . .

Plaintiff is not alleging that the contract is invalid. [Because] Plaintiff does not contest that there was a valid mortgage contract between the Parties[,] Plaintiffs claim for unjust enrichment fails."); *Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto. Ins. Co.*, 789 F. Supp. 2d 1311, 1317 (S.D. Fla. 2011) ("As there is a valid express contract that no party challenges, Plaintiff may not recover under unjust enrichment, and may not assert it as an alternative claim under Federal Rule 18."); *Ramos v. Liberty Mut. Ins. Co.*, 2014 WL 4354138, at *5 (D. Nev. Sept. 3, 2014) (dismissing unjust enrichment claim where an express contract undisputedly covered plaintiff's claim; "unjust enrichment is a permissible alternative basis for relief . . . *only* where there is no valid, express contract").  Plaintiffs' claim for unjust enrichment therefore fails.

### 2.     Plaintiffs Properly Allege a Violation of FDUTPA

Nationstar maintains that FDUTPA does not apply to the misconduct alleged in the SAC. A claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice in the course of trade or commerce; (2) causation; and (3) actual damages.  *See Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006); *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1073 (Fla. 5th DCA 2008).  FDUTPA defines "trade or commerce" as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated."  Fla. Stat. § 501.203(8).

Nationstar argues that neither loan servicing or debt collection qualify as "trade or commerce" under FDUTPA.  *See Benjamin v. CitiMortgage, Inc.*, 2013 WL 1891284, at *5 (S.D. Fla. May 6, 2013) (loan servicing does not constitute "trade or commerce" for FDUTPA purposes); *Acosta v. James A. Gustino, P.A.*, 2012 WL 4052245, at *1 (M.D. Fla. Sept. 13, 2012)

(defendants "were not engaged in 'trade or commerce' when they sent demand letters and otherwise engaged in their debt collection efforts" because "[a]n attempt to collect a debt by exercising one's legal remedies does not constitute 'advertising, soliciting, providing, offering, or distributing' as those terms are used in Fla. Stat. § 501.203(8)"); *Williams v. Nationwide Credit, Inc.*, 890 F. Supp. 2d 1319, 1322 (S.D. Fla. 2012) ("Nationwide's debt collection activities do not give rise to a FDUTPA claim); *Baker v. Baptist Hosp., Inc.*, 115 So. 3d 1123, 1125 (Fla. 1st DCA 2013) (pursuit of legal remedies, e.g., assertion of liens and demand letters, does not fall within the definition of "trade or commerce"). Plaintiffs direct the Court to *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002) and its progeny, which hold that debt collection by the party that extends credit may be subject to FDUTPA. *See Martorella v. Deutsche Bank Nat. Trust Co.*, 931 F. Supp. 2d 1218, 1224 (S.D. Fla. 2013) (following *Schauer*, held that lenders' force-placement of insurance, charging of excessive premiums, and receipt of kickbacks, "falls squarely within "the statute's broad definition of 'trade or commerce'").

The particularities of Plaintiffs' allegations do not require the Court to address this possible split in authority. Generally, Nationstar stood in relation to Plaintiffs as a loan servicer in pursuit of its legal debt collection remedies. If all the SAC alleged were loan collection activities, even if those activities were improper, FDUTPA would not apply. *See State, Office of Att'y Gen. v. Shapiro & Fishman, LLP*, 59 So. 3d 353 (Fla. 4th DCA 2011) (holding that allegations of fabricating false documents or presenting false or misleading documents for use in foreclosures cases were not "trade or commerce" in the FDUPTA context). However, Plaintiffs specifically allege, first, that Nationstar assessed and sought to collect fees outside the scope of its legal entitlement, and more importantly, billed Plaintiffs for *specific services* which were

unauthorized and which Nationstar never performed.  For example, Plaintiffs claim that Nationstar charged Alhassid for "property preservation," "property inspections," and "property appraisals," and charged Drennan for "property inspection."  SAC ¶¶ 44, 56.  While appurtenant to the pursuit of Nationstar's mortgage servicing rights, those activities can be construed as the separate offer or provision of services within the meaning of FDUTPA.  Like the force-placed insurance policy and premium assessed by the defendant in *Martorella*, certain of the unauthorized activities complained of by Plaintiffs here come within the scope of FDUTPA.  Plaintiffs' FDUTPA claim therefore survives Nationstar's Motion to Dismiss.

### 3. Plaintiffs Do Not Allege a Violation of NDTPA

By contrast, Nevada's Deceptive Trade Practices Act does not apply to the conduct challenged in the SAC.

NDTPA regulates certain conduct in the sale or lease of "goods and services."  *See* Nev. Rev. Stat. §§ 598.0915 (prohibiting certain conduct in the sale or lease of goods or services); 598.0917 (prohibiting "bait and switch" advertising in the course of the sale or lease of goods or services); 598.092 (prohibiting certain representations or omissions); 598.0923 (prohibiting conduct that "violates a state or federal statute or regulation relating to the sale or lease of goods or services").  Courts applying Nevada law have "consistently recognized that Nevada's Deceptive Trade Practices Act does not apply to real property transactions, but to the sale of goods and services."  *Arrastia v. W. Progressive, LLC*, 2012 WL 3598271, at *3 (D. Nev. Aug. 17, 2012); *see also Reyna v. Wells Fargo Bank, N.A.*, 2011 WL 2690087, at *9 (D. Nev. July 11, 2011) ("N.R.S. § 598 . . . applies only to goods and services and not to real estate loan transactions."); *Alexander v. Aurora Loan Services*, 2010 WL 2773796, at *2 (D. Nev. July 8, 2010) ("Plaintiff's claim deals with the sale or lease of real property, not goods or services;

therefore [N.R.S. § 598] does not provide an avenue of relief to [p]laintiff.").  The Nevada Supreme Court recently applied the NDTPA to a real estate transaction – but only to "the deceptive sale of real property."  *See Betsinger v. D.R. Horton, Inc.*, 232 P. 3d 433, 436 (Nev. 2010).  Notwithstanding, the statute has no application to loan servicing or debt collection.  *See Medina v. Quality Loan Serv. Corp.*, 2012 WL 5334651, at *2 (D. Nev. Oct. 25, 2012) (distinguishing *Betsinger*); *Calavera v. Bank of Am., N.A.*, 2012 WL 1681813, at *6 (D. Nev. May 14, 2012) (rejecting application of NDTPA to loan servicer, held that "NRS § 598 [] only applies to goods and services and not to real estate transactions"); *Bernstein v. Noteworld, LLC*, 2010 WL 3154518, at *5 (D. Nev. Aug. 9, 2010) (NDTPA "does not regulate debt collection").

Because NDTPA generally does not apply in the real estate context, and does not extend to loan servicing or debt collection, it is inapplicable to the instant action.  Plaintiffs' NDTPA claim fails.

### 4. Plaintiffs Properly Allege a Violation of the FDCPA Only As To Alhassid

Nationstar maintains that Plaintiff's claim for violation of the FDCPA should be dismissed because Nationstar is not a "debt collector" regulated by the statute.

To establish a claim under the FDCPA, a plaintiff must allege that "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA."  *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1360-61 (S.D. Fla. 2000).  "The FDCPA applies only to debt collectors."  *Locke v. Wells Fargo Home Mortgage*, 2010 WL 4941456, at *2 (S.D. Fla. Nov. 30, 2010).  For FDCPA purposes, a "debt collector" is defined to mean a person who regularly collects debts owed to another person.  15 U.S.C. § 1692a(6).  But, a "debt collector" does not include "any person collecting or attempting to

collect any debt due or asserted to be owed or due another to the extent such activity . . . concerns a debt which not in default at the time it was obtained by such person."  15 U.S.C. § 1692a(6)(F)(iii).  The FDCPA thus provides an exception for loan services that acquire loans that are not in default at the time of acquisition.  *See Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (FDCPA excepts loan servicers from its definition of "debt collector" "as long as the debt was not in default at the time it was assigned"); *Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1307 (S.D. Fla. 2009) ("Under the FDCPA . . . an assignee of a debt [is] not considered [a] 'debt collector,' as long as the debt was not in default at the time it was assigned."); *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1371 (S.D. Fla. 2011) (same).

The SAC explicitly alleges that Drennan's mortgage was acquired by Nationstar from Bank of America, and then later put into technical default by Nationstar.  With respect to Drennan, therefore, Nationstar is not a "debt collector" within the protections of the FDCPA. Drennan's FDCPA claim must fail.

However, Alhassid alleges that her reverse mortgage was placed in default by Bank of America before it was transferred to Nationstar.  Nationstar insists, somewhat cynically, that because Alhassid alleges that the placement of her loan in default was improper, she cannot maintain that Nationstar acquired her loan already in default.  Nationstar misses the point. Plaintiffs allege that Alhassid's loan should not have been placed in default, but that it was, and was treated as such by Bank of America and then by Nationstar.  From Nationstar's perspective under the facts as alleged, it acquired Alhassid's loan already in default.  The FDCPA exception is therefore inapplicable, and Nationstar's Motion to Dismiss Alhassid's FDCPA claim is denied.

> **5.** **Plaintiffs Fail to State a Claim for Civil Conspiracy Against Nationstar**

Plaintiffs' civil conspiracy claim against Nationstar fails for the same reasons explained above:  Plaintiffs do not allege an underlying wrong or tort not precluded by the economic loss rule, and have failed to plausibly allege a conspiratorial agreement between the Defendants.

> **6.** **Disposition of Nationstar's Motion to Dismiss**

Plaintiffs' FDUTPA claim and Alhassid's FDCPA claim both survive Nationstar's Motion to Dismiss.  Drennan's NDTPA and FDCPA claims do not, and are dismissed with prejudice.  Plaintiffs may seek leave to amend the SAC to remedy the deficiencies in their claims for unjust enrichment and civil conspiracy (although, the Court wonders how Plaintiffs could cure their unjust enrichment claim without upending their contract claims against Nationstar).

> **D.** **Nationstar's Motion to Sever**

In addition to its Motion to Dismiss, Nationstar seeks to sever Drennan and her claims from this case.  Given the Court's ruling on Defendants' Motions to Dismiss and the present factual context and procedural posture, the Court denies the motion without prejudice to Nationstar to re-file after Plaintiffs amend the SAC.

Rule 21 of the Federal Rules of Civil Procedure vests district courts with the authority to "on just terms, add or drop a party" and "sever any claim against a party."  FED. R. CIV. P. 21. Thus, under Rule 21, district courts may sever any claim against any party and proceed with it separately, or drop a party from the action with leave to re-file separately in a manner which avoids substantial prejudice (e.g., *nunc pro tunc* to the original filing date).  *See United States v. O'Neil*, 709 F.2d 361, 367 (5th Cir. 1983); *Hartley v. Clark*, 2010 WL 1187880, at *4 (N.D. Fla. Feb. 12, 2010)) (Rule 21 permits dismissals of parties only if dismissal does not cause substantial prejudice); *Graziose v. Am. Home Products Corp.*, 202 F.R.D. 638, 641 (D. Nev. 2001) (severing

and permitting plaintiffs to re-file their complaints *nunc pro tunc* to avoid state of limitations issues).   Severance of claims and parties often go hand in hand, as severing a party will necessarily entail severance of that party's claim.

In the Rule 21 context, the court has broad discretion to sever parties based on misjoinder. *See Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1323 (11th Cir. 2000), *O'Neil*, 709 F.2d at 367; *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 522 (5th Cir. 2010).  "Some courts characterize this discretion as 'virtually unfettered.'"  *Hartley*, 2010 WL 1187880 at *4.

Severance may be appropriate as long as the claims are "discrete and separate." *Hofmann v. EMI Resorts, Inc.*, 2010 WL 9034908, at *1 (S.D. Fla. July 21, 2010) (citing *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000)).  Because Rule 21 does not provide a standard for misjoinder, courts look to Rule 20, which governs joinder, for guidance on severance.  *See Travelers Indem. Co. of Connecticut v. Attorneys Title Ins. Fund, Inc.*, 2013 WL 6768216, at *1 (M.D. Fla. Dec. 19, 2013) ("Misjoinder occurs when parties fail to satisfy Federal Rule of Civil Procedure 20(a)."); *Nelson v. Blue Eyed Holdings, Inc.*, 2013 WL 6238056, at *4 (S.D. Fla. Dec. 3, 2013); *Hofmann*, 2010 WL 9034908 at *1; *Branham v. YBE Oxford, LLC*, , 2013 WL 120648, at *1 (N.D. Ala. Jan. 4, 2013).  Permissive joinder under Rule 20 requires "1) a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences, and 2) some question of law or fact common to all persons seeking to be joined." *Alexander*, 207 F.3d at 1323 (citing Fed. R. Civ. P. 20(a)).  Among the factors considered in determining whether to effectuate severance are "whether the claims arise from the same transaction or occurrence, whether they present some common question of law or fact, whether severance would facilitate settlement or judicial economy, [] the relative prejudice to each side if

the motion is granted or denied," "'the interest of avoiding prejudice and delay,' . . . 'safeguarding principles of fundamental fairness,' and 'whether different witnesses and documentary proof would be required for plaintiffs' claims.'" *Fisher v. Ciba Specialty Chemicals Corp.*, 245 F.R.D. 539, 541 (S.D. Ala. 2007); *Hoffman*, 2010 WL 9034908, at *1 (quoting *Acevedo*, 600 F.3d at 521-22).

Nationstar argues that Drennan, and by implication the Nevada class, is misjoined because Plaintiff's claims do not arise from the same transactions or occurrences, and do not raise common questions of fact or law.  Nationstar also suggests that Drennan and the Nevada class would be better served by continuing this action in a Nevada forum.

The Court has dismissed but will consider a request to amend with respect to several of Plaintiffs' claims integral to determining the interconnection between Alhassid and Drennan's claims.  Most germane, Plaintiffs will be granted leave to amend their claim for civil conspiracy. To the extent Plaintiffs can properly state a claim for civil conspiracy, they may be able to establish that their claims arise from the same transactions or occurrences – especially in light of the Eleventh Circuit's flexible, logical relationship test.  *Alexander*, 207 F.3d at 1323 (the term "transaction is a word of flexible meaning" that "may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship" (citations omitted)); *Barber v. America's Wholesale Lender*, 289 F.R.D. 364, 367 (M.D. Fla. 2013) ("logical relationship test" for same transaction or occurrence met where "the same operative facts serve as the basis of both claims") (quoting *Republic Health Corp. v. Lifemark Hosps. of Fla.*, 755 F.2d 1453, 1455 (11th Cir. 1985)).  Nationstar will be permitted to resubmit its request to sever if and when Plaintiffs amend their complaint.

The Court's disinclination to rule at this juncture is reinforced by the implication that in this context, the Motion to Sever may act to circumvent proper consideration of a motion for class certification under Rule 23.  The Court notes that class certification and joinder involve different inquiries.  *See Fisher*, 245 F.R.D. at 542 ("the Rule 20 inquiry is distinct from that under Rule 23"); *David v. Signal Int'l, LLC*, 2013 WL 2631427, at *1 (E.D. La. June 11, 2013) (citing *Applewhite v. Reichhold Chemicals, Inc.*, 67 F.3d 571, 574 (5th Cir. 1995)).  Nationstar argues in part that Alhassid's and Drennan's claims cannot arise out of the same transaction or occurrence because each loan made or serviced by a Defendant is itself a separate, individual transaction and involves a separate series of occurrences.  Alhassid's reverse mortgage and Drennan's standard mortgage may prove sufficiently dissimilar to warrant severance, and the Court will consider that argument if and when properly presented.  But broadly stated, Nationstar's argument would undermine any attempt to certify a class in this case.

Finally, Nationstar avers that issues of prejudice and convenience mitigate in favor of severing Drennan and the purported Nevada class.  However, the Court notes that Nationstar's argument challenges venue without providing any argument in favor of transferring Drennan's claims to Nevada.

## V. CONCLUSION

For the forgoing reasons and as detailed above, it is hereby **ORDERED AND ADJUDGED** that

1. Bank of America's Motion to Dismiss, ECF No. [91], is **GRANTED**, as follows:

   a. As to Bank of America, Counts I, II, III, V, VI, VII and VIII of Plaintiffs' Second Amended Complaint, ECF No. [73], are **DISMISSED** with prejudice.

CASE NO.  14-CIV-20484-BLOOM/Valle

     b.  As to Bank of America, Counts IV and IX of Plaintiffs' Second Amended Complaint, ECF No. [73], are **DISMISSED** without prejudice.

2.  Nationstar's Motion to Dismiss, ECF No. [87], is **GRANTED IN PART** and **DENIED IN PART**, as follows:

     a.  As to Nationstar, Count VII of Plaintiffs' Second Amended Complaint, ECF No. [73] is **DISMISSED** with prejudice.

     b.  As to Nationstar, Plaintiff Drennan's FDCPA claim, in Count VIII of Plaintiffs' Second Amended Complaint, ECF No. [73], is **DISMISSED** with prejudice.

     c.  As to Nationstar, Count V and IX of Plaintiffs' Second Amended Complaint, ECF No. [73], are **DISMISSED** without prejudice.

3.  **On or before December 1, 2014**, Plaintiffs may file a Third Amended Complaint with respect to those claims dismissed without prejudice.

4.  Nationstar's Motion to Sever, ECF No. [88] is **DENIED**, without prejudice to Nationstar to re-file such motion if and when Plaintiffs amend their Second Amended Complaint.

    **DONE AND ORDERED** in Chambers in Fort Lauderdale, Florida, this 17th day of November, 2014.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record