## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 14-CIV-20484-BLOOM/Valle

SARAH ALHASSID and SARAH DRENNEN,
on their own behalf and on behalf
of all others similar situated,

   Plaintiff,

vs.

BANK OF AMERICA, N.A., NATIONSTAR
MORTGAGE, LLC (d/b/a CHAMPION
MORTGAGE),

   Defendants.
_____/

### <u>ORDER ON MOTION FOR CLASS CERTIFICATION</u>

  **THIS CAUSE** is before the Court on Plaintiffs Sarah Alhassid and Sarah Drennen's

("Plaintiffs") Motion to Certify Class Action, ECF No. [190] (the "Motion"). The Court has

reviewed the Motion, all supporting and opposing submissions, the record in this case, and is

otherwise fully advised. For the reasons set forth below, the Court denies the Motion.

### I.  BACKGROUND

  This case involves allegations that Defendant Nationstar Mortgage, LLC ("Nationstar")

improperly imposed fees in connection with mortgage loans it owned and/or serviced – including

property inspection fees, property preservation fees, property appraisal fees, property taxes and

attorney's fees – first by placing or maintaining the loans in some form of default status and then,

using the default status as a pretext, assessing the unauthorized fees which resulted in windfall

profits at its borrowers' expense. General familiarity with the factual background and procedural

history of this case is assumed. *See* ECF No. [143] (Order on Second Amended Complaint);

*Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302 (S.D. Fla. 2014); ECF No. [152] (Order on Third Amended Complaint); ECF No. [191] (dismissal as to Defendant Bank of America). Plaintiff Sarah Alhassid commenced the instant action on February 7, 2014.  Plaintiffs, Alhassid and Plaintiff Sarah Drennen, who joined this suit in August 2014, ECF No. [73], filed their Third Amended Complaint, ECF No. [148], the operative pleading in this matter, on December 1, 2014.

Both Alhassid and Drennen obtained mortgages originally owned and serviced by Bank of America, N.A., which were later sold to Nationstar.[1]  The servicing rights to Alhassid's reverse mortgage were transferred from Bank of America to Nationstar in 2012.  Prior to that, Bank of America placed Alhassid's reverse mortgage in default for failure to pay flood insurance on the mortgage property.  Bank of America had obtained a lender-placed insurance policy on her behalf and charged the premium to her loan.  After acquiring Alhassid's mortgage and note in April 2013, Nationstar called Alhassid's loan due and payable.  Nationstar referred the loan to foreclosure in October, 2013, and commenced a judicial foreclosure action in respect of the property in January, 2014.  Nationstar also charged Alhassid property inspection fees, property preservation fees, property appraisal fees, delinquent property taxes and attorney's fees.  In fact, however, Alhassid's condominium homeowners' association maintained flood insurance for Alhassid's property as required under her mortgage; Alhassid satisfied her property insurance coverage obligations through timely condominium fee payments to her condominium association.  Although Alhassid and her homeowners' association contacted Bank of America

---

[1] The facts here are below are drawn from the Third Amended Complaint and the documents attached thereto and incorporated therein, and the parties' submissions in connection with the instant Motion, including ECF No. [201-11] (Riski Decl.); ECF No. [201-4] (Riski Dep. Tr.); ECF No. [201-3] (Drennen Dep. Tr.); [201-12] (Loll Decl.); [201-10] (Loll Dep. Tr.); ECF No. [201-7] (Word Dep. Tr.); ECF No. [201-9] (Donahue Dep. Tr.); ECF No. [190-1] (Alhassid reverse mortgage monthly statement, Jan. 1, 2015); ECF No. [210-4] (Alhassid reverse mortgage monthly statement, Feb. 1, 2015); ECF Nos. [210-6]-[210-8] (Alhassid Dep. Tr. Vol. I); ECF Nos. [210-9]-[210-11] (Alhassid Dep. Tr. Vol. II); ECF No. [210-12] (excerpts from Drennen Der. Tr.).

and later Nationstar to resolve the issue and provided them proof of insurance, neither servicer updated the loan to reflect that insurance coverage had been and was in place.  This was contrary to Nationstar's standard procedures.  Eventually, several months into this action, in June, 2014, Nationstar dismissed the foreclosure action with respect to Alhassid's property, and in January 2015, reversed all fees that had been assessed while the loan was improperly in default.  However, Alhassid's loan account with Nationstar lists an assessment of the same amount of monthly fees for February, 2015.

Bank of America transferred the servicing rights to Drennen's traditional (or "forward") mortgage to Nationstar in June, 2013.  Drennen defaulted on her loan by failing to make the required payments.  Nationstar referred the loan to foreclosure, and charged Drennen attorney's fees for the referral as well as monthly inspection fees.  In January, 2014, Drennen undertook to modify her mortgage loan.  She accepted a permanent loan modification order in February, 2014.  The modification was completed in April, 2014.  After the modification, Nationstar raised Drennen's monthly payment requirements; the escrow portion of Drennen's monthly payments had been increased to cover higher insurance premiums resulting from an increase in the value of Drennen's property.  Drennen defaulted on her loan after her payment requirements increased.  Nationstar again charged attorney and property inspection fees.  Drennen joined this suit in August, 2014, claiming that the increased escrow amount, monthly payment amounts, and subsequent charges were improper.  Between December, 2014 and January, 2015, Drennen sold her home and paid off the outstanding balance due on her loan to Nationstar.  As Drennen understood they would be, the proceeds of the sale were used to satisfy nine property inspection fees that had been previously assessed on her account.  Drennen profited approximately $12,000 from the sale.

Plaintiffs seek, pursuant to Fed. R. Civ. P. 23, to certify nine classes (quoting directly from the Motion):

1. Any and all real property mortgage borrowers (including but not limited to "reverse" mortgage borrowers) whose loans were or are currently serviced by Nationstar and within the applicable statutes of limitations were charged by Nationstar for "property inspection" fees, more times in a one year period, than allowed by HUD Guidelines and/or Nationstar's own internal Policies and Procedures.

2. Any and all real property mortgage borrowers (including but not limited to "reverse" mortgage borrowers) whose loans were or are currently serviced by Nationstar and within the applicable statutes of limitations were charged by Nationstar for "property inspection" fees, in excess of the charge allowed by HUD Guidelines and/or Nationstar's own internal Policies and Procedures.

3. Any and all real property mortgage borrowers (including but not limited to "reverse" mortgage borrowers) whose loans were or are currently serviced by Nationstar and within the applicable statutes of limitations despite an affidavit of occupancy were then charged by Nationstar for a "property preservation" fee in violation of HUD Guidelines and/or Nationstar's own internal Policies and Procedures.

4. Any and all real property mortgage borrowers (including but not limited to "reverse" mortgage borrowers) whose loans were or are currently serviced by Nationstar and within the applicable statutes of limitations despite an affidavit of occupancy were then charged by Nationstar for a "property preservation" fee more times in a one year period that allowed by HUD Guidelines and/or Nationstar's own internal Policies and Procedures.

5. Any and all real property mortgage borrowers (including but not limited to "reverse" mortgage borrowers) whose loans were or are currently serviced by Nationstar and within the applicable statutes of limitations were charged by Nationstar for "property appraisal" fees without proper notification to the borrower in contravention of the HUD Guidelines and/or Nationstar's own internal Policies and Procedures.

6. Any and all real property mortgage borrowers (including but not limited to "reverse" mortgage borrowers) whose loans were or are currently serviced by Nationstar and within the applicable statutes of limitations, were sent a false and misleading Statement by Nationstar falsely alleging that the property taxes were delinquent in violation of HUD Guidelines and/or Nationstar's own internal Policies and Procedures.

7. Any and all real property mortgage borrowers (including but not limited to "reverse" mortgage borrowers) whose loans were or are currently serviced by Nationstar and within the applicable statutes of limitations, were sent a false and misleading Statement by Nationstar falsely alleging that the property taxes were delinquent and where Nationstar, or its agent unnecessarily paid the [false alleged delinquent]

property taxes in violation of HUD Guidelines and/or Nationstar's own internal Policies and Procedures, thereby inflating the balance on the loan to procure more interest paid on the loan.

8. Any and all real property mortgage borrowers (including but not limited to "reverse" mortgage borrowers) whose loans were or are currently serviced by Nationstar and within the applicable statutes of limitations were charged by Nationstar for attorney's fees in violation of HUD Guidelines and/or Nationstar's own internal Policies and Procedures.

9. All individuals belonging to category (1-8) who are or were parties to foreclosure lawsuits instituted by Nationstar (and/or its affiliates, entities or subdivisions).

Reference in the class definitions to HUD Guidelines and Nationstar's internal policies and procedures is new to the Motion. *Compare id*. to 3d Am. Compl. ¶¶ 54-57.

The Third Amended Complaint asserts six causes of actions against Nationstar on behalf of all putative classes:  breach of contract resulting from unnecessary and excessive servicing fees and charges (Count I); breach of contract resulting from unauthorized foreclosure proceedings (Count II); breach of contract resulting from unauthorized charges for attorneys' fees and costs (Count III); breach of the covenant of good faith and fair dealing (Count IV); violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* ("FDUTPA") (Count V); and violation of the Fair Dent Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") (Count VI).

## II.   DISCUSSION

### A.   Standard for Class Certification

In order to certify a class action, the named plaintiffs must have standing, and the putative classes must "satisfy an implicit ascertainability requirement, the four requirements listed in Rule 23(a), and the requirements listed in any of Rule 23(b)(1), (2), or (3)." *Karhu v. Vital Pharm., Inc.*, --- F. App'x ---, 2015 WL 3560722, at *1 (11th Cir. June 9, 2015) (citing *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012)); *see Fitzpatrick v. General*

*Mills, Inc.*, 635 F.3d 1279, 1282 (11th Cir. 2011) ("[T]he putative class must meet each of the four requirements specified in [Rule] 23(a), as well as at least one of the three requirements set forth in [Rule] 23(b)."); *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000) ("A class action may be maintained only when it satisfies all of the requirements of Fed. R. Civ. P. 23(a) and at least one of the alternative requirements of Rule 23(b)."). "Under Rule 23(a), every putative class first must satisfy the prerequisites of numerosity, commonality, typicality, and adequacy of representation." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009) (citing FED. R. CIV. P. 23(a); *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187-88 (11th Cir. 2003)).  Plaintiffs have chosen here to proceed under Rule 23(b)(3), pursuant to which a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" – i.e., where predominance and superiority are satisfied.  FED. R. CIV. P. 23(b)(3); *see also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997).

"The burden of establishing these requirements is on the plaintiff who seeks to certify the suit as a class action." *Heaven v. Trust Co. Bank*, 118 F.3d 735, 737 (11th Cir. 1997); s*ee also Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000).  The moving party "must affirmatively demonstrate his compliance" with the class certification requirements. *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011)).  That is, "a party must not only be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a) [but also] satisfy

*through evidentiary proof* at least one of the provisions of Rule 23(b)."  *Id*. (some emphasis added).

"A district court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class."  *Vega*, 564 F.3d at 1266 (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996)).  District courts have broad discretion in deciding whether to certify a class. *De Leon-Granados v. Eller & Sons Trees, Inc.*, 497 F.3d 1214, 1218 (11th Cir. 2007) (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 711 (11th Cir. 2004)); *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992).

### B. Individual Standing

"It is well-settled in the Eleventh Circuit that prior to the certification of a class, and before undertaking an analysis under Rule 23, the district court must determine that at least one named class representative has Article III standing to raise each class claim."  *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 679 (S.D. Fla. 2004) (citing *Wolf Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000); *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987) ("[A]ny analysis of class certification must begin with the issue of standing.")).  Indeed, "[o]nly after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others."  *Griffin*, 823 F.2d at 1482.  "To have standing, a plaintiff must show (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to conduct of the defendant; and (3) it is likely, not just merely speculative, that the injury will be redressed by a favorable decision."  *Kelly v. Harris*, 331 F.3d 817, 819-20 (11th Cir. 2003).

Nationstar does not directly challenge Alhassid's or Drennen's individual standing. However, Article III standing is a threshold jurisdictional issue, which the Court must itself address at the onset.  *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) (citing *Dillard v. Baldwin County Comm'rs*, 225 F.3d 1271, 1275 (11th Cir. 2000)).

Here, the named Plaintiffs clearly suffered cognizable injuries in the form of – as alleged (and in the case of Alhassid, admitted) – improperly assessed fees or increased payment requirements and, in Alhassid's case, the costs of unjustified foreclosure proceedings.  Nationstar assessed those fees and, again in Alhassid's case, initiated the foreclosure proceeding.  Monetary relief pursuant to a favorable decision would redress those injuries.  Plaintiffs' individual standing requirement is satisfied.

## C.    Ascertainability

"Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is 'adequately defined and clearly ascertainable.'"  *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 684 (S.D. Fla. 2014) (quoting *Little*, 691 F.3d at 1304 (citing *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970))).[2]  This threshold issue of ascertainability relates to whether the putative class can be identified:   "[a]n identifiable class exists if its members can be ascertained by reference to objective criteria."  *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir.2014) (citing *Fogarazzo v. Lehman Bros., Inc.*, 263 F.R.D. 90, 97 (S.D.N.Y. 2009)).  These "objective criteria" should be "administratively feasible," meaning that the identification of class members should be "a manageable process that does not require much, if any, individual inquiries."   *Id*. (citation omitted) (reversing district court decision finding ascertainability

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

satisfied where class could be identified by reference to the defendant's records).  If a plaintiff fails to demonstrate that the putative class is clearly ascertainable, then class certification is properly denied.  *See Walewski v. Zenimax Media, Inc.*, 502 F. App'x 857, 861 (11th Cir. 2012) (affirming denial of class certification because class was not adequately defined or clearly ascertainable); *Perez v. Metabolfe Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003) ("A court should deny class certification where the class definitions are overly broad, amorphous, and vague, or where the number of individualized determinations required to determine class membership becomes too administratively difficult.").

Further to the issue of ascertainability, although not yet addressed by the Eleventh Circuit, case law within this Circuit and persuasive Circuit-level authority indicates that a class cannot be certified where the proposed class definition employs conclusory language identifying class membership in terms of the ultimate merits question of the defendant's liability.  Such an impermissibly "fail-safe" class "exists if the class 'is defined in a way that precludes membership unless the liability of the defendant is established.'"  *Cox v. Cmty. Loans of Am., Inc.*, 2014 WL 1216511, at *14 (M.D. Ga. Mar. 24, 2014) (quoting *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010) and citing *Randleman v. Fidelity Nat'l Title Ins. Co.,* 646 F.3d 347, 352 (6th Cir. 2011) (explaining the flaw in an improper fail-safe class:  "Either the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment")); *see also Hurt v. Shelby Cnty. Bd. of Educ.*, 2014 WL 4269113, at *8 (N.D. Ala. Aug. 21, 2014) ("A fail-safe class is 'a class whose membership can only be ascertained by a determination of the merits of the case because the class is defined in terms of the ultimate question of liability.'") (quoting *Rodriguez v. Countrywide Home Loans, Inc.*, 695 F.3d 360, 369-70 (5th Cir. 2012) and citing *Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 825 (7th Cir. 2012) (defining a

fail-safe class as "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim")); *Roundtree v. Ross*, 2015 WL 1931103, at *1 (M.D. Fla. Apr. 28, 2015) ("A fail-safe class 'includes *only* those who are *entitled* to relief.'") (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) (emphasis in original)).

> The problems with such classes are both logical and practical.  On the logical front, the class definition is essentially circular.  It defines its members on the presumption that such members have viable claims against the defendant.  So, the class definition assumes what it ostensibly seeks to prove.  This is itself problematic.  *See*, *e.g.*, *Mazzei v. Money Store*, 288 F.R.D. 45, 55 (S.D.N.Y. 2012) (holding that proposed class definition limited to those charged fees that "were not permitted" wrongly "defines the class . . . by the very liability the plaintiff seeks to establish").  The problems compound, however, when one considers the practical complications such definitions introduce.  First, they permit plaintiffs to circumvent res judicata and basically rig the certification process so that they cannot lose.  That is, "[e]ither the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment."  *Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011) (footnote and citations omitted).  . . . Finally – and most obviously – a fail safe class "is unmanageable because the members of the class could only be known after a determination of liability."  *Eager v. Credit Bureau Collection Servs., Inc.*, 2014 WL 3534949, at *4 (W.D. Mich. Jul. 16, 2014) (quoting *Mazzei*, 288 F.R.D. at 55).

*Hurt*, 2014 WL 4269113 at *8.

That said, confronted with a fail-safe class, the court may revise or permit the plaintiff to cure the flawed definitions.  *See Cox*, 2014 WL 1216511, at *14 ("The Court may, however, 'redefine the class to bring it within the scope of Rule 23.'") (quoting *Mazzei*, 288 F.R.D. at 55); *Messner*, 669 F.3d at 825 ("[T]he fail-safe problem is more of an art than a science ... and often should be solved by refining the class definition rather than flatly denying class certification on that basis.") (citations omitted); *St. Louis Heart Ctr., Inc. v. Forest Pharm., Inc.*, 2013 WL 1076540, at *6 n. 7 (E.D. Mo. Mar. 13, 2013) (collecting cases where courts have either revised class definitions to cure fail-safe deficiencies or permitted plaintiffs to do so).

### 1.   Plaintiffs Propose Impermissibly Fail-Safe Classes

Each of Plaintiff's nine proposed class definitions is an impermissibly fail-safe class. Membership in each class is dependent on whether Nationstar violated HUD guidelines or Nationstar's own internal policies and procedures with respect to the given fee or charge assessed.  This front-ends a merits determination on Nationstar's liability as the essential element in class composition.   "[T]he Court would essentially have to make a determination that [Nationstar] is liable to an individual before it could conclude that the individual is a member of the class."  *Kirts v. Green Bullion Fin. Servs., LLC*, 2010 WL 3184382, at *6 (S.D. Fla. Aug. 3, 2010).  Therefore, as presently stated, Plaintiffs' proposed classes are unascertainable.

That said, Plaintiffs' defective proposed class definitions are potentially curable.  For example, instead of identifying class members as mortgage borrowers "charged by Nationstar for 'property inspection' fees, more times in a one year period, than allowed by HUD Guidelines and/or Nationstar's own internal Policies and Procedures," Plaintiffs could simply define class membership by specific reference to Nationstar's alleged improper property inspection fee assessment – i.e., more than twelve times in a one-year period.  Because, as discussed below, Plaintiffs have otherwise failed to articulate objectively and feasibly ascertainable classes, whether Plaintiffs' may be able to reconstruct the class definitions without incorporating as a prerequisite an ultimate merits determination in their favor is moot.

### 2.   Plaintiffs' Proposed Classes Are Not Ascertainable

Plaintiffs' nine proposed classes are not ascertainable:  they are neither based on objective criteria, nor are they compatible with administratively feasible methods of determining class membership.

Each class is defined in terms of a fee charged or an act undertaken in violation of a HUD guideline or one of Nationstar's internal policy and procedure.  It is worth noting that the reference to HUD guidelines and Nationstar's internal policies is new to the Motion – it did not form the basis of Plaintiff's class allegations in any iteration of their complaint.  Regardless, none of the proposed class definitions identify the HUD guideline or internal policy or procedure allegedly violated.  HUD guidelines apply only to reverse mortgages and FHA loans, not the overwhelming majority of loans that Nationstar services – traditional (or "forward") mortgage loans owned by government-sponsored entities Fannie Mae and Freddie Mac or private investors.  *See* Loll Decl. ¶¶ 4-5; Riski Decl. ¶¶ 4-8.  Even when HUD guidelines or Nationstar's internal policies apply to a loan, they do not proscribe the conduct or limit the fees that Plaintiffs challenge.  For example, HUD guidelines do not cap permissible property inspection or preservation charges in all instances; the charge may vary depending on the type of service.  Nor do HUD guidelines prohibit a servicer from charging property inspection or property preservation fees if a borrower previously verified her occupancy.  There are no HUD guidelines or internal policies prohibiting the advancement of taxes after they are due but before they are considered delinquent under state law.  HUD guidelines command just the opposite, requiring servicers "to make disbursements for property charges before bills become delinquent."  24 C.F.R. § 206.205(e)(2).

This definitional imprecision dovetails with the fail-safe deficiencies of Plaintiffs' proposed classes.  Plaintiffs essentially ask the Court to certify classes based on vaguely contoured merit-based violations by Nationstar.  Such classes cannot be considered "adequately defined [or] clearly ascertainable."

Even were Plaintiffs' definitions sufficiently precise, there is no administratively feasible way to determine membership in any of their classes.

Nationstar stores data regarding all of its over two million loans in its LSAMS servicing platform.  Loll Dep. Tr. at 57-58.  Champion, a Nationstar division, maintains a separate Celink system.  Riski Dep. Tr. at 16-17.  Through LSAMS, Nationstar has the capability to track and run reports regarding the loans they own and/or service, including reports detailing the type (inspection, appraisal, taxes, etc.), amount and frequency of the fee charged (per month or per year) to loan accounts.  *Id*. at 59-90.  Plaintiffs posit that, using that system and its search functionality, Nationstar can generate reports in "a relatively short amount of (computer processing) time with all the information specific to the putative classes [they] seek [to] certif[y]."[3]  Mot. at 6.  The evidence in the record does not bear that out.

First, while the LSMAS system can be queried to determine how many of which fee type were charged to a borrower's traditional mortgage account, the system cannot determine on an automated basis – that is, without individualized inquiry – how may fees remain on the borrower's account, as opposed to fees paid by the borrower or reversed or paid by Nationstar for various reasons.  *See* Loll Dep. Tr. 58-67, 84-90.

More fundamentally, Plaintiffs' analysis of class membership identification confuses the charging or assessment of a fee with the performance of the underlying action which generates the fee.  Property inspections, appraisals, and other default-related services are conducted for Nationstar by third-party vendors.  Riski Decl. ¶ 9.  Nationstar pays the third-party vendor for its services and once it receives an inspection report, it charges its borrower for the same.  *Id*.; Loll

---

[3] Plaintiff's ignore salient operational differences between Nationstar and its Champion division, including as they pertain to the operation of the LSAMS and Celink systems.  *See* Loll Dep. Tr. at 25-24, 58, 94-97.  Because, as discussed here, Plaintiffs fail to identify a feasible method of class identification even using the LSAMS system used by Nationstar, the Court does not address this second-order deficiency.

Decl. ¶ 10.  Delays in invoicing routinely result in Nationstar charging or assessing fees well after, for example, property inspections are completed.[4]  Riski Decl. ¶¶ 9-10; Loll Decl. ¶¶ 10-11.  As a result, the LSAMS system could be used to determine how many times in a given period Nationstar charges a borrower for a given fee.  But that would shed no light on whether Nationstar actually inspected the property or appraised the property, etc., more times that (ostensibly) permitted by HUD guidelines.  That is, assuming that HUD guidelines prohibit, for example, property inspections in excess of twelve in a one-year period, knowing whether Nationstar charged or assessed a loan account more than twelve property inspection fees in a one-year period would not demonstrate class membership for the borrower on that account.  In other words, the LSAMS data as to fee assessment cannot stand in for information as to allegedly improper default-related inspection activity.   Based on the evidence before the Court, determining class membership would, therefore, devolve into individually assessing each loan account to determine whether Nationstar conducted impermissibly excessive property inspections, or property preservations efforts, or property appraisals, related to each account.

As an example of their muddled analysis, Plaintiff's argue that:

"The gravamen of the claim is that property inspections are continually and improperly placed on borrowers' accounts.  Whether the fee was paid or not is immaterial because the very imposition of the fee is the wrongful act which would necessitate either a reversal or credit."

ECF No. [210] (Plaintiffs' "Reply") at 5.  The first sentence is accurate:  what matters are the improper property inspections and appraisals, because Plaintiffs' proposed classes are defined in reference to HUD guidelines and Nationstar's internal policies which, in Plaintiffs' representation, speak directly to property inspections and appraisals and only to consequent fee

---

[4] This is precisely what happened with Drennen's account:  the property inspection completed on July 18, 2013 was posted to LSAMS on September 17, 2013, and the property inspection completed on February 22, 2014 was posted to LSAMS on April 22, 2014.  Loll Decl. ¶ 11.

assessment as corollaries.  The second sentence is not:  Nationstar's assessment of fees is both functionally disconnected from the underlying inspections and appraisals, and fundamentally distinct from Nationstar's behavior with respect to a given account which would render the account holder a member of one of Plaintiffs' proposed classes.

Plaintiffs have failed to meet their burden to demonstrate that their proposed classes are clearly ascertainable.  Class certification is properly denied on this independent basis.

### D.        Rule 23(a) Requirements

Plaintiffs' failure to provide adequately defined and ascertainable classes obviates the Court's need to engage in the Rule 23(a) four-part analysis.   That said, Plaintiffs have additionally failed to satisfy all of the four Rule 23(a) prerequisites.  Specifically, the Court has serious concerns as to the commonality, typicality and adequacy of the class action mechanism under the circumstances present here.

### 1.        Commonality

The commonality requirement of Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  FED. R. CIV. P. 23(a)(2); *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (quoting *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001)) ("Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof.").  Plaintiffs face a "low hurdle" in bearing this "light" burden, as commonality "does not require that all questions of law and fact raised be common." *Williams*, 568 F.3d at 1356; *Vega*, 564 F.3d at 1268.  "In short, the commonality requirement requires proof the court can resolve the questions of law or fact in 'one stroke.'"  *Randolph*, 303 F.R.D. at 639.  That said, "[w]hat matters to class certification is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate

common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quotation omitted).  That is, commonality requires a common question capable of common resolution.  *See*, *e.g.*, *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 685 (S.D. Fla. 2013).

Plaintiffs' central contention is that Nationstar undertook default-related procedures and charged their borrowers fees for those procedures despite and in violation of HUD guidelines and their own internal policies.  That is, Nationstar's official policy is to adhere to HUD guidelines with respect to, for example, the timing of property inspections and assessment of related fees, but in practice Nationstar's procedures do not involve any "independent verification" of default-related output from its automated servicing platform and default-related information and activities provided or conducted by third-parties.  *See* Mot. 9-10.  Plaintiffs admit that Nationstar maintains "a policy of verifying information when a borrower submits information disputing [a] default [status]" – and offer only that Nationstar did not follow this policy with respect to Alhassid's loan.  Mot. at 10-11; *see also* Word Dep. Tr. 11-12, 69-71; 76-79 (testifying that Nationstar runs loans though a systematic 70-point waterfall of checks designed to identify any bar to foreclosure before commencing judicial or nonjudicial proceedings); Riski Dep. Tr. at 103-07 (testifying that Nationstar notifies HUD to request permission to recall a loan's due and payable status).  "The commonality element is generally satisfied when a plaintiff alleges that '[d]efendants have engaged in a standardized course of conduct that affects all class members.'" *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 673 (S.D. Fla. 2011) (quoting *Terazosin*, 220 F.R.D. at 687;citing *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 697 (S.D. Fla. 2004); and *In re AmeriFirst Sec. Litig.*, 139 F.R.D. 423, 428 (S.D. Fla. 1991)).  By contrast, here, Plaintiffs claim that Nationstar deviated or departed from its own internal policies *to which*

*it generally adhered* in servicing particular loans.  Under those conditions, proving whether any particular borrower was mistakenly placed in default for failure to maintain insurance or pay taxes could not be accomplished with evidence of Nationstar's common policy.  Rather, it would require individual evidence showing that Nationstar's internal policies and procedures were not followed in a particular instance and that Nationstar, for example, mistakenly called a particular loan due or commenced foreclosure proceedings.   More specifically, it would require individualized evidence that Nationstar's records with respect to particular loan accounts were incorrect, and that the properties were not vacant, or did not require inspection or appraisals, or that foreclosure proceedings were not warranted.

Plaintiffs provide a laundry list of common questions potentially relevant to determining whether Nationstar abrogated HUD guidelines and its own policies in conducting inspections and assessing default-related fees and improperly foreclosing on its borrowers.  But Plaintiffs have not demonstrated that those common questions are capable of resolution by common answers gained by assessing common evidence.  Rather, their own theory of the case would require a series of heavily individualized inquiries.  This is not to suggest that a defendant's practice or policy of abrogation cannot form the basis of a class action.  Rather, given the particularities of the instant factual context – where Plaintiffs admit and the evidence supports that Nationstar generally adhered to external and internal policies but allegedly violated those policies in some number of individualized cases – Plaintiffs have not demonstrated commonality sufficient to warrant certification of a class action.

### 2.     Typicality

Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  FED. R. CIV. P. 23(a)(3).  "[T]he typicality requirement is

permissive:  representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Checking Account Overdraft*, 275 F.R.D. at 674 (citing *Brown v. SCI Funeral Servs. of Fla., Inc.*, 212 F.R.D. 602, 605 (S.D. Fla. 2003).  In order to demonstrate typicality, the plaintiff must generally demonstrate that a "sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001) (citing *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 n. 8 (11th Cir. 1992)).  Stated differently, "[t]he claim of a class representative is typical if 'the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'"  *Williams*, 568 F.3d at 1356-57 (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)).  "It is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to one of many claims he wishes to assert.  Rather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000).  "If proof of the representatives' claims would not necessarily prove all the proposed class members' claims, the representatives' claims are not typical of the proposed members' claims." *Conigliaro v. Norwegian Cruise Line Ltd.*, 2006 WL 7346844, at *7 (S.D. Fla. Sept. 1, 2006) (quoting *Brooks v. S. Bell Tel. & Tel. Co.*, 133 F.R.D. 54, 58 (S.D. Fla. 1990)).

Plaintiffs have not presented any evidence that Nationstar's treatment of Alhassid was anything other than a singular if highly improper incident.  "Plaintiffs' theory is that [Nationstar's] placement of improper fees violates its own internal policy and procedures as well

as HUD guidelines, which in turn violate [Nationstar's] mortgage contract or other statutory obligations." Repl. at 8. Alhassid was sent the same default-related correspondence and charged corresponding fees by Nationstar as Nationstar would have sent and charged to other borrowers in default. *See* Riski Dep. 15-16 20-21, 29-31, 44-46. But Alhassid's claim is not that Nationstar assessed default-related fees that exceeded limitations imposed by HUD guidelines or Nationstar's internal policies. Rather, she alleges that that she never should have been assessed any default-related fees because she was never in default. *See* 3d Am. Compl. ¶¶ 9-10. That is, as to Alhassid, Plaintiffs allege that Nationstar breached her mortgage contract and violated its statutory obligations not by inspecting her property or assessing taxes in violation of HUD of Nationstar policies, but by improperly placing her loan in default despite the fact that she in fact did maintain hazard insurance and relevant taxes. There is no "evidence of even one other ascertainable class member" who has that claim. *See Abby v. Paige*, 282 F.R.D. 576, 579 (S.D. Fla. 2012). Put another way, even if Nationstar's improper treatment of Alhassid's loan account resulted from Nationstar's deficient control and verification procedures, her circumstances, the nature of Nationstar's improper treatment, and the type of Nationstar's deficient verification procedures are not representative of the facts which define Plaintiffs' proposed class membership. Alhassid's experience is, therefore, atypical of the alleged experiences of Plaintiffs' proposed class members.

Drennen's claims and defenses are not typical of the claims and defenses of the proposed class members for two significant reasons. First, Plaintiffs claim that Nationstar improperly increased the escrow portion of Drennen's loan payments after modifying her loan. That does not appear to implicate violation of any of the HUD guidelines or internal Nationstar policies incorporated into Plaintiffs' class definitions. Second, Drennen voluntarily paid the allegedly

improper property inspection fees assessed against her loan in the course of selling her home, despite having already joined this suit and asserting that those fees were improper and illegal. "H[er] knowledge, awareness, and voluntary payment after consulting with legal counsel is atypical of the class and subjects h[er] to defenses not applicable to others." *Kunzelmann v. Wells Fargo Bank, N.A.*, 2013 WL 139913, at *4 (S.D. Fla. Jan. 10, 2013).

### 3.   Adequacy

Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4).  "The adequacy-of-representation requirement 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008) (quoting *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 314-15 (S.D. Fla. 2001) ("Rule 23(a)(4)'s adequacy requirement has two components:  (1) the class representative has no interests antagonistic to the class; and (2) class counsel possesses the competence to undertake the litigation."); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987) ("The inquiry into whether named plaintiffs will represent the potential class with sufficient vigor to satisfy the adequacy requirement of Rule 23(a)(4) most often has been described to involve questions of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation and of whether plaintiffs have interests antagonistic to those of the rest of the class.").  In addition, "[m]isconduct by class counsel that creates a serious doubt that counsel will represent the class loyally requires denial of class certification." *Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913, 918

(7th Cir. 2011); *but see Busby*, 513 F.3d at 1323-24 ("[O]nly the most egregious misconduct on the part of plaintiffs' lawyer could ever arguably justify denial of class status.") (quoting *Halverson v. Convenient Food Mart, Inc.*, 458 F.2d 927, 932 (7th Cir. 1972)).  "[T]he Court is required to evaluate any conflicting interests of the class representative and the adequacy of class counsel." *Ass'n For Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 464 (S.D. Fla. 2002).

In terms of the proposed representative's ability to vigorously represent the interests of the class, "a plaintiff who fails to demonstrate that she is familiar with the facts of her case sufficiently enough to represent the proposed class cannot be named as class representative." *Butterworth v. Quick & Reilly, Inc.*, 171 F.R.D. 319, 322-23 (M.D. Fla. 1997) (quotation omitted).  "Several district courts thus have properly denied class certification where the class representatives had so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *Kirkpatrick*, 827 F.2d at 727.  However, "[i]t is well-settled that it is not necessary for named class representatives to be knowledgeable, intelligent or have a firm understanding of the legal or factual basis on which the case rests in order to maintain a class action." *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 517 (S.D. Fla. 2013) (citing *Powers v. Gov't Employees Ins. Co.*, 192 F.R.D. 313, 317–18 (S.D. Fla. 1998) (requiring only active participation in the litigation)).

Nationstar contends that the named Plaintiffs, and Alhassid in particular, are simply lending their names to this suit and lack even a basic understanding of the case and their fiduciary obligations as proposed class representatives.  The evidence does not bear that out. Alhassid may not have a particularly sophisticated understanding of the legal dynamics at play

here.  *See* Alhassid Dep. Tr. 156-61.  But that is not the standard.  Both named Plaintiffs are generally familiar with the facts here, and during cross-examination, both named Plaintiffs were able to identify their duties as class representatives and willingness to discharge those duties in this suit.  *See* Alhassid Dep. Tr. 268-280; Drennen Dep. Tr. 183-86, 190.

Nationstar also challenges the adequacy of class counsel, arguing that Plaintiffs' counsel have little experience with class litigation and that their performance in this case demonstrates that they are unfit to represent any class.  "Counsel will be deemed adequate if they are shown to be qualified, adequately financed, and possess sufficient experience in the subject matter of the class action."  *City of St. Petersburg v. Total Containment, Inc.*, 265 F.R.D. 630, 651 (S.D. Fla. 2010).  While Plaintiffs' counsel's lack of class action experience gives the Court some pause – counsel readily admit that they have not previously been appointed class counsel and do not have experience in class action suits – there is no indication of the type of egregious misconduct which would require that the Court deny class certification on this basis.  *See, e.g.*, *Busby*, 513 F.3d at 1323 ("[O]nly the most egregious misconduct on the part of plaintiffs' lawyer could ever arguably justify denial of class status."); *Spinelli v. Capital One Bank*, 265 F.R.D. 598, 603 (M.D. Fla. 2009) (certifying class and finding counsel adequate despite submission of improper and conflicting affidavits); *Elliot v. Carnival Cruise Lines*, 2003 WL 25677700, at *3 (S.D. Fla. Oct. 17, 2003) (assertion of legally non-viable claims did not render counsel unqualified or inadequate to represent the class); *Karhu v. Vital Pharm., Inc.*, 2014 WL 815253, at *6 (S.D. Fla. Mar. 3, 2014) (counsel adequate despite allegations from opposing counsel of unprofessionalism, unfamiliarity with procedural rules, and the exercise of insufficient diligence); *cf.*, *e.g.*, *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 688 (S.D. Fla. 2013) (counsel would

be inadequate if through delay putative class members' claims would be precluded as time-barred).

However, the relationship between Alhassid and her counsel raises a meaningful conflict of interest issue.  Alhassid's daughter and son-in-law are the proposed class counsel.  "Since possible recovery of the class representative is far exceeded by potential attorney's fees, courts fear that a class representative who is closely associated with the class attorney would allow settlement on terms less favorable to the interests of absent class members."  *Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371, 1375 (11th Cir. 1984).  Accordingly, "an individual is an improper representative where there is a possibility that he will be more interested in maximizing the 'return' to his attorney than in aggressively presenting the proposed class action."  *Id.*; *see London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 (11th Cir. 2003) (holding that district court abused its discretion by ignoring "the long-standing personal friendship of [class representative] and [class counsel, which] casts doubt on [representative's] ability to place the interests of the class above that of class counsel").  As the Seventh Circuit recently explained in invalidating a class action settlement:

> To begin with, it was improper for the lead class counsel to be the son-in-law of the lead class representative.  Class representatives are, as we noted earlier, fiduciaries of the class members, and fiduciaries are not allowed to have conflicts of interest without the informed consent of their beneficiaries, which was not sought in this case.  Only a tiny number of class members would have known about the family relationship between the lead class representative and the lead class counsel – a relationship that created a grave conflict of interest; for the larger the fee award to class counsel, the better off [the lead class representative's] daughter and son-in-law would be financially – and (which sharpened the conflict of interest) by a lot.

*Eubank v. Pella Corp.*, 753 F.3d 718, 723-24 (7th Cir. 2014); *see also Redman v. RadioShack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014) ("There ought therefore to be a genuine arm's-length

relationship between class counsel and the named plaintiffs . . . uninfluenced by family ties or friendships.").

Courts across the country have certified classes where the lead plaintiff was closely related to class counsel – *provided* that the class representative demonstrated sufficient economic or decision-making independence from class counsel to mitigate the potential for conflicted interests.  *See*, *e.g.*, *Miller v. Farmers Ins. Grp.*, 2012 WL 8017244, at *10-11 (W.D. Okla. Mar. 22, 2012) (certifying class where class representative and class counsel were brothers because the representative's character as a police officer led the court to believe he would be a responsible representative); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 337 (E.D. Mich. 2001) (representative adequate despite fact that his son was liaison counsel where only lead counsel, not liaison counsel, had settlement authority); *Lewis v. Goldsmith*, 95 F.R.D. 15 (D.N.J. 1982) (certifying class where plaintiff was the nephew of class counsel upon determining that plaintiff was financially independent and did not rely in any way on his uncle for support); *Fischer v. Int'l Tel. & Tel. Corp.*, 72 F.R.D. 170 (E.D.N.Y. 1976) (certifying class where lead plaintiff's son was class counsel after son has sworn that "plaintiff would have no economic interest either directly or indirectly in the matter of any attorney's fee that [he] might be awarded in this litigation" were the class to prevail).

Because Alhassid has demonstrated only the bare minimum of knowledge and sophistication regarding the issues in this case; Plaintiffs' counsel are inexperienced in class action litigation; and Plaintiffs have provided the Court with no assurances of a lack of financial interdependence between Alhassid and her children/counsel – despite the fact that Nationstar raised this issue in responding to the Motion – the Court finds that the adequacy of representation requirement has not been met here.  *See*, *e.g.*, *Langendorf v. Skinnygirl Cocktails, LLC*, 306

24

F.R.D. 574, 581 (N.D. Ill. 2014) (denying certification where "plaintiff's reply brief largely ignore[d] the issue [of familiar and not arms-length relationship], despite the fact that she bears the burden of proving by a preponderance of the evidence that the putative class members would be adequately represented").

### E.      Rule 23(b)(3) Predominance

In addition to satisfying the four requirements of Rule 23(a), Plaintiffs must meet one of the alternative requirements set forth in Rule 23(b).  Plaintiffs have elected to proceed under Rule 23(b)(3), which imposes two additional requirements – (1) that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," or predominance; and (2) that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy," or superiority.  FED. R. CIV. P. 23(b)(3).  Because class certification is otherwise improper, the Court will address this analytic only briefly.  At the very least, Plaintiffs have failed to establish the predominance of common questions over individualized questions.

"That common questions of law or fact predominate over individualized questions means that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof.'"  *Terazosin Hydrochloride*, 220 F.R.D. at 694 (quoting *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989)).  "The predominance inquiry focuses on 'the legal or factual questions that qualify each class member's case as a genuine controversy,' and is 'far more demanding' than Rule 23(a)'s commonality requirement."  *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997)).

Plaintiffs' failure to establish predominance mirrors their failure to establish commonality.  The basic problem with the class action mechanism here is that only *individualized* evidence as to each borrower could prove that a particular borrower was not actually in default – despite Nationstar's contrary records which Plaintiffs *do not contend* were generally erroneous.  Such information would be necessary to establish that Nationstar's property inspections, appraisals and assessment of related fees was improper. That information would be necessary to establish that the non-defaulted borrower is entitled to sue for breach of contract or entitled to damages under FDUTPA.  That factual context is not one in which common questions predominate.

### III.   CONCLUSION

For the forgoing reasons and as detailed above, it is hereby **ORDERED AND ADJUDGED** that Plaintiffs' Motion, ECF No. [190] is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 31st day of July, 2015.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record